# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| FRANCIS SANTIAGO, on behalf of himself and all others similarly situated, | : : : | **CLASS ACTION COMPLAINT** |
| Plaintiff, | : : | |
| v. | : : | Demand for Jury Trial |
| GMAC MORTGAGE GROUP, INC., GMAC RESIDENTIAL HOLDING CORP., and GMAC MORTGAGE CORPORATION, | : : : : | |
| Defendants. | : : | |

Plaintiff Francis Santiago, by his attorneys, brings this action on behalf of himself and all others similarly situated against GMAC Mortgage Group, Inc.; GMAC Residential Holding Corp.; and GMAC Mortgage Corporation.

## Nature of the Action

1.      This action is brought by Plaintiff on behalf of himself and a proposed nationwide class of residential mortgage borrowers who were charged and paid fees for certain "settlement services" (*i.e.*, services provided as a condition to a federally related home loan).  Defendants are known as "settlement service providers" under the applicable statutory framework.  The services at issue include tax service, flood certification and underwriting.

2.      Under the federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.,* and related regulations and pronouncements promulgated by the United States Department of Housing and Urban Development (HUD), fees for settlement service are "Unearned Fees" when:

> one settlement service provider marks up the cost of the services
> performed or goods provided by another settlement service
> provider without providing actual, necessary, and distinct services,

> goods, or facilities to justify the additional charge; or one
> settlement service provider charges the consumer a fee where no,
> nominal, or duplicative work is done, or the fee is in excess of the
> reasonable value of goods or facilities provided or the services
> actually performed.

HUD Statement of Policy 2001-1, Part C, § (8)(b), Unearned Fees (24 C.F.R. Part 3500) ("HUD

Statement of Policy 2001-1").

      3.      RESPA Section 8(b), 12 U.S.C. § 2607(b), prohibits settlement service providers

from charging Unearned Fees.  Defendants' practices systematically violate this prohibition.

Mortgage lenders are prohibited from marking-up third-party vendor costs and from charging

home mortgage borrowers *any* fees that exceed the reasonable value of the services provided.

      4.      Defendants' practice of requiring borrowers to pay Unearned Fees increases

closing costs and thus adversely affects the affordability of home ownership.  For every $400 in

increased closing costs, approximately 70,000 families per year fail to qualify to buy a home,

according to Freddie Mac, a quasi-governmental entity charged with making home ownership

more affordable.

      5.      Defendants' Unearned Fees inflate closing costs.  For example, Freddie Mac and

Fannie Mae (the other quasi-governmental entity whose charter requires it to increase home

ownership affordability) have developed automated underwriting systems that reduce (from days

to minutes) the time required for underwriting many home loans.  Freddie Mac recently

calculated that, because of the widespread use of automated underwriting software, home buyers

should be saving between $400 and $650 in closing costs.  However, instead of passing on these

savings to home mortgage borrowers, Defendants violate RESPA by charging borrowers up to

25 times Defendants' actual cost of using automated underwriting systems.

      6.      Each year, Defendants' practice of charging Unearned Fees lines their pockets

with millions of dollars and prevents thousands of Americans from purchasing homes.

7.    Plaintiff asserts claims for (a) Defendants' violations of RESPA Section 8(b) and interpretive HUD regulations and HUD Statements; (b) unjust enrichment; and (c) money had and received.  All claims are brought individually and on behalf of the proposed class.

### Jurisdiction and Venue

8.    This Court has subject matter jurisdiction pursuant to RESPA Section 16, 12 U.S.C. § 2614.  Pursuant to 28 U.S.C. § 1331, this action arises under the laws of the United States.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367.

9.    This suit is brought within one year from the date of the occurrence of the violation and/or within the statutory limitations period as it is equitably tolled under the circumstances of the violations alleged herein.

10.    Under 28 U.S.C. §§ 1391(b) and 2614, venue is proper in this district, because Defendants maintain their corporate headquarters within the District.  From their corporate headquarters, Defendants' management direct the misconduct alleged herein.

