IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
FRANCIS SANTIAGO,                    )
    ON BEHALF OF HIMSELF AND ALL     )
    OTHERS SIMILARLY SITUATED,       )    Civil Action
                                     )    No. 02-CV-04048
                Plaintiff            )
                                     )
                                     )
           v.                        )
                                     )
GMAC MORTGAGE GROUP, INC.,           )
                                     )
GMAC RESIDENTIAL HOLDING             )
    CORP., and                       )
                                     )
GMAC MORTGAGE CORPORATION            )
                                     )
                Defendants           )
                                     )
```

                              *    *    *

APPEARANCES:
            CRAIG H. JOHNSON, ESQUIRE,
            DANIEL E. BACINE, ESQUIRE,
            GREGORY N. HOOLE, ESQUIRE,
            HELEN I. ZELDES, ESQUIRE,
            JEFFREY W. GOLAN, ESQUIRE,
            JOANN SHIELDS, ESQUIRE,
            LON D. PACKARD, ESQUIRE,
            MICHAEL C. SPENCER, ESQUIRE,
            SUSAN M. GREENWOOD, ESQUIRE, and
            TIMOTHY G. BLOOD, ESQUIRE,
                On behalf of Francis Santiago,
                On behalf of himself and all
                Others similarly situated,

            KEVIN M. TOTH, ESQUIRE, and
            ROBERT A. NICHOLAS, ESQUIRE
                On behalf of GMAC Mortgage
                Group, Inc., GMAC Residential
                Holding Corp., and GMAC
                Mortgage Corporation

                              *    *    *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on the Motion of Defendants GMAC Mortgage Group, Inc., GMAC Residential Holding Corp., and GMAC Mortgage Corp. to Dismiss Plaintiff's Complaint. The motion was filed September 6, 2002.[1]  This case was reassigned from the calender of our colleague United States District Judge John R. Padova on December 20, 2002.  For the reasons expressed below, we grant defendants' motion and dismiss the Complaint of plaintiff Francis Santiago, on behalf of himself and all others similarly situated.

Procedural Background

Plaintiff initiated this lawsuit by filing a Complaint on June 24, 2002.  Count One of plaintiff's Complaint asserts a violation of the Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617.  Count Two asserts a state law claim for unjust enrichment.  Count Three alleges a state law cause of action for money had and received.

---

[1] Plaintiff filed a memorandum in opposition to defendants' motion on October 25, 2002.  While a party may appropriately attempt to distinguish or narrow contravening legal authority, references by counsel in plaintiff's memorandum to an Opinion of the United States Court of Appeals for the Fourth Circuit, Boulware v. Crossland Mortgage Corp., 291 F.3d 261 (4th Cir. 2002), as "shoddy", "disingenuous", and "ridiculous" is both disrespectful and unprofessional.  See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, page 22.

Defendants filed a reply brief on November 12, 2002 and a supplemental brief on December 31, 2002.

-2-

Defendants' motion to dismiss raises the issue of how 12 U.S.C. § 2607, also known as Section 8(b) of RESPA, should be interpreted.[2]  For the purposes of this motion defendants concede that all of the factual averments in plaintiff's Complaint are true.

In the Complaint, plaintiff asserts that Section 8(b) should be interpreted to permit a cause of action for damages when a mortgage service provider charges and retains an unearned fee.  Plaintiff adopts the interpretation of the Secretary of Housing and Urban Development ("Secretary").[3]  The United States Courts of Appeals for the Fourth, Seventh, and Eighth Circuits have rejected plaintiff's position and held that Section 8(b) unambiguously does not permit such an interpretation.  We are not aware of any decision of the United States Court of Appeals for the Third Circuit which addresses this issue.

As discussed below, we agree with the Fourth, Seventh, and Eighth Circuit Courts of Appeals and find Section 8(b) unambiguous.  We conclude that the intent of Congress is clear from the text of the statute and statements from Congressional

---

[2]  The terms "Section 8(b)" and "12 U.S.C. § 2607(b)" refer to the same statutory passage.  They are used interchangeably throughout this Opinion. For ease of reference, we use "Section 8(b)" in the text and "12 U.S.C. § 2607(b)" in citation format.

