# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT



---

Appeal No. 03-4273

---

FRANCIS SANTIAGO,

Plaintiff-Appellant,

v.

GMAC MORTGAGE GROUP, INC.,
GMAC RESIDENTIAL HOLDING CORP.,
AND GMAC MORTGAGE CORP.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

---

## APPELLEES' PETITION FOR REHEARING
## AND REHEARING EN BANC

---

Robert A. Nicholas
James C. Martin
Charles L. Becker
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215) 851-8100

# TABLE OF CONTENTS

                                                                                    Page

TABLE OF AUTHORITIES ........................................................................ ii

REQUIRED STATEMENT FOR REHEARING EN BANC ................................. 1

PRELIMINARY STATEMENT ........................................................................ 2

THE PANEL OPINION ................................................................................. 3

ARGUMENT ............................................................................................... 7

I.    The Panel misapprehended RESPA's structure and purpose in
      concluding that RESPA Section 8(b) directly regulates the amounts
      lenders may charge borrowers for settlement services ..................................... 7

II.   The Panel opinion conflicts with the holdings of three other Circuit
      Courts of Appeal that RESPA Section 8(b) does not directly regulate
      the amounts lenders may charge borrowers for settlement services ........... 13

CONCLUSION ........................................................................................... 15

STATUTES AND REGULATIONS ADDENDUM

THE PANEL OPINION

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES:</u>

<u>Bouie v. City of Columbia</u>,
378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964) ......................................... 10

<u>Boulware v. Crossland Mortgage Corp.</u>,
291 F.3d 261 (4th Cir. 2002) ................................................................. 4, 5, 14

<u>Durr v. Intercounty Title Company of Illinois</u>,
14 F.3d 1183 (7th Cir.  1994) ................................................................. 13

<u>Echevarria v. Chicago Title & Trust Co.</u>,
256 F.3d 623 (7th Cir. 2001) ............................................................. 4, 5, 13

<u>Haug v. Bank of America</u>,
317 F.3d 832 (8th Cir. 2003) ............................................................. 4, 5, 14

<u>In re Mehta</u>,
310 F.3d 308 (3d Cir. 2002) ................................................................. 15

<u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>,
383 F.3d 49 (2d Cir. 2004) ................................................................. 5-7

<u>Krzalic v. Republic Title Co.</u>,
314 F.3d 875 (7th Cir. 2002) ............................................................. 4, 5, 14

<u>Sosa v. Chase Manhattan Mortgage Corp.</u>,
348 F.3d 979 (11th Cir. 2003) ................................................................. 5

<u>United States v. Graham Mortgage Corp.</u>,
740 F.2d 414 (6th Cir. 1984) ................................................................. 10

## <u>STATUTES:</u>

12 U.S.C. § 2607(a) ................................................................................. 8

12 U.S.C. § 2607(b) ............................................................................... 2, 9

12 U.S.C. § 2607(c) ............................................................................ 10

12 U.S.C. § 2607(d)(1) ...................................................................... 10

## LEGISLATIVE MATERIALS:

S. Rep. 93-866 (1974),
reprinted in 1974 U.S.C.C.A.N. 6546 ................................................ 12

## **REQUIRED STATEMENT FOR REHEARING EN BANC**

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance to the residential mortgage lending industry – *i.e.*, whether Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA") allows a cause of action against a lender where (a) the lender charged a borrower for performance of a real estate settlement service, (b) the lender hired a third-party vendor in connection with performance of the service, and (c) the lender charged the borrower more than the amount the lender paid the vendor for services rendered. The Panel concluded that Section 8(b) allows that cause of action. That decision conflicts with authoritative decisions of the United States Courts of Appeals for the Fourth, Seventh, and Eighth Circuits that Section 8(b) does not directly regulate the amounts consumers are charged for settlement services. The Panel decision is consistent with decisions of the Second and Eleventh Circuit Courts of Appeals, but conflicts even with the Second Circuit on the basis upon which this "markup" claim is cognizable.

Charles L. Becker

1

## PRELIMINARY STATEMENT

GMAC Mortgage[1] respectfully seeks rehearing and rehearing *en banc*

regarding the Panel's decision that Section 8(b) of RESPA allows a cause of action

against a lender that charges a borrower for performance of a settlement service

and pays a third-party vendor some lesser amount to perform the service.    Section

8(b) states:

> No person shall give and no person shall accept any portion, split or
> percentage of any charge made or received for the rendering of a real
> estate settlement service in connection with a transaction involving a
> federally related mortgage loan other than for services actually
> performed.

12 U.S.C. § 2607(b).    The Panel's interpretation of Section 8(b) impacts the

residential mortgage industry and the many lenders doing business within this

Circuit's geographic region.    It disturbs the settled expectations upon which

numerous loans have been made to the home-buying public and creates a new

cause of action where previously none existed.    Rehearing of this decision should

be granted on two grounds.

**First**, the Panel misapprehended Section 8's purpose in concluding that

Section 8(b) directly regulates the amounts lenders may charge consumers for

---

[1] Defendants GMAC Mortgage Group, Inc., GMAC Residential Holding
Corporation, and GMAC Mortgage Corporation are collectively referred to
throughout as "GMAC Mortgage."

settlement services. This construction overextends Section 8(b) and conflicts with RESPA's purpose and text. This error alone provides sufficient basis for rehearing.