### Parties to the Action

11.    Plaintiff Francis Santiago is a home mortgage borrower who resides in Provo, Utah.  Defendants wrongfully charged and collected Unearned Fees from Santiago for settlement services required to finance the purchase of his Provo home in January 2002.

12.    Defendants GMAC Mortgage Group, Inc. ("GMAC/MGI"); GMAC Residential Holding Corp.; and GMAC Mortgage Corporation are headquartered in Horsham, Pennsylvania. Defendants, including their subsidiaries and affiliates, perform a wide array of real estate financial services, including the origination, purchase, financing and servicing of residential mortgage loans.

### Defendants and Their Divisions and Named Subsidiaries Constitute a Single Business Enterprise

13.    Defendants constitute the General Mortgage Acceptance Corporation "Mortgage Group", a single business enterprise ("Single Business Enterprise") comprising a number of business units, operating companies and/or wholly owned subsidiaries carrying out Defendants'

operations.  Defendants share the name, GMAC, and share office space at the same address in Horsham, Pennsylvania.

14.    Under the doctrine of *respondeat superior,* GMAC/MGI is liable for all other defendants' wrongful practices alleged herein, and they are imputed to GMAC/MGI and to one another for purposes of joint and several liability.

15.    Defendants constitute one company.  Defendants are simply fragments of the Single Business Enterprise.  Defendants do not operate as completely separate entities, but rather, integrate their resources to achieve a common business purpose.  That is, although Defendants may be separate *de jure*, they pool or integrate their resources *de facto* to achieve a common business purpose.

16.    All Defendants have unity of ownership, unity of management and unity of operations.  All Defendants are permutations, divisions, branches, successors or offshoots of corporate reorganizations within the Single Business Enterprise and are fiduciaries of one another.  The concept of corporate separateness may therefore be disregarded and may not be interposed to conceal the true relation among the corporations.  Because Defendants form a Single Business Enterprise, their wrongful conduct may be alleged against Defendants as a group.  The nominally distinct Defendants should be treated as one.  To achieve equity, each Defendant may be held jointly and severally liable for the group conduct and wrongful acts done in pursuit of the general or common business purpose.

17.     GMAC/MGI directs, controls, aids, abets, facilitates and furnishes the means for Defendants to commit the wrongdoing alleged herein.  Defendants aid, abet and furnish the means for each other to commit the wrongdoing alleged herein.

18.    Defendants set themselves out to the public as a Single Business Enterprise and a national leader in home mortgage lending.  Defendants could not substantiate these public claims without factoring all Defendants' profits, offices and employees into the Single Business Enterprise.

19.    The combination of Defendants' strengths is part of their unified long-term mortgage business strategy.

20.    Defendants further each other from the dual standpoints of (a) facilitating the internal operation of the business and (b) establishing a favorable public image.

21.    Formal legal requirements for Defendants to be considered separate and independent corporations are not observed.

22.    Defendants are controlled through centralized committees whose policies individual Defendants are not free to disregard.

23.    Defendants' income contributions result from function integration, centralization of management and economies of scale.  Defendants are so inextricably connected that to state the profits of one were not dictated by the operations of the other would be inconceivable.

24.    GMAC/MGI's management role is grounded in its own operational expertise and overall operational strategy.

25.    Defendants have management teams but not independent boards of directors, directors, directors' meetings or minutes.  Defendants' management teams answer to central management and do not act independently in the interest of their own Business Unit, Group Company, and/or Subsidiary.  Rather, all Defendants' managers act only in the interests of Defendants as a whole enterprise.

26.    Defendants do not compete with one another.

27.    GMAC/MGI maintains unified administrative control of Defendants, whose business functions are similar or supplementary to one another.

28.    Defendants are insured by the same carriers and provide uniform pension, health, life and disability insurance plans to all employees.  Defendants also have a unified 401(k) Plan, Bonus Program, Vacation Schedule and Paid Time Off from Work Schedule.

29.    GMAC/MGI's officers, directors and other management play supervisory roles in providing directives to all Defendants.  GMAC/MGI's written guidelines, policies and procedures control all Defendants.

30.     GMAC/MGI  files consolidated earnings statements factoring all revenue from all Defendants, and, upon information and belief, consolidated tax forms seeking tax benefits and relief.