[3]  See 24 C.F.R. § 3500.14(c) and the Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees under Section 8(b), 66 Fed.Reg. 53052, 53058, 53059 (October 18, 2001).

reports.  We further conclude that the statute neither supports plaintiff's interpretation, nor permits the Secretary's interpretation.

<u>Facts</u>

Based upon the averments in plaintiff's Complaint, which for purposes of this motion to dismiss we must accept as true, the pertinent facts are as follows:

Plaintiff owns a home, and resides in Provo, Utah. Plaintiff solicited and obtained a mortgage for that home from one of the three defendants.  (While plaintiff does not clarify which of the three defendants was the mortgagee, he claims that all three defendants should be held liable because all three entities constitute a "single entity.")

Defendants charged and collected fees from plaintiff for settlement services in connection with the financing of plaintiff's home in January 2002.  Defendants required plaintiff to pay these fees for settlement services including fees for tax service, flood certification, and underwriting as a condition of obtaining a home mortgage loan.

The work in connection with the tax services and flood certification was performed by third parties.  Defendants charged plaintiff what the third party charged defendants for the services plus a markup, although defendants did not themselves

perform any services in those regards.  Defendants retained the
markup as profit.

In terms of the underwriting fees, the fair market
value of the underwriting service is $20.00.  Plaintiff arrives
at this calculation because the Fannie Mae Foundation ("Fannie
Mae") and the Freddie Mac Foundation ("Freddie Mac"), both quasi-
federal agencies charged with reducing the costs of home
mortgages, offer underwriting software to corporations like
defendants.  The underwriting software greatly reduces both the
time and expense of underwriting.

Fannie Mae and Freddie Mac charge $20.00 for use of the
software.  According to plaintiff, whether defendants use the
Freddie Mac or the Fannie Mae software or use their own software,
the charge for underwriting should only be $20.00.  Defendants
charged a markup on these services and retained the markup as
profit.


<u>Summary of Decision</u>

In this case defendant mortgage brokers collected fees
from plaintiff for real estate settlement services in connection
with obtaining a mortgage for plaintiff's home.  The work in
connection with some of those services was performed by third
parties.  Defendants charged plaintiff what the third parties
charged defendants for the services, plus a markup, although

-5-

defendants did not perform any services in those regards. Defendants retained the entire markup as profit and did not split or share the profits with anyone.

Plaintiff contends that defendants' conduct violated Section 8(b) of RESPA. Plaintiff seeks money damages for the alleged violation on behalf of himself and all others similarly situated.

Section 8(b) of RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge...for...a real estate settlement service...other than for services actually performed."

Based upon the text of Section 8(b), the language of the "Congressional findings and purpose" section of the statute (12 U.S.C. § 2601(a)), and from the Congressional reports, debates and record, we find that both the intent of Congress and the text of the statute are clear. Accordingly, we conclude that the statute does not permit a cause of action for damages when a mortgage service provider charges and retains an unearned fee, absent a kickback, referral fee or rebate (except in return for services actually performed), unless the unearned fee is split between two parties.

Because plaintiff in this case does not plead that defendants split the overcharged fees with a third party, such a deficiency is fatal to plaintiff's Complaint. Therefore, we

-6-

grant defendants' motion to dismiss and dismiss plaintiff's Complaint.

We reject the contrary position of the Secretary of Housing and Urban Development ("HUD"), relied upon by plaintiff. The Secretary concluded that a single service provider may be liable under Section 8(b) when the provider charges a fee that exceeds the reasonable value of goods, facilities, or services provided. Under our interpretation, compensating a third party for services actually performed, without giving the third party a portion, split, or percentage of the overcharge, does not violate the statute.

Moreover, under our interpretation, violation of the statute requires more than a division of a charge between two people. Rather the statute prohibits a division of an <u>unearned</u> charge between two people. In our view Section 8(b) unambiguously proscribes the splitting of overcharges. To constitute a violation, a service provider must have illegally shared unearned fees with a third party.