**Second**, the Panel's decision conflicts with authoritative decisions from *three* Circuit Courts of Appeals. Interpreting RESPA's text and legislative history, these Courts have found that Section 8(b) only prohibits a settlement service provider from sharing a service fee with another person who made no contribution toward performing the service; that Section 8(b) does not directly regulate consumer charges for settlement services; and accordingly that Section 8(b) does not permit a claim for "markups." The Panel made no attempt to explain its rejection of those decisions. The Panel's irreconcilable (and unexplained) conflict with authoritative decisions of the Fourth, Seventh, and Eighth Circuit Courts of Appeals provides a further basis for rehearing in this case.

## THE PANEL OPINION

The allegations in this case are straightforward. Francis Santiago alleges that GMAC Mortgage charged and collected fees from Santiago for settlement services in connection with Santiago's purchase of his home: a tax service fee ($85), a flood certification fee ($20), and a funding fee ($250). According to Santiago, GMAC Mortgage hired third-party vendors to perform the tax and flood certification services and paid the vendors less than GMAC Mortgage charged

Santiago. (J.A. 41) GMAC Mortgage also allegedly charged Santiago more than the reasonable value of the funding service, which allegedly was $20. (J.A. 42) Santiago sued GMAC Mortgage for violating Section 8(b) of RESPA. Adopting the analysis of the Fourth, Seventh, and Eighth Circuit Courts of Appeals on this issue, the district court disagreed and dismissed Santiago's claim.[2] (J.A. 23)

On appeal, a Panel of this Court (Circuit Judges Roth and Chertoff, and District Judge Irenas) affirmed in part and reversed in part.[3] The Panel characterized the appeal as involving two distinct issues: (a) the treatment of an "overcharge," where a lender performs a service and allegedly charges a borrower more than the reasonable value of the service – *i.e.*, the funding fee; and (b) the treatment of a "markup," where a lender pays a third-party vendor for performance of a service and allegedly charges the borrower more than the amount paid to the vendor – *i.e.*, the tax service and flood certification fees.

The Circuit Courts have unanimously decided that "overcharges" are not cognizable under Section 8(b). But they split on the "markup" claim. On one

---

[2] See Haug v. Bank of America, 317 F.3d 832 (8th Cir. 2003); Krzalic v. Republic Title Co., 314 F.3d 875 (7th Cir. 2002); Boulware v. Crossland Mortgage Corp., 291 F.3d 261 (4th Cir. 2002); Echevarria v. Chicago Title & Trust Co., 256 F.3d 623 (7th Cir. 2001).

[3] Judge Chertoff heard oral argument but resigned from the Court before the opinion was filed. The opinion was filed by a quorum of the Panel under 28 U.S.C. § 46(d). A copy of the Panel decision is attached as an exhibit hereto.

hand, the Fourth, Seventh, and Eighth Circuits have held that Section 8 overall is designed only to prohibit settlement service providers from making payments that may expressly or effectively amount to kickbacks and referral fees; and that Section 8(b) only prohibits a settlement service provider from sharing a service fee with another person who made no contribution to the performance of the service. These courts make no distinction between "overcharge" and "markup" claims because neither claim fits within Section 8's conceptual framework. These courts thus recognize that RESPA does not directly control the amounts consumers are charged for settlement services. <u>See</u> <u>Haug</u>, 317 F.3d at 836; <u>Krzalic</u>, 314 F.3d at 880; <u>Boulware</u>, 291 F.3d at 263; <u>Echevarria</u>, 256 F.3d at 627.

On the other hand, the Eleventh Circuit has stated that Section 8(b) may bar a lender that made *no* contribution toward performing a settlement service from charging borrowers more than a vendor's charge for the service. <u>See</u> <u>Sosa v. Chase Manhattan Mortgage Corp.</u>, 348 F.2d 979 (11th Cir. 2003). Interestingly, the Eleventh Circuit affirmed the dismissal of a Section 8(b) claim because the plaintiff failed to make that allegation, and added that any such allegation would not be credible because the lender doubtless provided services and/or benefit to the borrower even though a third-party vendor had been hired. <u>See</u> <u>id.</u> at 983.

After <u>Sosa</u>, the Second Circuit found Section 8(b) to be ambiguous based on the conflict between <u>Sosa</u> and the Fourth, Seventh, and Eighth Circuits. <u>See</u> <u>Kruse</u>

v. Wells Fargo Home Mortgage, Inc., 383 F.3d 49, 58-59 (2d Cir. 2004).  The

Second Circuit held that Section 8(b) allowed a markup claim on the basis of

deference to a Policy Statement interpreting Section 8(b) published by the

Department of Housing and Urban Development ("HUD").  See id.  Kruse is the

first case to allow a mark-up claim to proceed on a construction of Section 8(b).

     Against the backdrop of the Circuit split, the Panel in Santiago affirmed the

dismissal of the "overcharge" claim but reversed the dismissal of the "markup"

claims.  The Panel accordingly joined all other Circuit Courts in concluding that

Section 8(b) unambiguously forbids the "overcharge" claim.  In reaching that

conclusion, the Panel noted that Section 8 provided no basis for dividing a charge

into its "reasonable" and "unreasonable portions – that is, the portion for "services

rendered" and the portion for "no services rendered."  See slip op. at 7.

     The Panel nevertheless concluded that Section 8(b) unambiguously allows

the markup claims.[4]  The Panel offered two bases for this decision:  (1) as between

a lender and third-party vendor, the same economic position could be generated

whether the lender marked-up the vendor's charges or the vendor awarded a

kickback to the lender; and (2) because Section 8(a) of RESPA already prohibits

---

[4] Interestingly, the Panel found Section 8(b) to be unambiguous both as to the *disallowance* of "overcharge" claim and the *allowance* of "markup" claims, even though Section 8(b) does not specifically address these fact patterns, which share essential characteristics.

formal kickbacks, Section 8(b) must have been intended to provide for a situation other than such kickbacks. See id. at 10-11.