### Applicable Federal Statutory Law

31.     In 1972, Congress became so concerned about predatory lending practices in the housing industry that it enacted a remedial consumer protection statute, RESPA, "to ensure that consumers throughout the Nation are . . . protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  RESPA Section 2, 12 U.S.C. § 2601(a).

32.     The purpose of the RESPA legislation is "to effect certain changes in the settlement process for residential real estate that will result . . . in the elimination of . . . fees that tend to increase unnecessarily the costs of certain settlement services[.]"  RESPA Section 2, 12 U.S.C. § 2601(a) and (b).

33.     RESPA Section 8(b) and 24 C.F.R. Part 3500 prohibit Defendants from charging a home mortgage borrower Unearned Fees for settlement services.  RESPA § 8(b) provides in pertinent part:

> **§ 2607 (8)  Prohibition against . . . Unearned Fees**
> **. . . .**
> (b)     No person shall give and no person shall accept *any portion*, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed.*

(Emphasis added.)

34.     24 C.F.R. § 3500.2(b) contains the following definitions for terms in RESPA Section 2607 (8)(b):

> **Federally Related Mortgage Loan or Mortgage Loan** means, *inter alia*, any loan that is "made in whole or part by any lender

that is either regulated by or whose deposits are insured by any agency of the Federal Government . . . or [i]s intended to be sold by the originating lender to the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation . . . ."

**Settlement** means the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called "closing" or "escrow" in different jurisdictions.

35.    A service is a "settlement service" when the lender requires the service as a condition of the loan. *See* 24 C.F.R. § 3500.2(b), Settlement service (12). Lenders, including Defendants, have long required, as a condition of obtaining a loan, that home mortgage borrowers pay fees for settlement services, including tax service, flood certification, and underwriting (funding fee).

36.    In October 2001, HUD issued its Statement of Policy 2001-1, which definitively interprets RESPA § 2607(8)(b), as follows:

RESPA was enacted in 1974 to provide consumers "greater and more timely information on the nature of the costs of [real estate] settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices . . ." 12 U.S.C. § 2601.

Payments that are unearned fees for settlement services occur in, but are not limited to, cases where: . . . (2) one settlement service provider marks up the cost of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or (3) one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

Statement of Policy 2002-1 at 19.

37.    Under 24 C.F.R. § 3500.2(b), tax service, flood certification, and underwriting (funding fee) services are settlement services subject to RESPA Section 8(b). Therefore, under federal law, mortgage lenders acting as settlement service providers are prohibited from charging

marked-up or unreasonable fees (Unearned Fees) for those settlement services. Defendants may not turn those settlement services into profit centers by charging borrowers Unearned Fees.

<u>**Defendants' Violations**</u>

38.    At least since January 1, 1995, Defendants have violated and continue to violate RESPA Section 8(b) and related HUD policies, including HUD Statement of Policy 2001-1, by requiring that Plaintiff and other proposed Class Members, as a condition to obtaining home mortgage loans, pay Unearned Fees for settlement services, including fees for tax service, flood certification, and underwriting (funding fee).

39.    **Tax Service and Flood Certification Fees**. Most mortgage loans made by Defendants require borrowers to pay tax service and flood certification fees as closing costs. Third-party vendors charge Defendants fees to perform these services. Without performing any additional services, Defendants then charge borrowers a mark-up of these vendors' fees and pocket the difference as profit.

a.    **Tax Service Fees**. Virtually every mortgage includes tax service fees charged to borrowers as closing costs. Third-party vendors charge Defendants fees to perform these services. Without performing any additional services, Defendants then charge borrowers a mark-up of these vendors' fees and pocket the difference as profit.

b.    **Flood Certification Fees**. Third-party vendors provide Defendants flood certifications that show whether subject properties are in a flood zone. Vendors charge Defendants a flat fee for flood certification. Defendants use outside vendors for this service, then charge borrowers greatly inflated fees, well above their costs, for these services, without Defendants' performing additional services.