We find that Congress considered and explicitly rejected a system of price controls for fees. Rather, Congress concluded that the price of real estate should be set in the market. We conclude that Congress intended to regulate the underlying conduct of the settlement business rather than fixing the price structure of the market.

-7-

Congress did not construct an elaborate regulatory structure of price controls over the mortgage industry. Instead, Congress sought the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services. In short, Congress decided to address areas of misconduct rather than to impose itself on the whole market.

Following is a more detailed discussion of our conclusions and analysis.

### Standard for Motion to Dismiss

When considering a motion to dismiss, the court must accept as true all factual allegations in the Complaint and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corp.</u>, Civ. No. 02-1916, 2003 U.S.App. LEXIS 7690, *4-5, 2003 WL 1919361 (3d Cir. April 23, 2003)(citing <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1411 (3d Cir. 1993)). "A Rule 12(b)(6) motion should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997) (citing <u>D.P. Enter. Inc. v. Bucks County Community College</u>, 725 F.2d 943, 944 (3d Cir. 1984)). "But a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion

to dismiss." Morse, 132 F.3d at 906. (Citations omitted.)

When weighing a motion to dismiss, the court may consider the Complaint, attachments to the Complaint and "public records deemed to be undisputedly authentic." Greer v. Smith, 59 Fed. Appx. 491, 492 n.1 (3d Cir. 2003). Both parties have submitted numerous documents from various court proceedings involving the issues presented here and documents from the Department of Housing and Urban Development ("HUD"). Because these documents are public records, they are considered to be undisputedly authentic. See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). Accordingly, we will not convert the motion to dismiss to a motion for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Jurisdiction

Plaintiff relies on the RESPA claim to establish federal question jurisdiction. See 12 U.S.C. § 2614; 28 U.S.C. § 1331. Defendants assert that if the RESPA claim is dismissed, then we lack federal question jurisdiction concerning the other two state law counts. Moreover, defendants argue that there is no basis for diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy does not exceed $75,000.

Plaintiff neither refutes defendants' contention, nor asserts that diversity jurisdiction would be proper should the RESPA claim fail.  Therefore, both federal jurisdiction and the disposition of this action rest on how we interpret Section 8(b).

## Discussion

To determine if Section 8(b) permits plaintiff's interpretation, we begin with the text of the statute.  Section 8(b) provides:

> **Splitting charges** [-] No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).  The parties differ as to whether Section 8(b) proscribes the acceptance of any unearned fee (plaintiff's interpretation) or whether it requires that an unearned fee be split before liability is incurred (defendants' interpretation).

Defendants argue that the statute is unambiguous.  They contend that a plain reading of the statute requires that in order for there to be a statutory violation, two parties must split an unearned fee.  Defendants assert that to read Section 8(b) as plaintiff suggests undermines the language of the statute and the intent of Congress.

Plaintiff counters that the statute may have numerous

-10-

interpretations.  Plaintiff notes in both the Complaint and response that the Secretary, who is given authority to interpret the statute,[4] has interpreted the statute to impose liability when a mortgage service provider retains an unearned fee. Plaintiff adopts the Secretary's interpretation.  Plaintiff asserts that because the statute is ambiguous and the Secretary has resolved the ambiguity with his own interpretation, the Secretary's interpretation is entitled to deference under <u>Chevron v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

For the reasons expressed below, we adopt defendants' interpretation.

The Secretary's interpretation of Section 8(b) is ripe for review because plaintiff has adopted the Secretary's position as his own.[5]  When considering an administering agency's interpretation of a statute we must employ a two-part test. "First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter" and effect must be given to the intent of Congress.  <u>Chevron</u>,

---

[4] "The Secretary is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this Act."  12 U.S.C. § 2617(a).

[5] "The judiciary is the final authority on issues of statutory construction."  <u>Chevron</u>, 467 U.S. at 843 n.9, 104 S.Ct. at 2782, 81 L.Ed.2d at 703.

467 U.S. at 842-843, 104 S.Ct. at 2781, 81 L.Ed.2d at 702-703.

"If...the court determines Congress has not directly addressed the precise question at issue...the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute."  Chevron, 467 U.S. at 843, 104 S.Ct. at 2781-2782, 81 L.Ed.2d at 703.