By concluding that Section 8(b) unambiguously regulates the raw amounts that lenders charge consumers in the markup context, the Panel went beyond the reasoning in Kruse, where the Second Circuit found only that Section 8(b) was ambiguous and deferred to HUD's interpretation of the statute. See Kruse, 383 F.3d at 58-59. The Panel vacated the district court's dismissal of Santiago's state-law claims and remanded the case for further proceedings. See slip op. at 13.

## ARGUMENT

I.    **The Panel misapprehended RESPA's structure and purpose in concluding that RESPA Section 8(b) directly regulates the amounts lenders may charge borrowers for settlement services.**

The Panel opinion reflects a basic misunderstanding about Section 8's important but limited purpose. Congress designed Section 8 to prevent settlement service providers from making payments where the payments may expressly or effectively amount to inducements to refer business. Section 8(b) serves this purpose, as set forth below, and does not perform the additional (and distinct) function of regulating the raw amounts consumers are charged for settlement services, even in the "markup" context.

7

A review of Section 8's provisions make clear its limited scope. At the outset, Section 8(a) governs formal kickback arrangements based upon an agreement or understanding. Section 8(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). Section 8(a) prohibits settlement service providers from making payments to referral sources where the payment is "pursuant to any agreement or understanding" – *i.e.*, a formal kickback or referral arrangement. Id. Section 8(a) is a broad anti-kickback provision, but not all encompassing, because it requires proof of an "agreement or understanding" and does not purport to reach payments where there is no such evidence.

To illustrate Section 8(a)'s limited purpose, suppose a lender hires a third-party vendor to perform a settlement service; the vendor charges $40 for performing the service; and the lender charges the borrower $50 for the service. Section 8(a) does the following: (1) it prohibits the lender from paying some portion of its $10 profit to the realtor who referred the business pursuant to an existing referral agreement; and (2) it prohibits the vendor from paying some portion of its $40 fee back to the lender in exchange for the business pursuant to an existing referral agreement.

By comparison, Section 8(b) supports Section 8(a) by regulating payments that may fall outside Section 8(a)'s parameters (*i.e.*, no evidence of an agreement or understanding) but remain unjustified because the recipient has performed no settlement service in connection with the payment. It provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed.

12 U.S.C. § 2607(b). Section 8(b) regulates a situation where (1) a settlement service provider gives a portion of a service fee to another person, and (2) the recipient has not contributed to the performance of the service for which the fee was received. See <u>id.</u> By requiring both a giver and receiver of such unearned money, Section 8(b) prevents settlement service providers from making payments that fall outside Section 8(a)'s ambit but may effectively amount to kickbacks or referral fees. For example, even in the absence of an agreement or understanding, Section 8(b) prohibits the hypothetical lender from paying a portion of its $10 profit to the realtor unless the realtor has contributed to the performance of that settlement service. If the realtor has contributed, then the payment was "for services actually performed" and Section 8(b) is not a bar. See <u>id.</u>

That Section 8(a) and Section 8(b) begin with the same linguistic construction – "No person shall give and no person shall accept" – illustrates the interrelated purpose of these two provisions. It shows that Congress sought to

regulate different forms of the same essential conduct: payments by settlement service providers to persons in a position to refer business that may amount to kickbacks or referral fees. Bounded by that purpose, Sections 8(a) and 8(b) do not also directly regulate the amounts consumers are charged for settlement services.

Sections 8(c) and 8(d) confirm that Section 8 only regulates payments by settlement service providers to other persons, as opposed to the amounts lenders directly charge consumers. Section 8(c) focuses entirely on the relationships between settlement service providers – permitting providers to pay their agents for performing services (which is what happened in this case) and even permitting referral arrangements between providers under certain conditions and with appropriate disclosures. <u>See</u> 12 U.S.C. § 2607(c). More dramatically, Section 8(d)(1) imposes *criminal penalties* for a Section 8 violation:

> Any person or persons who violate the provisions of this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

28 U.S.C. § 2607(d)(1). It is unlikely that Congress would authorize imposing jail terms on lenders without providing fair warning of the proscribed conduct. <u>See</u> <u>Bouie v. City of Columbia</u>, 378 U.S. 347 (1964) (recognizing the "basic principle that a criminal statute must give fair warning of the conduct it makes a crime"). To the extent the Section 8(b) is ambiguous as to its scope, the rule of lenity requires a narrow construction. <u>See</u> <u>United States v. Graham Mortgage Corp.</u>, 740 F.2d 414

(6th Cir. 1984) (reversing conviction under Section 8(a) of RESPA under rule of lenity because Section 8(a) was ambiguous).

In sum, Section 8's various provisions show that (1) Section 8 generally regulates payments by settlement service providers to other persons, and (2) Section 8(b) specifically prohibits a settlement service provider from paying a portion of a fee to another person who did not contribute toward performing the service for which the fee was paid. Read as a whole, Section 8 thus prohibits a broad spectrum of payments that may expressly or effectively amount to kickbacks or referral fees. It does not also regulate a lender's direct charges to borrowers; such rate regulation lies entirely outside Section 8's ambit.[5]

The Panel fundamentally misunderstood Section 8's scope in concluding that "markups" were actionable under Section 8(b). The Panel reasoned primarily that a kickback or markup could place a borrower, lender, and vendor in the same economic position. See slip op. at 10. This abstract analysis avoids the terms of the statute. Whether a transaction amounts to a Section 8(b) depends on how the disputed payment matches the statutory language. Did a settlement service

---

[5] Consumers have many ways to challenge the amount of a fee imposed during a residential mortgage transaction. They may approach the appropriate licensing authority and file a complaint with that authority's consumer complaint division. They may approach law enforcement officials who seek to assure fair lending practices. However, RESPA is not a vehicle for asserting such claims.

provider share a portion of a service fee?    With whom?    Did the recipient contribute toward the performance of the service for which the fee was received? These questions guide a Section 8(b) analysis, but the Panel failed to ask them.