40.    **Underwriting (Funding) Fees**. In 1995, Fannie Mae and Freddie Mac developed "automated" underwriting software that analyzes a borrower's ability to repay a loan that was available for repurchase on the secondary market. The underwriting software allows Fannie Mae and Freddie Mac to "guarantee" that they will purchase a qualifying loan on the secondary market, thus removing most if not all of the lender's risk on the loan. This was done to further

the agencies' compliance with their charter obligations to reduce loan costs and to make home ownership more affordable. Between 1995 and the end of 2000, Fannie Mae's and Freddie Mac's automated underwriting software was used to analyze approximately 20 million prospective loans.

41.    Before use of the automated software, an underwriter manually reviewed a completed loan file, which included such documents as W-2s, tax returns, verification of employment, verification of deposit, verification of mortgage, credit reports, borrower explanation letters regarding negative credit reporting, and other documents. Manual underwriting was expensive and time consuming. Prior to 1995, the average time to close a loan was 30 to 60 days, whereas a loan can now be closed within five days.

42.    At present, Fannie Mae and Freddie Mac charge lenders $20 per loan to use the software. Automated underwriting usually takes 15 to 20 minutes.

43.    For home mortgage borrowers whose automated underwriting score is "Accept", "Accept-Plus", "Approve Eligible" or a similar code indicating an acceptable loan for purchase by Fannie Mae or Freddie Mac, underwriting is essentially complete. Any further validation is minimal and does not justify the Unearned Fees Defendants charge home mortgage borrowers for underwriting. HUD Statement of Policy 2001-1 states: "The regulations . . . make clear that a charge by a single service provider where little or no services are performed is an unearned fee that is prohibited by the [RESPA] statute. 24 C.F.R. 3000.14(c)."

44.    Freddie Mac recently calculated that each residential buyer and/or each individual refinancing a loan, should be saving between $400 and $650 in closing costs due to the widespread use of the agencies' underwriting software. Defendants either use Freddie Mac's or Fannie Mae's automated underwriting software or use their own automated underwriting software, with comparable efficiencies and cost savings.

45.    Defendants usually obtain loan underwriting services either by paying Fannie Mae or Freddie Mac a $20 per-loan fee to use the agencies' automated underwriting software, or by using their own underwriting software. Defendants nevertheless charge home loan borrowers

up to 25 times Defendants' actual underwriting costs. Indeed, Defendants charge home mortgage borrowers more for automated underwriting than they charged when underwriting was performed manually.

46.    Plaintiff and other proposed Class Members paid Unearned Fees to Defendants under a mistake of fact resulting from Defendants' failure to disclose that their fees exceeded their actual costs for settlement services, including those set forth above.

47.    Defendants continue to charge Unearned Fees for settlement services as a condition to home mortgage borrowers' obtaining loans and will continue to apply such charges through the date of trial.

48.    Defendants' imposition of Unearned Fees on Plaintiff and other proposed Class Members violates RESPA, related federal regulations as well as HUD policies (including HUD Policy Statement 2001-1) and RESPA policy. Defendants' misconduct also undermines the efforts of Fannie Mae and Freddie Mac to accomplish the statutory mandate of increasing the affordability of home ownership.

## **Facts Relating to Plaintiff**

49.    Defendants charged Unearned Fees to Plaintiff on or about January 24, 2002 for tax service, flood certification, and underwriting (funding fees).   Plaintiff's HUD-1 Statement showed the following fees were paid to GMAC Mortgage Corporation: (a) "Tax Service"; (b) "Flood Cert Fee"; and (c) "Funding Fee", which is for underwriting.

## **Class Action Allegations**

50.     Plaintiff brings this lawsuit on behalf of himself and the proposed plaintiff Class Members under Rule 23 of the Federal Rules of Civil Procedure. The proposed class consists of:

> All persons who, on or after January 1, 1995, obtained from Defendants one or more federally related residential mortgage loan(s) whose automated underwriting scores were "Accept", "Accept-Plus", "Approve Eligible", or a similar code indicating an acceptable loan for purchase by Fannie Mae or Freddie Mac, and who paid fees to Defendants for tax service, flood certification, and/or underwriting.