In reviewing an agency's interpretation at this second stage we need only determine if the interpretation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute...unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."  Chevron, 467 U.S. at 845, 104 S.Ct. at 2783, 81 L.Ed.2d at 704.

When considering "whether Congress has directly spoken to the precise question at issue," Chevron, 467 U.S. at 842, 104 S.Ct. at 2781, 81 L.Ed.2d at 702-703, we are not bound by the linguistics of the statute.  Barnhart v. Walton, 535 U.S. 212, 218, 122 S.Ct. 1265, 1269-1270, 152 L.Ed.2d 330, 338-339 (2002). Rather we must probe "the statute's basic objectives." Walton, 535 U.S. at 219, 122 S.Ct. at 1270, 152 L.Ed.2d at 339.  We may consider how long the agency has interpreted the statute in the manner in question and whether Congress has amended or reenacted

the provision without harm to the agency's interpretation.[6]
Walton, 535 U.S. at 219-220, 122 S.Ct. at 1270, 152 L.Ed.2d
at 339-340.  We may also consider the complexity of the statutory
and regulatory framework when determining the level of deference
to accord an agency's interpretation.  See Walton, 535 U.S.
at 222, 122 S.Ct. at 1272, 152 L.Ed.2d at 341; Skidmore v. Swift
& Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129
(1944).

Congress announced its rationale for RESPA in the
"Congressional findings and purpose":

> The Congress finds that significant reforms in the
> real estate settlement process are needed to
> insure that consumers throughout the Nation are
> provided with greater and more timely information
> on the nature and costs of the settlement process
> and are protected from unnecessarily high
> settlement charges caused by certain abusive
> practices that have developed in some areas of the
> country.

12 U.S.C. § 2601(a).

Congress went on to identify specific areas which the
statute was to address:

> It is the purpose of this chapter to effect
> certain changes in the settlement process for
> residential real estate that will result—

---

[6] The Supreme Court marginalized the first factor concerning longevity
of regulations in the same Opinion by recognizing that the Court had
previously rejected arguments against according an interpretation deference
because of the recent enactment of an interpretation, interpretations enacted
in expectation of litigation, and interpretations that have not completed the
notice-and-comment process.  Walton, 535 U.S. at 221-222,
122 S.Ct. at 1271-1272, 152 L.Ed.2d at 341.

> (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
>
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
>
> (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
> (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b).  Congress did not address retention of markups or unearned fees absent a kickback or referral fee arrangement in its statement of the purpose of the act.

Plaintiff seeks to interpret Section 8(b) to establish a price-control system that prevents mortgage service providers from charging beyond cost for their services.  To the extent that the intent of Congress can be discerned from Congressional reports, debates, and statement, Congress did not intend plaintiff's construction.

"Congress considered and explicitly rejected a system of price control for fees; it concluded that the price of real estate services should be set in the market."  Mercado v. Calumet Federal Savings & Loan Association, 763 F.2d 269, 271 (7th Cir. 1985)(citing 1974 U.S.C.C.A.N.[7] 6549-6550).  As noted in the

---

[7] United States Code Congressional & Administrative News.

Senate Report to the Committee on Banking, Housing, and Urban
Affairs "[i]n a number of areas of the country, competitive
forces in the conveyancing industry have lead to the payment of
referral fees, kickbacks, rebates and unearned commissions as
inducements to those persons who are in a position to refer
settlement business."  Haug v. Bank of America, 317 F.3d 832, 838
n.6 (8th Cir. 2003).  (quoting 1974 U.S.C.C.A.N. 6551).

> As a result, Section 8(b)
>
>> "is intended to prohibit all kickback and referral
>> fee arrangements whereby any payment is made or
>> 'thing of value' furnished for the referral of
>> real estate settlement business.  The section also
>> prohibits a person that renders a settlement
>> service from giving or rebating any portion of the
>> charge to any other person except in return for
>> services actually performed."