The Panel also failed to appreciate the implications of its earlier logic in dealing with "overcharges."  The Panel properly concluded that Section 8(b) does not regulate "overcharges" because Section 8 does not divide a "charge for services rendered" into its reasonable and unreasonable portions.  Yet, a markup is a form of overcharge:  the lender allegedly has charged more than the "value" of a service (defined by the vendor's charge) and the overcharge allegedly is unreasonable.  The Panel should have extended its overcharge logic to its markup analysis as well.

By failing to account for Section 8(b)'s limited purpose, the Panel opinion amounts to an unwarranted expansion of potential liability (both civil and criminal) for lenders under RESPA.[6]  The opinion creates liability where none previously had existed, and does so without any showing that Congress intended RESPA to be

---

[6] There is extensive legislative history on Congress' intent in enacting Section 8 in general and Section 8(b) in particular.  See GMAC Mortgage's Appellee brief at pages 18 through 26.  This legislative history confirms that Section 8 was designed by Congress only to prevent settlement service providers from making payments to those in a position to refer settlement business.  See S. Rep. 93-866 at 7 (July 9, 1974), reprinted in 1974 U.S.C.C.A.N. 6546, 6551.  The legislative history accordingly shows that GMAC Mortgage's alleged conduct falls outside Section 8's ambit.

construed in this manner. Because of RESPA's importance to the residential mortgage industry, it is imperative that RESPA be properly construed according to the statute's structure and to congressional intent. Accordingly, there is an immediate need for this Circuit to undertake a careful analysis of RESPA as relates to the issues in this case. Rehearing should be granted on this basis alone.

II.     **The Panel opinion conflicts with the holdings of three other Circuit Courts of Appeal that RESPA Section 8(b) does not directly regulate the amounts lenders may charge borrowers for settlement services.**

By expanding Section 8(b) into a price-control statute, the Panel's opinion conflicts with authoritative decisions of the Fourth, Seventh, and Eighth Circuit Courts of Appeals on the scope of Section 8(b). The Seventh Circuit, for example, repeatedly has rejected claims such as those asserted by Santiago, holding that "[a]t its core, RESPA is an anti-kickback statute," <u>Durr v. Intercounty Title Co. of Illinois</u>, 14 F.3d 1183, 1186 (7th Cir. 1994), and that imposing Section 8(b) liability on a lender "without requiring allegations that it shared an unearned fee with a third party . . . would radically, and wrongly, expand the class of cases to which RESPA § 8(b) applies." <u>Echevarria</u>, 256 F.3d at 627. As the Seventh Circuit has further noted, RESPA's overall context reinforces the conclusion that Section 8(b) does not regulate a lender's markups or overcharges:

> On plaintiffs' and HUD's view, Section 8(b) forbids a lender . . . to reprice any of the charges that it has incurred and is passing on to the borrower. This would make sense if RESPA were a public-utility or

other rate-regulating statute, but it is not.  The statute places no ceiling
on the amount that a [lender] can charge for its services

Krzalic, 314 F.3d at 880.

The Fourth Circuit likewise has rejected Santiago-like claims as an attempt
to convert RESPA into "a broad price control statute prohibiting any overcharge
for real estate settlement services."  Boulware, 291 F.3d at 263.  The Fourth Circuit
has explained that Section 8 aims only at sharing arrangements between settlement
service providers and those in a position to refer them business rather than at
unilateral overcharges (such as alleged by Santiago here):

> RESPA was meant to address certain practices, not enact broad price
> controls.  Congress chose to leave markups and the price of real estate
> settlement services to the free market . . . . Instead, Congress directed
> § 8 against a particular kind of abuse that it believed interfered with
> the operation of free markets – the splitting and kicking back of fees
> to parties who did nothing in return for the portions they received.

Id., 291 F.3d at 268.

After reviewing the statutory language and its import, the Eighth Circuit
joined the Seventh and Fourth Circuits in holding that Section 8(b) unambiguously
does not provide a cause of action for markups or otherwise regulate the amounts
that lenders charge borrowers for settlement services.  See Haug, 317 F.3d at 836.

It is noteworthy that three Circuit Courts have held that Section 8(b)
unambiguously would *not* permit Santiago's REPSA claims, while the Panel here

held that Section 8(b) unambiguously *did* permit those claims.[7]  <u>See</u> slip op. at 12 n.4.  The Panel decision makes no effort to explain why those decisions are wrong. Yet the need for such an explanation is critical.  Uniformity in the construction of federal statutes is a desirable goal and where a Circuit Court disagrees with its sister Circuits, it should provide the basis for its disagreement.  The need to flesh out and rationalize a conflict with the decisions of three Circuit Courts provides further grounds for rehearing *en banc*.