51.     The Class is believed to comprise many thousands of residential mortgage borrowers in the United States, the joinder of whom is impracticable, and for whose claims class treatment will provide substantial benefit to both the parties and the court system.  A well-defined commonality of interest in the questions of law and fact involved affects Plaintiffs and proposed Class Members.  Common questions of law and fact predominate over any questions that may affect Class Members individually.  The common questions include:

(a)     For the settlement services described above provided by third parties, did Defendants mark up the costs of those services without providing actual, necessary, and distinct services to justify the original charge; and if so, by how much?

(b)     For the settlement services described above provided directly by Defendants, did Defendants charge borrowers a fee where no, nominal, or duplicative work was done or the fee was in excess of the reasonable value of the services actually performed; and if so, by how much?

(c)     What declaratory or injunctive relief may Plaintiff and other proposed Class Members obtain against Defendants under RESPA?

(d)     Are the elements of claims for unjust enrichment and money had and received satisfied in this case?

52.     Plaintiff's claims are typical of the claims of the proposed class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed class.  Plaintiff does not have any interests antagonistic to those of the class.  Plaintiff has retained competent and experienced counsel in the prosecution of this type of litigation.  The questions of law and fact common to the Class Members, some of which are set out above, predominate over any questions affecting only individual Class Members.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because Class Members number in the thousands and individual joinder is impracticable.  The expense and burden of individual litigation would make it

impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff's claims is manageable.

54.     Unless a class is certified, Defendants will retain monies received as a result of their schemes to collect Unearned Fees from Plaintiff and proposed Class Members.  Unless a class-wide injunction is issued, Defendants will continue to commit violations against residential mortgage borrowers.

55.     In violation of RESPA and of HUD's interpretive regulations, pronouncements, and policies, Defendants continue each year to charge and collect Unearned Fees from home buyers.  Defendants' imposition of charges that are Unearned Fees each year prevents tens of thousands of families from qualifying to buy a home in the United States.

**Accrual, Fraudulent Concealment,**
**Continuing Violation, and Equitable Tolling**

56.     The claims asserted in this Complaint did not accrue, and the statute of limitations did not begin to run, until Plaintiff and the proposed Class Members knew or reasonably should have known that they were suffering injuries based upon the alleged conduct.  Plaintiff and the proposed Class Members did not know and would not have reasonably known that they were injured until less than one year prior to the filing of this Complaint.

57.     Furthermore, the running of the statute of limitations has been suspended as a result of Defendants' fraudulent concealment of their practices.  Prior to one year before the filing of this action, Defendants had not publicly disclosed and had actively concealed their misconduct.  Any applicable statute of limitations is also tolled under the doctrine of equitable tolling.  Neither Plaintiff nor the proposed Class Members could reasonably know, through the exercise of due diligence, of Defendants' misconduct.

58.     Defendants were in sole possession of the information regarding the cost of the settlement services for which they were charging borrowers, and actively concealed that they were collecting Unearned Fees from Plaintiff and the proposed Class Members.

12

59.    Plaintiff and the proposed Class Members were not given any information that would have alerted them to Defendants' unlawful conduct with respect to marked up or unreasonable settlement charges.  The loan agreements and disclosure documents do not disclose those facts.

60.    That the charges imposed on Plaintiff for settlement services were marked up or unreasonable was a fact unknown to, and essentially unknowable by, Plaintiff and the proposed Class Members, because Defendants' costs for providing or obtaining the services were not available to or discoverable by Plaintiff and the proposed Class Members.  The unknown and inherently unknowable nature of Defendants' unlawful charges did not give Plaintiff any reason to inquire, investigate, or discover Defendants' wrongdoing.  As a practical reality, it was impossible for persons closing on a residential loan to detect Defendants' violations.

61.    Defendants' scheme and misconduct were, by design and in practice, inherently self-concealing.  Defendants knew Plaintiff and the proposed Class Members could not determine whether or not the fees they were charged were marked up or unreasonably high.

62.    Defendants' violations are continuing because Defendants fraudulently intend to conceal their wrongdoing, and the facts required to uncover their wrongdoing.  Plaintiff's claims have accrued within the limitations period because Defendants' violations are continuing.