Mercado v. Calumet Federal Savings & Loan Association,
763 F.2d 269, 270-271 (7th Cir. 1985)(quoting S. Rep. 93-866,
93d Cong., 2d Sess. (1974), reprinted at 1974 U.S.C.C.A.N. 6551).
Accordingly, we conclude, as did the Seventh Circuit in Mercado,
that Congress intended to regulate the underlying conduct of the
settlement business rather than fixing the price structure of the
market.

> Nevertheless, the Secretary enacted 24 C.F.R.
§ 3500.14(c) to implement Section 8(b).[8]  The Secretary defined

---

[8]  **No split of charges except for actual services performed.**  No
person shall give and no person shall accept any portion, split,
or percentage of any charge made or received for the rendering of
a settlement service in connection with a transaction involving a
                                              (Footnote 8 continued)

-15-

the contours of HUD's interpretation in the Real Estate

Settlement Procedures Act Statement of Policy 2001-1:

Clarification of Statement of Policy 1999-1 Regarding Lender

Payments to Mortgage Brokers, and Guidance Concerning Unearned

Fees under Section 8(b) ("RESPA Statement of Policy 2001-1"), 66

Fed. Reg. 53052 (October 18, 2001).

In the statement, the Secretary found legally

distinguishable the situations:

> (1) where one settlement service provider receives
> an unearned fee from another provider;
>
> (2) where one settlement service provider charges
> the consumer for third-party services and retains
> an unearned fee from the payment received; or
>
> (3) where one settlement service provider accepts
> a portion of a charge (including 100% of the
> charge) for other than services actually
> performed.

RESPA Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53058.

The Secretary specifically addressed arguments like

that raised by defendants and adopted by the Fourth, Seventh, and

Eighth Circuit Courts of Appeals.  The Secretary found the

interpretation "that a single settlement service provider can

---

(Footnote 8 continued:)
> federally related mortgage loan other than for services actually
> performed.  A charge by a person for which no or nominal services
> are performed or for which duplicative fees are charged is an
> unearned fee and violates this section.  The source of the payment
> does not determine whether or not a service is compensable.  Nor
> may the prohibitions of the Part be avoided by creating an
> arrangement wherein the purchaser of services splits the fee.

24 C.F.R. § 3500.14(c).

charge unearned or excessive fees so long as the fees are not shared with another...[to be] an unnecessarily restrictive interpretation of a statute designed to reduce unnecessary costs to consumers." RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53058. Furthermore, the Secretary "interpret[ed] Section 8(b) to mean that two persons are not required for the provision to be violated." RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53058.

To fortify the Secretary's position, the Secretary further stated that "HUD does not regard the provision as restricting only fee splitting among settlement service providers."[9] In so doing, HUD opened the door on criminal and civil enforcement actions against mortgagors.

The Secretary added that "[a] settlement service provider may not levy an additional charge upon a borrower for another settlement service provider's services without providing additional services[10] that are bona fide and justify the increased charge." As such, the Secretary found that "[a] single

_____

[9] The Secretary did state that "HUD is, of course, unlikely to direct any enforcement actions against consumers for the payment of unearned fees, because a consumer's intent is to make payment for services, not an unearned fee." RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53059. But the Secretary, *a priori*, must believe that it is within the ken of belief that Congress left open to the agency an interpretation that would make a consumer's payment of an unearned fee to a settlement service provider a criminal offense. Such a belief is explicitly rejected in Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002). We reject the Secretary's interpretation.

[10] These services must be "actual necessary and distinct." RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53059.

-17-

service provider...may be liable under Section 8(b) when it
charges a fee that exceeds the reasonable value of goods,
facilities, or services provided.  RESPA Statement of Policy
2001-1, 66 Fed. Reg. at 53059.

        Before determining whether the Secretary's
interpretation is entitled to deference, we must decide whether
Section 8(b) is ambiguous.  To make this determination we examine
both the text of the statute and the clear statements of
Congressional intent.  <u>Chevron</u>, 467 U.S. at 842-843,
104 S.Ct. at 2781, 81 L.Ed.2d at 702-703.

        Understanding that the statute is directed at mortgage
service providers and that the jurisdictional component is
satisfied, we may boil the statute down to the following: "No
person shall give and no person shall accept any portion, split,
or percentage of any charge...other than for services actually
performed."  12 U.S.C. § 2607(b).  When so reduced, the statute
clearly requires more than a division of a charge between two
people, but rather a division of an unearned charge between two
people before liability may be imposed.