## CONCLUSION

The Panel's construction of RESPA § 8(b) to reach the amounts consumers are charged for settlement services misapprehends Section 8's purpose and overextends the statutory text.  This construction also conflicts with authoritative holdings of three Circuit Courts of Appeals.  Accordingly, GMAC Mortgage respectfully requests that this Court grant this Petition for Rehearing and Rehearing En Banc so the issues raised herein may be given full consideration.

---

[7] In that respect, the Panel's decision goes beyond the reasoning in <u>Kruse</u>, where the Second Circuit decided only that Section 8(b) was ambiguous and that deference to HUD's interpretation of the statute was appropriate.  <u>See Kruse</u>, 383 F.3d at 58-59.  This is a further conflict between the Panel decision and the authoritative decision of another Circuit Court.  Had the Panel concluded that Section 8 was ambiguous, it would have been appropriate to consider RESPA's legislative history.  <u>See</u> In re Mehta, 310 F.3d 308, 310 (3d Cir. 2002).  That history would have clarified any apparent ambiguity in the statute and made clear that Santiago's claims do not fall within Section 8's ambit.

Respectfully submitted,


*Charles L. Becker*
Robert A. Nicholas
James C. Martin
Charles L. Becker
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Dated: August 18, 2005

# STATUTES AND REGULATIONS ADDENDUM

12 U.S.C. § 2607 ................................................................................................ A-1

Westlaw.

12 U.S.C.A. § 2607

C

**Effective: September 30, 1996**

United States Code Annotated Currentness
  Title 12. Banks and Banking
    Chapter 27. Real Estate Settlement Procedures (Refs & Annos)

  → **§ 2607. Prohibition against kickbacks and unearned fees**

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

(c) Fees, salaries, compensation, or other payments

Nothing in this section shall be construed as prohibiting (1) the payment of a fee (A) to attorneys at law for services actually rendered or (B) by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance or (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed, (3) payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers, (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred (i) in the case of a face-to-face referral or a referral made in writing or by electronic media, at or before the time of the referral (and compliance with this requirement in such case may be evidenced by a notation in a written, electronic, or similar system of records maintained in the regular course of business); (ii) in the case of a referral made by telephone, [FN1] within 3 business days after the referral by telephone, (and in such case an abbreviated verbal disclosure of the existence of the arrangement and the fact that a written disclosure will be provided within 3 business days shall be made to the person being referred during the telephone referral); or (iii) in the case of a referral by a lender (including a referral by a lender to an affiliated lender), at the time the estimates required under section 2604(c) of this title are provided (notwithstanding clause (i) or (ii)); and any required written receipt of such disclosure (without regard to the manner of the disclosure under clause (i), (ii), or (iii)) may be obtained at the closing or settlement (except that a person making a face-to-face referral who provides the written disclosure at or before the time of the referral shall attempt to obtain any required written receipt of such disclosure at such time and if the person being referred chooses not to acknowledge the receipt of the disclosure at that time, that fact shall be noted in the written, electronic, or similar system of records maintained in the regular course of business by the person making the referral), (B) such person is not required to use any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership interest or franchise relationship, or (5) such other payments or classes of payments or other transfers as are specified in regulations prescribed by the Secretary, after consultation with the Attorney General, the Secretary of Veterans Affairs, the Federal Home Loan Bank Board, the Federal Deposit Insurance Corporation, the Board of Governors of the Federal Reserve System, and the Secretary of Agriculture. For purposes of the preceding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 U.S.C.A. § 2607

sentence, the following shall not be considered a violation of clause (4)(B): (i) any arrangement that requires a buyer, borrower, or seller to pay for the services of an attorney, credit reporting agency, or real estate appraiser chosen by the lender to represent the lender's interest in a real estate transaction, or (ii) any arrangement where an attorney or law firm represents a client in a real estate transaction and issues or arranges for the issuance of a policy of title insurance in the transaction directly as agent or through a separate corporate title insurance agency that may be established by that attorney or law firm and operated as an adjunct to his or its law practice.

(d) Penalties for violations; joint and several liability; treble damages; actions for injunction by Secretary and by State officials; costs and attorney fees; construction of State laws

(1) Any person or persons who violate the provisions of this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

(2) Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

(3) No person or persons shall be liable for a violation of the provisions of subsection (c)(4)(A) of this section if such person or persons proves by a preponderance of the evidence that such violation was not intentional and resulted from a bona fide error notwithstanding maintenance of procedures that are reasonably adapted to avoid such error.

(4) The Secretary, the Attorney General of any State, or the insurance commissioner of any State may bring an action to enjoin violations of this section.

(5) In any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees.

(6) No provision of State law or regulation that imposes more stringent limitations on affiliated business arrangements shall be construed as being inconsistent with this section.

CREDIT(S)

(Pub. L. 93-533, § 8, Dec. 22, 1974, 88 Stat. 1727; Pub. L. 94-205, § 7, Jan. 2, 1976, 89 Stat. 1158; Pub. L. 98-181, Title IV, § 461(b), (c), Nov. 30, 1983, 97 Stat. 1231; Pub.L. 100-242, Title V, § 570(g), Feb. 5, 1988, 101 Stat. 1950; Pub.L. 102-54, § 13(d)(4), June 13, 1991, 105 Stat. 275; Pub.L. 104-208, Div. A, Title II, § 2103(c)(2), (d), Sept. 30, 1996, 110 Stat. 3009-400.)

   [FN1] So in original. The comma probably should not appear.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1974 Acts. Senate Report No. 93-866 and House Conference Report No. 93- 1526, see 1974 U.S. Code Cong. and Adm. News, p. 6546.

1975 Acts. House Report No. 94-667 and House Conference Report No. 94- 769, see 1975 U.S. Code Cong. and Adm. News, p. 2448.