63.    Defendants are equitably estopped from raising statute of limitations as a defense.  Equitable tolling is justified based upon the matters alleged throughout this Complaint.

64.    Plaintiff and the proposed Class Members have acted with reasonable prudence with respect to their rights.  The facts that support Plaintiff's causes of action were not apparent to Plaintiff or the proposed Class Members until shortly before the filing of this Complaint.

### COUNT ONE
### Violation of RESPA

65.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth here.

13

66.     Defendants violated RESPA Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations by charging residential mortgage borrowers Unearned Fees for settlement services, including tax service, flood certification, and underwriting (funding fees).

67.     Plaintiff and the proposed Class Members are persons "charged for the settlement service involved in the violation," RESPA Section (8)(b)(2), and are statutorily entitled to awards of three times the amount of any charge they paid for settlement services.

## COUNT TWO
### Unjust Enrichment

68.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth here.

69.     Defendants received and will continue wrongfully to receive millions of dollars as a result of the misconduct alleged above.

70.     As a result, Plaintiff and the proposed Class Members have conferred a benefit on Defendants.  Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.  Defendants will be unjustly enriched should they be allowed to retain such funds.

## COUNT THREE
### Money Had and Received

71.     Plaintiff repeats and realleges the allegations set forth above, as though fully set forth here.

72.     Defendants have obtained money from Plaintiff and the proposed Class Members by fraud, the exercise of undue influence, menace or threat, through compulsion or duress, and/or through a mistake of law and/or fact.

73.     As a result, Defendants have in their possession money which in equity belongs to Plaintiff and the proposed Class Members which should be refunded to Plaintiff and the proposed Class Members.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the Class as requested herein.

B.    Awarding Plaintiff and the proposed Class Members damages, including damages of three times the amount of charges paid by Plaintiff and the proposed Class Members for settlement services as alleged herein.

C.    Awarding restitution to Plaintiff and the proposed Class Members.

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful.

E.    Awarding punitive damages in an amount to be determined at trial.

F.    Awarding attorneys' fees and costs.

G.    Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 21, 2002                              **BARRACK, RODOS & BACINE**


                                                  _____
                                                  LEONARD BARRACK
                                                  DANIEL E. BACINE
                                                  JEFFREY W. GOLAN
                                                  3300 Two Commerce Square
                                                  2001 Market Street
                                                  Philadelphia, PA 19103
                                                  Telephone:  (215) 963-0600
                                                  Facsimile:  (215) 963-0838

**MILBERG WEISS BERSHAD**
  **HYNES & LERACH LLP**
MICHAEL C. SPENCER
SUSAN M. GREENWOOD
One Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile: (212) 868-1229

**MILBERG WEISS BERSHAD**
  **HYNES & LERACH LLP**
JOHN J. STOIA, JR.
TIMOTHY G. BLOOD
THOMAS R. MERRICK
HELEN I. ZELDES
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

**PACKARD, PACKARD & JOHNSON**
CRAIG H. JOHNSON
LON D. PACKARD
JOANN SHIELDS
2795 Cottonwood Parkway, Suite 600
Salt Lake City, UT 84121
Telephone: (801) 428-9000
Facsimile: (801) 428-9090

VON G. PACKARD
RONALD D. PACKARD
JACQUETTA BARDACOS
Four Main Street, Suite 200
Los Altos, CA 94022
Telephone: (650) 947-7300
Facsimile: (650) 947-7301

16

**NIX, PATTERSON & ROACH**
CARY PATTERSON
NELSON ROACH
BRADY PADDOCK
MICHAEL ANGELOVICH
2900 St. Michael Drive, 5th Floor
Texarkana, TX 75503
Telephone: (903) 223-3999
Facsimile: (903) 223-8520

**THE LAW OFFICES OF MICHAEL E. HUBER**
MICHAEL E. HUBER
8170 S. Highland Drive, Suite E5
Sandy, UT 84093
Telephone: (801) 733-5807
Facsimile: (801) 733-0132

**Attorneys for Plaintiff**