        This conclusion is bolstered by decisions of the
Fourth, Seventh, and Eighth Circuit Courts of Appeals.  When
confronted with this issue, the Fourth Circuit concluded that
"[c]ompensating a third party for services actually performed,
without giving the third party a 'portion, split, or percentage'

-18-

of the overcharge, does not violate § 8(b)."  Boulware,
291 F.3d at 265.

The Seventh Circuit addressed the issue next.  It
determined that "[t]here [was] not enough play in the statutory
joints to allow HUD to impose its own 'interpretation' under the
aegis of Chevron."  Krzalic v. Republic Title Co., 314 F.3d 875,
881 (7th Cir. 2002).  As a result, the Seventh Circuit rejected
the Secretary's interpretation of Section 8(b).

Finally, the Eighth Circuit rejected the Secretary's
interpretation and held that Section 8(b) unambiguously
proscribed the splitting of overcharges.  Haug, 317 F.3d 832.  It
found that "[t]his reading of the statute is consistent with the
decisions of both the Fourth and Seventh Circuits, which have
held that the plain language of Section 8(b) requires plaintiffs
to plead facts showing that the defendant illegally shared
[unearned] fees with a third party."  317 F.3d at 836.

In the instant case, plaintiff fails to plead that
defendants split the overcharged fees with a third party.  Such a
deficiency is fatal to plaintiff's Complaint.

The only case that arguably lends support to
plaintiff's interpretation is United States v. Gannon,
684 F.2d 433, 438-439 (7th Cir. 1981).  In this criminal case,
the Seventh Circuit found that a county clerk violated Section
8(b) when he charged an extra "gratuity" fee for doing his job.

-19-

The <u>Gannon</u> Court found that the clerk violated Section 8(b) because he wore two hats.  The Court determined that Gannon split unearned fees between himself in his official capacity as a clerk and himself in his individual capacity.  684 F.2d at 438.  But there is no similar allegation presented to the undersigned.  Plaintiff's Complaint avers that GMAC wore only one hat, the keeper of unearned income.

Our finding that Section 8(b) requires a split of unearned fees is further supported by comparing the result of plaintiff's interpretation with Congress' statement of intention.  As the <u>Boulware</u> Court stated:

> Boulware is in effect asking us to subject all settlement services, including, *inter alia*, title searches, title examinations, title insurance, attorneys' services, property surveys, credit reports, pest inspections, real estate agents' and brokers' services, and loan processing, to broad price regulation.  In fact, under her interpretation of the statute, HUD or the federal courts could determine what settlement service fees are reasonable in the first instance, without an allegation that the fees were even marked up.... Further, Boulware would provide both a private right of action and potential criminal penalties to enforce the price controls she envisions § 8(b) creating.

291 F.3d 267.

But Congress did not construct an elaborate regulatory structure of price controls over the mortgage industry.  Rather, Congress sought the "elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain

-20-

settlement services."  12 U.S.C. § 2601(b).

Congress decided to address areas of misconduct rather than impose itself on the whole market.  If we were to hold differently, we would exponentially expand RESPA beyond what our coordinate branches of government designed.  Such an expansion is not permitted by the text of the statute or by the indicators of Congressional intent.

Finding no ambiguity in Section 8(b), we need not proceed to step two of the Chevron analysis and determine whether the Secretary's interpretation is entitled to deference.

## Conclusion

For the foregoing reasons, we find that plaintiff has failed to state a cause of action upon which relief may be granted.  Section 8(b) of RESPA does not provide redress for plaintiff's averred facts.  Accordingly, we grant defendants' motion and dismiss the Complaint.  Furthermore, because there is no basis for subject matter jurisdiction, we elect not to exercise supplemental jurisdiction over plaintiff's state law claims.