1983 Acts. Senate Report No. 98-275, House Conference Report No. 98-551, and Two Related Reports, see 1983 U.S. Code Cong. and Adm. News, p. 1768.

1988 Acts. House Report No. 100-122 (I & II) and House Conference Report No. 100-426, see 1987 U.S. Code Cong. and Adm. News, p. 3317.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 03-4273

———————————

FRANCIS SANTIAGO,
on behalf of himself
and all others
similarly situated,

Appellant

v.

GMAC MORTGAGE GROUP, INC.;
GMAC RESIDENTIAL HOLDING CORP.;
GMAC MORTGAGE CORPORATION

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-04048)
District Judge: Honorable James K. Gardner

———————————

Argued on October 1, 2004

Before: ROTH and CHERTOFF\* Circuit Judges, and
IRENAS,\*\* Senior District Judge.

(Opinion Filed  August 4, 2005)

Michael C. Spencer, Esquire (Argued)
Milberg, Weiss, Bershad & Schulman
One Pennsylvania Plaza, 48th Floor
New York, NY 10119

Counsel for Appellant

Christine N. Kohl, Esquire (Argued)
Michael J. Singer, Esquire
United States Department of Justice
Civil Division, Room 7511
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Counsel for Amicus - USA

Charles L. Becker, Esquire (Argued)
Robert A. Nicholas, Esquire
Kevin M. Toth, Esquire

_____

    \*Judge Chertoff heard oral argument in this case but
resigned prior to the time the opinion was filed.  The opinion is
filed by a quorum of the panel. 28 U.S.C. §46(d).
    \*\* Honorable Joseph E. Irenas, Senior United States
District Judge for the District of New Jersey, sitting by designation.

2

Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

James C. Martin, Esquire
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

<u>Counsel for Appellees</u>

---------

OPINION

---------

**ROTH**, Circuit Judge:

This case presents the question whether the Real Estate
Settlement Procedures Act (RESPA), codified at 12 U.S.C.
§2607(b) (2004), includes a cause of action for overcharges
and markups imposed on a borrower by a lender or mortgage
broker for settlement services rendered in connection with a
mortgage loan subject to RESPA.  For the reasons that follow,
we find that RESPA does not provide a cause of action for
overcharges but does provide a cause of action for markups.

I.    **Background**

In June 2002, Francis Santiago filed this lawsuit, on
behalf of himself and all other similarly situated, claiming that
GMAC Mortgage Group, Inc., GMAC Residential Holding
Corporation and GMAC Mortgage Corporation (collectively

3

GMAC) violated Section 8(b) of RESPA and raising
corresponding state law claims.  Section 8(b) of RESPA
states:

> No person shall give and no
> person shall accept any portion,
> split or percentage of any charge
> made or received for the rendering
> of a real estate settlement service
> in connection with a transaction
> involving a federally related
> mortgage loan other than for
> services actually performed.

12 U.S.C. § 2607(b)(2004).

Santiago's Complaint alleged that, in January 2002, he
obtained a loan for his home from GMAC.  In connection
with this loan, GMAC charged and collected fees from
Santiago for settlement services, including an $85.00 tax
service fee, a $20.00 flood certification fee, and a $250.00
funding fee.  GMAC fully disclosed these charges to
Santiago.  Santiago alleged that GMAC retained third party
vendors to perform the tax and flood certification services,
and charged Santiago more for these services than the amount
paid by GMAC to the vendors or "marked up" the service.  In
addition, Santiago alleged that the reasonable value of the
funding service was $20.00, and GMAC charged Santiago
more than that amount for providing the service or
"overcharged" for the service.

On September 30, 2003, the District Court dismissed
the RESPA claim under Federal Rule of Civil Procedure
12(b)(6), finding that Section 8(b) was intended to prohibit
kickbacks and referral fees and does not include a cause of

4

action for the conduct alleged by Santiago. The District Court then declined to exercise supplemental jurisdiction over Santiago's state law claims. Santiago timely appealed.

**II.    Jurisdiction and Standard of Review**

Our review of the grant of a motion to dismiss is plenary. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994). When considering an appeal from a dismissal of a complaint pursuant to Rule 12(b)(6), we accept as true all well-pled factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). We review the District Court's decision declining to exercise jurisdiction over Santiago's supplemental state law claims for abuse of discretion. Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996).

The District Court had federal question jurisdiction under RESPA, 12 U.S.C. § 2614. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**III.    Discussion**

The analysis whether RESPA provides for a cause of action for either overcharges or markups must begin with the text of the statute. The threshold question is whether the statute clearly and unambiguously allows Santiago's claims. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If the statutory language is unclear, however, then we must decide whether to defer to the interpretation of the administrative agency, in this case the Department of Housing and Urban Development (HUD), as reflected in the Real

5

Estate Settlement Procedures Act Statement of Policy 2001-1,
66 Fed. Reg. 53,052 (2001) (Statement of Policy 2001-1),
issued by HUD.

### A.    Overcharges

Santiago's first contention is that there is a cause of
action under RESPA Section 8(b) for overcharges because the
statutory text so provides and because the HUD Statement of
Policy 2001-1 so concludes, and should receive deference.[2]
GMAC argues that the statutory text prohibits such a cause of
action and that deference is not warranted here.  The United
States, as Amicus Curiae, urges us to defer to HUD's
interpretation, *i.e.,* that, although overcharging is not *per se* a
violation of Section 8(b), it is contrary to the requirement that
the cost of a service bear a reasonable relationship to its
market value and thus "may be used as evidence of a violation
of Section 8 and may serve as a basis for a RESPA
investigation."  24 C.F.R. § 3500.14(g)(2).  We conclude,
however, that the analysis of the statutory text demonstrates
that Section 8 does not provide a cause of action for
overcharges.  Thus, we need not reach the question of
deference.

Santiago's argument is based on his contention that

---

[2] The District Court did not address the overcharge and
markup causes of actions separately but instead referred to them
collectively.  However, because Santiago has alleged two
distinct causes of action and because there is both a factual
difference in the allegations and a logical difference in the
analysis of each cause of action under Section 8(b), it is
appropriate to address them separately here.

6

Section 8(b) provides that an overcharge occurs when the settlement service provider charges the consumer a fee, of which only one portion is a fee for the reasonable value of "services rendered." The other portion of the fee, the amount in excess of the reasonable value, is essentially a fee for "no services rendered" that is added to the fee for "services rendered." Thus, according to Santiago's reading, Section 8 applies to overcharges because it prohibits the acceptance of "any portion, split, or percentage of any charge" for the rendering of services "other than for services actually performed."

This parsing of the statute is one that is intelligible only if the parts of Section 8(b) are read separately; if the section is read as a whole, such a meaning becomes absurd. As a whole, Section 8(b) states that no person can accept a fraction of a charge for services provided, unless they have actually provided services. To accept Santiago's reading would require dividing charges for services provided into "reasonable" and "unreasonable" portions – that is, the portion for "services rendered" and the portion for "no services rendered." Not only does Section 8(b) not make this distinction, but there is no other language in the body of the statute that instructs how to define the reasonable and unreasonable portions of a charge. Further, Section 8(d)(2) provides for treble damages for violations of Section 8(b). It would be unusual for Congress to provide for treble damages for "unreasonable" charges without any definition of "unreasonable."

Thus, because the plain language of Section 8(b) does not provide for a cause of action for overcharges, it is not necessary for us to reach the question whether HUD's

7

interpretation warrants deference.[3]  It is worth noting,
however, that the position advanced by the United States as
Amicus Curiae is not the same as that advanced by Santiago.
Rather, the United States urges only the interpretation set
forth by HUD that overcharging may be evidence of a RESPA
violation.  Whether that interpretation is correct is not at issue
in this case, as Santiago is looking to establish that Section 8

---

[3]  It is not clear whether it is appropriate for us to
consider legislative history to determine whether a statute is
unambiguous at this point in Chevron analysis.  Compare FDA
v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 137,
120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) (considering
legislative history at step one of Chevron analysis), with K Mart
Corp. v. Cartier, Inc., 486 U.S. 281, 293 n. 4, 108 S. Ct. 1811,
100 L. Ed. 2d 313 (1988)(stating that "any reference to
legislative history . . . is in the first instance irrelevant" in step
one of Chevron analysis) and Nat'l R.R. Passenger Corp. v.
Boston & Me. Corp., 503 U.S. 407, 417, 112 S. Ct. 1394, 118 L.
Ed. 2d 52 (1992) (finding only statutory text is relevant for step
one of Chevron analysis).  However, it is worth noting that the
legislative history of RESPA supports the conclusion, above.  In
1973, the year before RESPA was enacted, Congress rejected a
bill setting maximum amounts on settlement charges, suggesting
that the passage of RESPA the following year did not intend that
the statute serve as a price control mechanism.  See Haug v.
Bank of America, 317 F.3d 832, 836 (8th Cir. 2003) (discussing
rejection of 1973 bill), Kruse et al. v. Wells Fargo Home
Mortgage, Inc., et al., 2004 WL 2008943, *4 (2d Cir. Sept. 10,
2004) (same).

8

incorporates an actual violation for overcharges. A rejection of Santiago's reading of RESPA does not necessarily mean that HUD's interpretation is incorrect. Accordingly, we affirm the District Court's holding that Section 8(b) does not include a cause of action for overcharges.

**B.    Markups**

The second issue we consider is whether Section 8(b) allows a cause of action for markups. The textual interpretation urged by Santiago is that the phrase "No person shall give and no person shall accept . . . " in Section 8(b) operates to create two separate prohibitions: (1) giving a portion of charges and (2) accepting a portion of charges. Thus, according to this reading, a settlement service provider who marks up the cost of a service provided by a third party vendor and keeps the marked up portion of the charge is violating the second prohibition by accepting a portion of the charge for services the settlement service provider did not perform. This interpretation was accepted in <u>Sosa v. Chase Manhattan Mortgage Corp.</u>, 348 F.3d 979, 983 (11th Cir. 2003) ("The 'and' in subsection 8(b) therefore operates to create two separate prohibitions . . .. "). This interpretation is also supported by HUD.

GMAC urges an alternate reading of Section 8(b). This interpretation reads the phrase "No person shall give and no person shall accept" as prohibiting one activity, in which one party gives and one party accepts a fee. The situation described by this interpretation is essentially a "kickback" where, for example, a settlement service provider arranges for a consumer to use the services of a third party vendor and that vendor then shares a portion of the amount charged to the consumer with the settlement service provider. This is the

9

interpretation accepted in <u>Haug v. Bank of America</u>, 317 F.3d 832, 836 (8th Cir. 2003) ("Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute."), <u>Boulware v. Crossland Mortgage Corporation</u>, 291 F.3d 261, 266 (4th Cir. 2002) ("The use of the conjuctive 'and' indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral act."), and <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 879 (7th Cir. 2002) ("The statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion or percentage . . . of it.").

Both the textual interpretation supported by Santiago and HUD and the one supported by GMAC are plausible readings of the statutory language. This conclusion is supported by the fact that under either reading of the statute, the parties would be in the same economic position. In a kickback arrangement, the consumer would give the settlement service provider $100 for a service, the mortgage service provider would give the third party vendor $100 for that service, and the third party vendor would return $20 to the settlement service provider as a kickback for the referral of service. In a markup arrangement, the consumer still gives the settlement service provider $100 for a service, but the settlement service provider keeps $20 and gives the third party vendor $80 for the service. In both scenarios, the borrower has been charged $100, the settlement service provider has earned $20 for a service it did not provide, and the third party vendor has earned $80 for a service it did provide.

The context in which Section 8(b) is found further

10

supports the conclusion that markups are included in the statute. The title of Section 8 of RESPA is "Prohibition against kickbacks and unearned fees," and Section 8(a) is titled "Business referrals," and prohibits the acceptance of "any fee, kickback or thing of value" while Section 8(b) is titled "Splitting charges," and prohibits the acceptance of "any portion, split, or percentage of any charge." Thus, GMAC's interpretation that Section 8(b) applies only to kickbacks is belied by the use of the term "kickback" in Section 8(a) and not in Section 8(b). This use of language suggests that Section 8(b) is meant to provide for a situation other than kickbacks. Further, a reading of Section 8(b) that allows a cause of action for markups is consistent with the title of Section 8 that prohibits both kickbacks and unearned fees.

Our conclusion that Section 8(b) allows a cause of action for unearned markups does not fully resolve the issue of whether the markups imposed by GMAC violated the law. GMAC may argue that it provided services ancillary to those provided by the third party vendor and that these services justify the additional charge. This argument might raise the issues of whether such ancillary services were nominal, whether the amount of any markup had to be reasonable in light of the additional services provided, or whether these extra services were already included in some other settlement service charge paid by the borrower. Regulation X at 24 CFR § 3500.14(c) specifically bars charges for "nominal services" and states that "duplicative fees" are unearned fees which violate the law. The parties have not fully briefed these issues, and the state of the record is inadequate for us to resolve them. These issues will have to be decided by the

11

District Court on remand.

In sum, we conclude that the District erred in holding that Section 8 does not provide a cause of action for markups. We will remand this claim to the District Court.[4]

---

[4] Although we have determined that the statutory text of RESPA clearly allows a cause of action for markups, *but see* Kruse et al. v. Wells Fargo Home Mortgage, Inc., et al., 383 F.3d 49 (2d Cir. 2004) (holding that the text of Section 8(b) was ambiguous as to markups because the interpretations urged by both sides were reasonable but that Chevron deference was warranted because Statement of Policy 2001-1 was promulgated in accordance with the legislative delegation of authority), it is worth noting that, even if we had found the text ambiguous, deference to HUD's interpretation would be appropriate. Deference to an agency's interpretation can be either mandatory, under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), or persuasive, under Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944). In this case, because we would find HUD's interpretation to be persuasive under Skidmore, we would not need to reach whether Chevron deference is warranted. See Bonneville International Corp. v. Peters, 347 F.3d 485, 490 (3d Cir. 2001) ("Because we find that the [agency's] interpretation is persuasive even under the less demanding standard of Skidmore deference, we need not go on to parse out whether Chevron deference should, in fact, be accorded the [agency's] regulation here.")

"An agency interpretation may merit some deference whatever its form, given the specialized experience and broader

12

## IV.    Conclusion

For the reasons discussed above, we conclude that the text of Section 8(b) of RESPA does not support a cause of action for overcharges by settlement service providers. Thus, we will affirm the District Court's decision to dismiss Santiago's claim for overcharges. However, the text of Section 8(b) clearly allows for a cause of action for markups. Thus, the District Court's dismissal of Santiago's cause of action for markups is reversed and remanded for further proceedings. Moreover, because the District Court erred in dismissing the federal cause of action for markups, its decision to decline to exercise supplemental jurisdiction over Santiago's state law causes of action is vacated.

---

investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." United States v. Mead Corp., 533 U.S. 218, 234 (2001) (internal citations omitted). The HUD interpretation in this case is both helpful and persuasive, particularly in light of the agency's ongoing consideration of this matter and expertise in the area of federally-related home mortgages.    Thus, because that interpretation reflects both agency expertise and consideration and is neither contrary to the language of the statute nor an unreasonable interpretation, we conclude that the HUD interpretation is persuasive authority.

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Local Appellate Rule 46.1(e), the undersigned hereby certifies that he, Robert Nicholas, and James Martin are members of the bar of the United States Court of Appeals for the Third Circuit.


_Charles L. Becker_

Charles L. Becker


Dated:  August 18, 2005

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he transmitted the original and fourteen copies of the foregoing **Appellees Petition for Rehearing and Rehearing En Banc** to the Clerk of the United States Court of Appeals for the Third Circuit by hand delivery and that he served two copies of this brief upon the following counsel in the manner indicated:

Michael C. Spencer  (by U.S. Mail)
Susan M. Greenwood
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY 10119

Craig H. Johnson  (by U.S. Mail)
Lon D. Packard
Packard, Packard & Johnson
2795 E. Cottonwood Pkwy, Suite 600
Salt Lake City, UT 84121

Michael Jay Singer (by Federal Express)
Christine Kohl
Appellate Staff
Civil Division, Room 9110
Department of Justice
601 D Street NW
Washington, D.C. 20530

Charles L. Becker

Dated:  August 18, 2005