IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| FRANCIS SANTIAGO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-4048 |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE GROUP, INC., | : | |
| GMAC RESIDENTIAL HOLDING | : | |
| CORP., and GMAC MORTGAGE | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL
APPROVAL OF THE PROPOSED  SETTLEMENT, CERTIFICATION
OF THE SETTLEMENT CLASS, AND APPROVAL OF
THE PROPOSED PLAN OF ALLOCATION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................2

I.      STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS ..........2

II.     THE PARTIES ACHIEVED THE PROPOSED SETTLEMENT AFTER MONTHS OF ARM'S-LENGTH NEGOTIATIONS. ...........................................4

      A.     The Nature of the Action .........................................................................4

      B.     The Challenges of the Litigation...............................................................5

      C.     The Parties Agree to Mediate Before United States Magistrate Judge Arnold C. Rapoport. ....................................................................6

      D.     The Terms of the Proposed Settlement .....................................................9

III.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, ADEQUATE, AND IN THE BEST INTERESTS OF THE SETTLEMENT CLASS......................................................................10

              1.     The Expense and Risk Associated With Establishing Liability and Damages Compel A Finding That the Proposed Settlement is in the Best Interest of the Settlement Class....................................................................11

              2.     The Range of Reasonableness of the Proposed Settlement in Light of the Likely Recovery and all the Attendant Risks of Litigation ....................................................................12

              3.     The Ability of the Defendant to Withstand A Greater Judgment...................................................................13

              4.     Given the Limited Nature of the Plaintiff's Remaining Claims, Continued Pursuit of this Litigation Would Be Unnecessary and Wasteful.................................................13

              5.     The Stage of the Proceedings........................................14

              6.     The Risks of Maintaining the Class Action Through Trial............16

              7.     The Reaction of Settlement Class Members ....................................16

i

IV.     CLASS CERTIFICATION IS APPROPRIATE ....................................................17

        A.      This Settlement Class Meets The Requirements Of Fed. R. Civ. P.
                23(a). .................................................................................................................18

                1.      Numerosity.............................................................................................18

                2.      Commonality and Predominance....................................................19

                3.      Typicality ...............................................................................................20

                4.      Adequacy of Representation ...........................................................21

        B.      This Settlement Class Meets The Requirements of Fed. R. Civ. P.
                23(b)(3) ..............................................................................................................22

V.      THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED
        AS FAIR, REASONABLE, AND ADEQUATE ....................................................23

        A.      The Allocation of Settlement Proceeds to the Settlement Class is
                Fair, Reasonable, and Adequate...................................................................23

        B.      The Settlement Agreement Provides for a $500 Incentive Award to
                the Settlement Class Representative. ...........................................................24

        C.      Plaintiff's Counsel's Fees and Expenses .....................................................25

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

Page

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bradburn Parent Teacher Store, Inc. v. 3M,*
 No. 02-7676, 2007 U.S. Dist. LEXIS 35899 (E.D. Pa. May 16, 2007)..................................23

*Bryan v. Pittsburgh Plate Glass Co.,*
 494 F.2d 799 (3d Cir. 1974)...............................................................................................3

*Carson v. American Brands, Inc.,*
 450 U.S. 79 (1981).............................................................................................................3

*In re Cendant Corp. Litigation,*
 264 F.3d 201 (3d Cir. 2001).............................................................................................13

*In re Community Bank of N. Va. & Guaranty National Bank of Tallahassee Second*
 *Mortg. Loan Litigation,* 418 F.3d 277 (3d Cir. 2005).......................................................17, 19

*In re Computron Software Inc. Sec. Litigation,*
 6 F. Supp. 2d 313 (D.N.J. 1998).......................................................................................23

*Detroit v. Grinnell Corp.,*
 495 F.2d 448 (2d Cir. 1977).............................................................................................12

*Eichenholz v. Brennan,*
 52 F.3d 478 (3d Cir. 1995)...............................................................................................11

*Eisenberg v. Gagnon,*
 766 F.2d 770, 786 (3d Cir. 1985)......................................................................................20

*Fickinger v. C.I. Planning Corp.,*
 646 F. Supp. 622 (E.D. Pa. 1986) .......................................................................................3

*Fisher Brothers Inc. v. Mueller Brass Co.,*
 630 F. Supp. 493 (E.D. Pa. 1985) .......................................................................................3

*Fisher Brothers v. Phelps Dodge Industrial, Inc.,*
 604 F. Supp. 446 (E.D. Pa. 1985) .......................................................................................3

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation,*
 55 F.3d 768 (3d Cir. 1995)............................................................................................3, 11

*Girsh v. Jepson,*
 521 F.2d 153 (3d Cir. 1975)....................................................................................... 2, 10-11

*In re Ikon Office Solutions, Inc. Sec. Litigation,*
    194 F.R.D. 166 (E.D. Pa. 2000).......................................................................23

*Krangel v. Golden Rule Resources, Inc.,*
    194 F.R.D. 501 (E.D. Pa. 2000)...................................................................2, 16

*Lachance v. Harrington,*
    965 F. Supp. 630, 645 (E.D. Pa. 1997) .........................................................17

*Lewy v. Weinberger,*
    464 U.S. 818 (1983)........................................................................................2

*Mashburn v. National Health Care, Inc.,*
    684 F. Supp. 660 (M.D. Ala. 1988) ..............................................................16

*Neuberger v. Shapiro,*
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ............................................................14

*O'Keefe v. Mercedes-Benz United States, LLC,*
    214 F.R.D. 266 (E.D. Pa. 2003).....................................................................21

*Oslan v. Law Offices of Mitchell N. Kay,*
    232 F. Supp. 2d 436 (E.D. Pa. 2002) ............................................................24

*In re PNC Finance Services Group, Inc., Sec. Litigation,*
    440 F. Supp. 2d 421 (W.D. Pa. 2006) ...................................................... 15-16

*Perry v. FleetBoston Finance Corp.,*
    229 F.R.D. 105 (E.D. Pa. 2005)............................................................ passim

*In re Ravisent Techs., Inc. Sec. Litigation,*
    No. 00 CV 1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)...........3, 12

*In re Safety Components,*
    166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................11

*Santiago v. GMAC Mortg. Group, Inc.,* 02-4048, 2003 U.S. Dist. LEXIS 17728
    (E.D. Pa. Sept. 30, 2003) ...............................................................................5

*Santiago v. GMAC Mortg. Group, Inc.,*
    417 F.3d 384 (3d Cir. 2005).......................................................................6, 11

*Smith v. DaimlerChrysler Services N. America LLC,*
    No. 00-6003, 2005 U.S. Dist. LEXIS 25107 (D.N.J. Oct. 24, 2005) .....................13

*Stewart v. Abraham,*
    275 F.3d 220 (3d Cir. 2001)......................................................................18, 19

*Stoner v. CBA Information Services,*
    352 F. Supp. 2d 549 (E.D. Pa. 2005) ..................................................................17

*Varacallo v. Mass. Mutual Life Insurance Co.,*
    226 F.R.D. 207 (D.N.J. 2005) .................................................... 12, 14, 15, 17, 19-20

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004) ................................................................................23

*Weiss v. York Hospital,*
    745 F.2d 786 (3d Cir. 1984) ................................................................................18

*Wetzel v. Liberty Mutual Insurance Co.,*
    508 F.2d 239 (3d Cir. 1975) ................................................................................21

## FEDERAL STATUTES

Fed. R. Civ. P 23 ................................................................................ passim

12 U.S.C. § 2607 ................................................................................4, 5

## PRELIMINARY STATEMENT

The parties to this action (the "Parties") submit this memorandum of law in support of their Joint Motion for Final Approval of the Proposed Settlement, Certification of the Settlement Class, & Approval of the Proposed Plan of Allocation.  As demonstrated below and in the accompanying Declaration of Jennifer L. Young, dated August 2, 2007 ("Young Declaration"), the proposed settlement described herein ("Proposed Settlement") is fair, reasonable, adequate, and in the best interest of the Settlement Class.  In addition, the Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Likewise, the proposed plan of allocation ("Plan of Allocation") is fair and reasonable.  Importantly, not a single Class Member has filed an objection to the Proposed Settlement, which provides Settlement Class Members at least 160% of their actual damages.

By Orders dated April 10, 2007 and May 11, 2007, this Court:  (i) granted Plaintiff's motion for preliminary approval of the Settlement ("Preliminary Approval Order") of this class action (the "Action" or the "Litigation"); (ii) so ordered Findings of Fact submitted by the Parties; (iii) preliminarily certified this Action as a class action for the purposes of settlement ; (iv) appointed the Mr. Santiago as Class Representative; (v) appointed Plaintiff's Counsel as Class Counsel; and (vi) directed notice to the Settlement Class.

The Parties now ask this Court to approve the Proposed Settlement, which was reached through the Parties' arm's-length negotiations after more than five years of hard-fought litigation.  Indeed, the Proposed Settlement, which was achieved with the assistance of United States Magistrate Judge Arnold C. Rapoport, represents an excellent result for the Settlement Class, particularly considering that the expenses associated with continuing the Litigation would outweigh any potential recovery.

As discussed in greater detail below, the Parties respectfully submit that the Proposed Settlement satisfies all the applicable criteria for approval set forth by the Third Circuit in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). Indeed, given the: (i) significant recovery for the Settlement Class; (ii) depth of Plaintiff's Counsel's knowledge of the strengths and weaknesses of Plaintiff's claims; (iii) uncertainties and expenses associated with continuing to prosecute this Action against the Defendants, (iv) complexity of the Action; (v) costs that would be incurred by continuing to litigate this Action; and (vi) the arm's-length negotiations leading to the Settlement, Plaintiff respectfully submits that the Proposed Settlement should be approved as fair, reasonable, and in the best interests of the Settlement Class.[1] In addition, the Settlement Class fulfills the requirements of Fed. R. Civ. P 23(a) and 23(b)(3). Finally, the Proposed Plan of Allocation is fair and reasonable.

## ARGUMENT

## I.    STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Courts favor the compromise of disputed claims, particularly in the context of often complex consumer class action litigation. *See Lewy v. Weinberger*, 464 U.S. 818, 822 (1983); *Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 504 (E.D. Pa. 2000) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be

---

[1] An extensive review of the facts and circumstances concerning this Action, including its procedural history, Plaintiff's factual investigation, the confirmatory discovery conducted, the settlement negotiations, the efforts of Plaintiff's Counsel, and the Proposed Settlement obtained for the benefit of the Class, is set forth in the Young Declaration filed concurrently herewith. This memorandum focuses on applicable legal standards for approval of a proposed class action settlement under *Girsh* and Rule 23 of the Federal Rules of Civil Procedure.

2

dismissed or compromised without the approval of the court." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 796 (3d Cir. 1995).   Before approving a class action settlement, a court must determine that it is "fair, reasonable, and adequate." *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00 CV 1014, 2005 U.S. Dist. LEXIS 6680, at *23 (E.D. Pa. Apr. 18, 2005).   However, while courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to substitute their judgment for that of the parties who negotiated the proposed settlement. *See Fisher Bros. v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . .   They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981).

In determining the adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks. *Fickinger v. C.I. Planning Corp.,* 646 F. Supp. 622, 630 (E.D. Pa. 1986). This analysis "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Fisher Bros. Inc. v. Mueller Brass Co.,* 630 F. Supp. 493, 499 (E.D. Pa. 1985). Furthermore, the Third Circuit has held that in determining whether to approve a proposed settlement, "a court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits." *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir. 1974).

Prior to entering into the Proposed Settlement, Plaintiff's Counsel considered numerous factors in deciding to recommend the Proposed Settlement to the Class Representative,

including, but not limited to, the maximum potential recovery available, the fees and expenses associated with proceeding with the Action, the strength of the claims, the risks of establishing liability and damages, and the risk of non-recovery. Plaintiff's Counsel, which have extensive experience prosecuting consumer class actions, have concluded that the Proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. Defendants deny that they are liable in any way to Plaintiff or the Settlement Class, and deny that their actions violated RESPA Section 8(b) or any state laws in any manner. Defendants are, however, willing to enter into this Settlement Agreement to avoid the further expense and inconvenience of litigation, and have concluded that it is in their best interests to resolve and settle the claims which have been made against them by Plaintiff and the Settlement Class. Finally, the key negotiations were supervised by United States Magistrate Judge Arnold C. Rapoport -- a fact which in itself should dispel any concerns of collusion.

## II.    THE PARTIES ACHIEVED THE PROPOSED SETTLEMENT AFTER MONTHS OF ARM'S-LENGTH NEGOTIATIONS.

### A.    The Nature of the Action

Consumer fraud cases generally involve complicated issues of fact and law and this Action is no exception. In this case, Plaintiff alleged that certain amounts charged on his HUD-1 statement in connection with a real estate closing violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, which governs permissible charges for services provided in connection with real estate closings. *See* Complaint ¶¶ 38-40, 65-67. Specifically, Plaintiff alleged that the fees Defendants charged for certain real estate closing services were greater than the amount Defendants paid to the third-party vendors performing such services or that the amount charged for the services were otherwise greater than their reasonable value. *See* Complaint *passim*. The settlement service fees at issue in the Complaint are an $85.00 tax

service fee, a $20.00 flood certification fee, and a $250.00 funding fee. *Id.*

Plaintiff alleged that the fees at issue violated Section 8 of RESPA, which prohibits "kickbacks" in subsection (a) (not at issue in this case) and "unearned fees" in subsection (b). The relevant portions of Section 8 provides as follows:

> § 2607  <u>Prohibition against kickbacks and unearned fees</u>
>
> (a)    Business referrals.  **\*\*\***
>
> (b)    Splitting charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed . . . .
>
> (c)    Fees, salaries, compensation, or other payments.  Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment . . . for services actually performed[.]

12 U.S.C. § 2607.

In addition to his RESPA claim, Plaintiff also asserted state law claims for unjust enrichment and money had and received. *See* Complaint ¶¶ 68-73.

**B.    The Challenges of the Litigation**

Throughout this Litigation, Plaintiff faced significant challenges in prosecuting his claims.  On September 30, 2003, this Court dismissed all of Plaintiff's RESPA claims, holding that "plaintiff fails to plead that defendants split the overcharged fees with a third party.  Such a deficiency is fatal to plaintiff's Complaint." *Santiago v. GMAC Mortg. Group, Inc.*, 02-4048, 2003 U.S. Dist. LEXIS 17728, at *7 (E.D. Pa. Sept. 30, 2003).  The remainder of Plaintiff's claims were dismissed because the Court lacked subject matter jurisdiction. *Id.* at *27.

Plaintiff appealed, and on August 4, 2005, the United States Court of Appeals for the Third Circuit affirmed the dismissal of the portion of Plaintiff's RESPA claims based on the

5

$250.00 funding fee.    Specifically, the Third Circuit held that the funding fee was an "overcharge," for which RESPA does not provide a cause of action.  *See Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 388 (3d Cir. 2005).   However, the Third Circuit reinstated Plaintiff's claims arising from the $85.00 tax service fee and the $20.00 flood certification fee, holding that these claims were properly pled as actionable "mark-ups" under RESPA.  *Id.* at *390 ("[T]he text of Section 8(b) clearly allows for a cause of action for markups.").

With the dismissal of Plaintiff's RESPA claim arising from the $250.00 funding fee, the amount of Plaintiff's potential recovery was significantly reduced.   However, Plaintiff continued to prosecute his claims arising from the $85.00 tax service fee and the $20.00 flood certification fee.  As the Litigation proceeded and the Parties began to engage in discovery, it was clear that Defendants were prepared to vigorously defend Plaintiff's claims and that the cost of proceeding would cause Plaintiff to incur additional fees and expenses exceeding any potential recovery for Plaintiff's actionable claims, given their now-limited potential monetary value.[2]

### C.    The Parties Agree to Mediate Before United States Magistrate Judge Arnold C. Rapoport.

After the remand of the action, the Parties resumed discovery, with Plaintiff seeking documents responsive to discovery requests that had been served prior to the dismissal of Plaintiff's claims, as well as serving new document requests.  *See* Young Decl. ¶¶ 19, 23.

In early 2006, the Parties began to discuss the potential for settlement.   On March 27, 2006 and April 17, 2006, the Parties attended a telephonic settlement conference before Magistrate Judge Rapoport.  *See* Young Decl. ¶ 20.  In addition, the Parties attended in-person mediations before Magistrate Judge Rapoport on April 26, 2006 and May 25, 2006.  *See* Young

---

[2] Indeed, the total amount of Plaintiff's fees and expenses in this litigation, $995,247.21, well outweighs the total amount of the $650,000.00 Settlement Fund.

Decl. ¶¶ 22, 24. The Parties continued their attempts at settlement, and took part in additional telephonic settlement conferences before Magistrate Judge Rapoport on June 29, 2006, July 19, 2006, July 31, 2006, and August 22, 2006. *See* Young Decl. ¶¶ 26, 30. Throughout the time period during which these settlement conferences occurred, the Parties exchanged information and communicated on a weekly, if not daily, basis to exchange documents responsive to Plaintiff's discovery requests to allow the Parties to adequately assess their claims and defenses. *See* Young Decl. ¶ 31. The discovery produced included the following: Defendants' production of Plaintiff's loan file; Defendant's production of the third-party vendor contracts at issue, Defendants' production of a random sample of HUD-1 forms; and Defendants' production of testimony from a corporate representative regarding the alleged mark-ups. *See* Young Decl. ¶¶ 19, 21, 23, 25, 27, 33.

Through this exchange of information, the Parties learned the following:

1) Defendants operated four business channels through which they originated mortgage loans, and these are commonly referred to as (a) Retail; (b) Direct; (c) Ditech; and (d) Broker;

2) With regard to fees for tax services fees and flood certification fees charged to borrowers with loans originating in the Retail, Direct, and Ditech channels, Defendants generally charged the same amount that Defendants paid to their third-party vendor or a lower amount;

3) With regard to tax service fees charged to borrowers with loans originating in the Broker channel, Defendants generally charged borrowers the same amount that Defendants paid to their third-party vendor or a lower amount;

4)      With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period January 1, 1999 through February 28, 2002 Defendants charged borrowers an amount that was $9 more than the amount Defendants paid to their third-party vendor performing the flood certification; and

5)      With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period March 1, 2002 through August 31, 2005 Defendants charged borrowers an amount for flood certifications that was $1 more than the amount Defendants paid to their third-party vendor performing the flood certification;

*See* Young Decl. ¶¶ 27-28. Thus, discovery revealed that Defendants had only charged borrowers an amount in excess of the amounts Defendants paid to third-party vendors in the Broker channel for flood certifications, and only during the time period January 1, 1999 through August 31, 2005. *Id.*

After exchanging the foregoing information, the Parties were able to assess the risks and benefits of proceeding with the litigation, considering that, at best, the facts mandated that Plaintiff's claims would be significantly limited in scope, proceeding to trial would be costly for both Plaintiff and Defendants, and the damages at issue were limited and easily ascertainable. With these considerations in mind, the Parties attended two final in-person mediations before Magistrate Judge Rapoport on August 16, 2006 and August 28, 2006, at which time the Parties reached an agreement as to the terms of a settlement in principle. *See* Young Decl. ¶ 32.

Shortly thereafter, the Parties engaged in some confirmatory discovery and began drafting the Settlement Agreement, which was submitted to the Court with the Parties' Amended

Joint Motion for Preliminary Approval of Class Action Settlement, filed with the Court on March 20, 2007. *See* Young Decl. ¶¶ 33-34.

As discussed above, Defendants provided discovery indicating that were Plaintiff to proceed with Litigation, Plaintiff's claims would be limited to alleged mark-ups of flood certification fees charged to borrowers with loans originating through the Broker Channel during the period January 1, 1999 through August 2005. However, Plaintiff's Counsel were unwilling to release the claims of Class Members with loans originating through the Retail, Direct, or Ditech channels without consideration, which Defendants would not agree to provide. *See* Young Decl. ¶ 42.

In an effort to deter future lawsuits against Defendants for conduct at issue in this Litigation regarding which discovery indicates there is no claim, the Parties prepared Stipulated Findings of Fact, describing that the discovery conducted in this Action demonstrates that Defendants did not mark up fees for tax services or flood certifications for loans originating in the Retail, Direct, and Ditech channels. *See* Young Decl. ¶ 43. The Parties submitted the Findings of Fact to the Court with the Parties' Amended Joint Motion for Preliminary Approval on March 20, 2007. The Court so ordered the Findings of Fact on April 6, 2007. *See* Findings of Fact [Dkt. No. 76].

### D.    The Terms of the Proposed Settlement

The Proposed Settlement provides an excellent result for the Settlement Class, in that Class Members will receive at least 160% of their actual damages. Specifically, discovery provided by Defendants demonstrates that 12,651 Class Members whose loans closed during the period January 1, 1999 through February 28, 2002 paid an alleged mark-up of $9 for flood certification fees. *See* Young Decl. ¶¶ 27-28. These Class Members will receive approximately $14.40 under the Proposed Settlement. *See* Young Decl. ¶ 39. This is 160% of the actual

damages incurred by these Class Members. Discovery provided by Defendants further demonstrates that the 71,062 Class Members whose loans closed during the period March 1, 2002 through August 31, 2005 paid an alleged mark-up of $1 for flood certification fees. *See* Young Decl. ¶¶ 27-28. These Class Members will receive approximately $2.00 under the Proposed Settlement. *See* Young Decl. ¶¶ 40. This is 200% of the actual damages incurred by these Class Members. In addition, the Proposed Settlement provides for a $500 incentive payment to the Class Representative, as well as an award of attorneys' fees and expenses, subject to Court approval. *See* Young Decl. ¶¶ 95, 99.

As noted above, the Parties submitted the Proposed Settlement to the Court for preliminary approval on March 20, 2007. On April 10, 2007, the Court preliminarily approved the Proposed Settlement, preliminarily certified a Settlement Class, and directed notice in accordance with its terms. In accordance with the Court's Order, Notice has been provided to the Settlement Class. *See* Young Decl. ¶¶ 45-48. Not surprisingly, not a single Class Member has objected to the Proposed Settlement, and only 10 Class Members have requested exclusion.

The Parties discuss below why the Proposed Settlement should be approved as fair, reasonable, adequate, and in the best interest of the Settlement Class.

## III. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, ADEQUATE, AND IN THE BEST INTERESTS OF THE SETTLEMENT CLASS

In *Girsh v. Jepson*, the Third Circuit held that the following eight factors should be considered in determining whether a proposed settlement is, pursuant to Rule 23(e), fair, reasonable, and adequate:

> (1) the risks of establishing liability; (2) the risks of establishing damages; (3) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation (4) the ability of settling defendants to withstand a greater judgment the reaction of the class to the settlement; (5) the

10

> complexity, expense and likely duration of the litigation; (6) the
> stage of the proceedings; (7) the risks of maintaining the class
> action through trial; and (8) the reaction of the members of the
> class to the settlement.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also GMC Truck*, 55 F.3d at 782;

*Eichenholz v. Brennan*, 52 F.3d 478, 488 (3d Cir. 1995).

As demonstrated herein and in the Declaration, the Proposed Settlement is an excellent

result which easily meets the *Girsh* factors.

### 1. The Expense and Risk Associated With Establishing Liability and Damages Compel A Finding That the Proposed Settlement is in the Best Interest of the Settlement Class

As noted above, had this Litigation proceeded, Plaintiff would have incurred significant

fees and expenses that are simply not warranted given that the Proposed Settlement provides

Class Members at least 160% of their actual damages. Had this Action proceeded, Defendants

would have attempted to demonstrate that they "provided services ancillary to those provided by

the third party vendor and that th[o]se services justif[ied] the additional charge" imposed on

borrowers. *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 389 (3d Cir. 2005). Plaintiff

would have had to prove that any services provided by Defendants were merely "nominal" or

that "these extra services were already included in some other settlement service charge paid by

the borrower." *See* Young Decl. ¶ 53. Indeed, proving the "absence of value" of extra services

performed by Defendants in addition to those performed by the third-party vendor would have

been a significant and costly hurdle for Plaintiff to overcome. *Id.*

Considering the significant costs associated with proceeding with the Litigation, the

Proposed Settlement is clearly in the best interest of the Settlement Class.

### 2. The Range of Reasonableness of the Proposed Settlement in Light of the Likely Recovery and all the Attendant Risks of Litigation

These two *Girsh* factors look at "how the settlement compares to the best and worse case scenarios. In other words, they 'evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *See Ravisent Techs.*, 2005 U.S. Dist. LEXIS 6680, at *32; *see also Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 239 (D.N.J. 2005) (same). In addition, courts have found that the determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum, and that a settlement can be approved even when it amounts to only a small percentage of the recovery sought. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1977) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth part of a single percent of the potential recovery").

As set forth above and in the Young Declaration, although Plaintiff's Counsel believe that they could ultimately demonstrate that the Defendants violated RESPA, they acknowledge that if this Action were to proceed against the Defendants, Plaintiff would run some risk of obtaining a recovery significantly smaller than the recovery presented herein. *See* Young Decl. ¶ 55. Defendants would have presented a completely different picture of the relevant facts and circumstances that led to the filing of this Action. Indeed, the Settling Defendants have defended the case vigorously and have indicated that, absent the Proposed Settlement, they would continue to do so. Given that the Proposed Settlement provides an excellent recovery for the Settlement Class, undertaking the risks and expenses associated with proceeding with the Litigation would be imprudent and contrary to the best interests of the Settlement Class.

### 3.    The Ability of the Defendant to Withstand A Greater Judgment

This *Girsh* factor addresses whether the Defendants "could withstand a judgment for an amount significantly greater than the [proposed] settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001).

Plaintiff's Counsel suspect that Defendant could withstand a judgment greater than the amount of the Proposed Settlement. However, "[t]hough Defendants could likely withstand a greater judgment, the request for a greater judgment would make Plaintiffs' case more difficult and less likely to be settled. As a result, this factor does not weigh against or in favor of approval." *Smith v. DaimlerChrysler Servs. N. Am. LLC*, No. 00-6003, 2005 U.S. Dist. LEXIS 25107 (D.N.J. Oct. 24, 2005).

Given that the Findings of Fact already entered into the record by this Court demonstrate that Plaintiff's claims are limited to flood certification fee charges for a very specific time period and only in the Broker channel, this factor is not relevant in assessing the fairness of the Proposed Settlement.

### 4.    Given the Limited Nature of the Plaintiff's Remaining Claims, Continued Pursuit of this Litigation Would Be Unnecessary and Wasteful.

The additional expenses that would be associated with proceeding with this Litigation strongly weigh in favor of approving the Proposed Settlement.

Courts in this Circuit have long held that the complexity, expense, and likely duration of litigation in a complex class action weighs in favor of approving a class action settlement. *Ravisent Techs.*, 2005 U.S. Dist. LEXIS 6680, at *24-25 (upholding settlement where continuing litigation would "likely require additional discovery, extensive pretrial motions practice, . . . a trial, and, if Lead Plaintiffs were successful, the delay and expenses of an appeal."); *see also*

*Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) ("[T]he prospect of complexity and additional costs encourages settlement approval.").

In approving the settlement in *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 114 (E.D. Pa. 2005), the district court noted:

> Here, settlement allows both the class and the Defendant to avoid all the obstacles of protracted litigation. Considerable time, money and resources can be saved by approving the settlement. Moving forward with the litigation would surely involve the filing of numerous briefs and motions. Both sides would zealously present their positions throughout the course of the litigation and trial with neither side certain of the outcome.

*FleetBoston*, 229 F.R.D. at 114.

In order to proceed with this Litigation, the Parties would have to engage in extensive and costly discovery, including numerous Rule 30(b)(6) and third-party depositions as well as voluminous document production. *See* Young Decl. ¶ 59. In addition, both Parties would have to engage costly experts to opine on whether any services provided by Defendants were "nominal" or duplicative, or ancillary and justified. *Id.* Following discovery, Defendants would have moved for summary judgment, which would require several months for briefing, argument, and disposition. The time, effort, and expense associated with proceeding with this Litigation are simply not warranted given the very limited nature and monetary value of Plaintiff's possible recovery.

Accordingly, a settlement at this juncture provides a substantial and tangible present recovery, without the attendant expense, risk, and delay of prolonging this litigation. "Avoiding this unnecessary and unwarranted expenditure of resources and time benefit[s] all parties." *Varacallo*, 226 F.R.D. at 236.

### 5.    The Stage of the Proceedings

This *Girsh* factor considers "the current stage of the proceedings and the lawyers'

knowledge of the strengths and weaknesses of their case." *FleetBoston*, 229 F.R.D. at 115.

Through this analysis, "courts can determine whether counsel had an adequate appreciation of

the merits of the case before negotiating." *Id.* "While the type and extent of discovery taken are

relevant to the propriety of a settlement, settlements reached early are still favored." *Varacallo*,

226 F.R.D. at 238.

In *FleetBoston*, the district judge determined that the litigation was at a stage sufficient to

consider settlement where "counsel exchange[d] some discovery and participat[ed] in two

mediation sessions with [a] mediator for the Third Circuit." *Id.* Moreover, given the arm's-

length nature of the settlement negotiations, the court gave "considerable weight to the views of

experienced counsel as to the merits of the settlement." *Id.*

The same considerations are applicable to the Proposed Settlement in this Action.

Plaintiff's Counsel have litigated this Action for more than five years and have gained sufficient

information upon which to evaluate the merits of Plaintiff's claims, the strengths of the defenses

asserted and likely to be asserted by the Defendants, and the value of Plaintiff's claims for

purposes of settlement. *See* Young Decl. ¶¶ 60-63. As discussed at length in the Young

Declaration, in prosecuting this Action, Plaintiff's Counsel, among other things: (1) thoroughly

analyzed Plaintiff's claims under the applicable law; (2) fully briefed a motion to dismiss; (3)

appealed the dismissal of Plaintiff's claims and obtained a partial reversal; (4) engaged in

settlement negotiations with the Defendants spanning several months; (5) appeared before the

Court on multiple occasions; and (6) reviewed testimony and documents produced by

Defendants. *See* Young Decl. ¶¶ 18-35. Through these efforts, Plaintiff's Counsel gained a

thorough understanding of the legal and factual issues involved in the Litigation sufficient to

recognize the value of the Proposed Settlement. *In re PNC Fin. Servs. Group, Inc., Sec. Litig.,*

440 F. Supp. 2d 421, 433 (W.D. Pa. 2006) (holding that settlement at early stage of litigation was appropriate where parties had exchanged information sufficient to assess their claims and defenses); *Krangel*, 194 F.R.D. at 507 ("The fact that this case is in an early stage of proceedings does not necessarily weigh against approval of the settlement"); *Mashburn v. Nat'l Health Care, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("The law is clear that early settlements are to be encouraged.").

### 6.    The Risks of Maintaining the Class Action Through Trial

Because of the procedural posture of this Action, Plaintiff has not yet had the opportunity to move for class certification.[3]    Were Plaintiff to move for class certification outside the settlement context, Defendants would have vigorously opposed the certification of the Class as well as the merits of Plaintiff's claims.  In addition, were a litigation class to be certified, there is always a risk that the court will decertify the class.  Incurring such risk and the corresponding expense of continuing to pursue Plaintiff's claims would be improper and contrary to the best interests of the Class, given the very limited potential monetary value of Plaintiff's claims and the more than adequate recovery provided by the Proposed Settlement.

Given the amount of recovery offered by the Proposed Settlement, it would be inappropriate to continue to incur any further risk or expense on behalf of the Settlement Class.

### 7.    The Reaction of Settlement Class Members

"This factor examines whether the class supports the settlement.  Silence from the class is generally presumed to indicate agreement with the settlement terms." *FleetBoston*, 229 F.R.D. at 115.  "Generally, if the class members do not oppose the class settlement, the court is justified in

---

[3] In its Order dated April 6, 2007, the Court *preliminarily* certified the Class for settlement purposes only.

concluding that they consider it fair and reasonable." *Id.* (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 645 (E.D. Pa. 1997)).

Here, despite over eighty-three thousand notices having been disseminated in accordance with the Court's April 10, 2007 and May 11, 2007 Orders, not one single Class Member has objected to the Settlement. Moreover, only 10 Settlement Class Members have requested exclusion from the Settlement Class, indicating that the vast majority of Class Members approve of the Proposed Settlement. *See, e.g., Id.* (approving settlement where notice was mailed to 90,534 class members, and only 70 requested exclusion); *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) (approving settlement where notice was provided to 11,980 class members, and only 18 requested exclusion).

The reaction of the Settlement Class Members indicates that they support the Proposed Settlement.

## IV.    CLASS CERTIFICATION IS APPROPRIATE

"Class actions created for the purpose of settlement are well recognized under Rule 23 of the Federal Rules of Civil Procedure." *Varacallo*, 226 F.R.D. at 228. Solely for the purpose of the Settlement Agreement and its implementation, and without in any way conceding the certifiability of a class for litigation purposes (which Defendants expressly deny), the Parties have stipulated that this Action fulfills the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) for purposes of certifying a Settlement Class. *See* Young Decl. ¶ 72. In addition, "there must be evidence in the record demonstrating that the district court exercised 'independent judgment' in adopting a party's proposed findings." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005). Accordingly, the Parties demonstrate below that this Settlement Class fulfills each of the requirements of Fed. R Civ. P 23(a) and 23(b)(3). The following Settlement Class is defined in the Notice that was

distributed to the Settlement Class:

> All persons who, between January 1, 1999 and August 31, 2005 inclusive, obtained from Defendants one or more federally related residential mortgage loan(s) through the Broker channel.

*See* Young Decl. ¶ 36.

### A. This Settlement Class Meets The Requirements Of Fed. R. Civ. P. 23(a).

Rule 23(a) provides that a class action may be maintained only if:

1.  the class is so numerous that joinder of all members is impracticable;

2.  there are questions of law or fact common to the class;

3.  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984).  As described below, each of these requirements is met in this case for the purposes of certifying the Settlement Class.

### 1. Numerosity

Rule 23(a)(1) requires that the class must be so numerous that joinder of all class members is impracticable.  "While there is no precise number of putative class members that will ensure the numerosity requirement is met, a potential class exceeding forty members is generally considered sufficient."  *FleetBoston*, 229 F.R.D. at 111 (holding that numerosity prong was fulfilled where class consisted of 90,534 members); *see also Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001) (holding that numerosity prong is fulfilled where class consists of more than 40 members).

In the present Action, the Settlement Class consists of 83,713 members.  As such, the

Settlement Class fulfills the numerosity requirements of Rule 23(a)(1).  *See* Young Decl. ¶ 74.

### 2.    Commonality and Predominance

"It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance tests.  This approach has been approved by the Third Circuit."  *Varacallo*, 226 F.R.D. at 230 (internal citations omitted).

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "This requirement is met when the named plaintiffs share 'at least one question of fact or law with the grievances of the prospective class."  *FleetBoston*, 229 F.R.D. at 111-112 (quoting *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)).

In the present Action, there are numerous issues of law and fact common to the Class.  These include:

> a.    whether Defendants marked up the costs of third-party flood certifications without providing additional actual, necessary, and distinct services;
>
> b.    whether the fees for obtaining the flood certifications were in excess of the reasonable value of those services; and
>
> c.    whether Defendants charged borrowers fees where no, nominal, or duplicative work was performed.

*See* Complaint ¶ 51; *see also* Young Decl. ¶¶ 75-77.

Accordingly, Rule 23(a)(2)'s commonality prong is fulfilled.  *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d at 303 (holding that commonality prong was fulfilled in class action involving RESPA claims).

"For a class that is certified under Rule 23(b)(3), which the parties are here seeking, the Court must find that these common questions predominate over individual issues."  *Varacallo*,

226 F.R.D. at 231. "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication." *Id.* "Courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation. *Id.*

The predominance prong is generally satisfied in consumer cases where the plaintiff alleges a common course of conduct by the defendant, as does the Plaintiff in the present Action. *FleetBoston*, 229 F.R.D. at 113. Here, for the purposes of certifying the Settlement Class, the numerous common issues of law and fact predominate over any other issues in the case.

### 3.     Typicality

"The typicality requirement examines 'whether the named Plaintiff's individual circumstances are markedly different [from those of unnamed class members] or [whether] the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based.'" *FleetBoston*, 229 F.R.D. at 112 (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)).

The typicality prong requires that "the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." *Id.* "When the named plaintiffs and putative class members seek to challenge the same allegedly unlawful conduct, the typicality requirement is usually deemed satisfied even though different fact patterns may underlie the individual claims." *Id.*

With regard to the Proposed Settlement, the Class Representative's claims are typical of those asserted by the Class in that they arise out of the same settlement fees and are based on the same federal statute. *Id.* (holding that typicality prong was fulfilled where all class members asserted claims based on the same federal statute); *see also* Complaint; Young Decl. ¶¶ 78-79. Accordingly, the typicality prong is satisfied here for the purposes of certifying the Settlement

Class.

### 4.    Adequacy of Representation

Rule 23(a)(4) is satisfied if it appears that (a) the class representative's interests are not antagonistic to those of other members of the class that he or she seeks to represent; and (b) the class representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).    These requirements are satisfied here.

In this case, no conflict of interest exists.  The respective claims of the absent Settlement Class Members in the Class Period arise from the same alleged wrongful conduct and involve the same legal theories as the claims of the Class Representative.  Defendants have produced to Plaintiff a random sample of HUD-1s demonstrating that the Settlement Class Members were generally charged the same amounts for the respective time periods at issue.  *See* Young Decl. ¶¶ 76, 80-83.  Because the Plaintiff's claims and interests are aligned with those of absent Settlement Class Members, those absent Settlement Class Members' interests will be adequately protected.  *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 289 (E.D. Pa. 2003) (holding that lead plaintiff's interests were aligned with those of class members where lead plaintiff and class asserted claims under the same laws based on the same conduct and suffered the same types of damages).

In addition, Plaintiff's Counsel, who are highly experienced in consumer class action litigation and have successfully prosecuted numerous class actions throughout the United States, are clearly competent to prosecute this Action.  *See* Young Decl. ¶ 82.  Here, Plaintiff's Counsel diligently and aggressively represented Plaintiff and the Settlement Class before this Court and in the settlement negotiations with Defendants.  *See* Young Decl. ¶¶ 13-35, 82.

Based on the foregoing, the adequacy prong is clearly fulfilled for the purposes of

certifying the Settlement Class.

**B.     This Settlement Class Meets The Requirements of Fed. R. Civ. P. 23(b)(3)**

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate[4] over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).   This Action meets the requirements of section Rule 23(b)(3).   *See* Young Decl. ¶¶ 75-77.

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the court must consider the following: (a) the interest of members of the class in individually controlling separate actions; (b) the desirability of concentrating the litigation of the claims in the particular forum; (c) the extent and nature of any related litigation already commenced by class members; and (d) the potential difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, each of these factors strongly militates in favor of class certification.

First, the expense of individual actions, weighed against the potential recovery, would be prohibitive, as each of the Settlement Class Members was charged only $1 or $9 in excess of the flood certification fee Defendants paid to the third-party vendor performing the flood certification. *See* Young Decl. ¶¶ 84-89.

Second, this case is properly venued within this District.   Each of the Defendants is headquartered in Horsham, Pennsylvania. *See* Complaint ¶ 12.

Third, since no related litigation is pending in this District, there is no indication Settlement Class Members would prefer to individually control the prosecution of their claims.

---

[4] The predominance prong is discussed above. *See* Sec. IV.A.2, *supra*.

Settlement Class Members were given the opportunity to opt out of the Settlement Class, and only ten have exercised this right. *See* Young Decl. ¶ 87. Thus, the extent of related litigation is not an issue.

Finally, no unusual difficulties in managing this Litigation have been encountered. Indeed, as mentioned above, consumer cases are considered particularly appropriate for treatment as class actions. *See FleetBoston*, 229 F.R.D. at 113. Moreover, class manageability concerns are far less problematic when evaluating whether to certify a class for settlement purposes, as opposed to litigation purposes. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).

Accordingly, the Settlement Class fulfills the requirements of Rule 23(b)(3).

## V.     THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

"In addition to analyzing the terms of the Settlement Agreement, the Court must also examine the fairness of the proposed Distribution Plan." *Bradburn Parent Teacher Store, Inc. v. 3M*, NO. 02-7676, 2007 U.S. Dist. LEXIS 35899 (E.D. Pa. May 16, 2007). "Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (quoting *In re Computron Software Inc. Sec. Litig.*, 6 F. Supp. 2d 313 (D.N.J. 1998)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.*

### A.     The Allocation of Settlement Proceeds to the Settlement Class is Fair, Reasonable, and Adequate.

Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it provides an award to each Settlement Class Member based upon the amount of the alleged mark-

up that each Settlement Class Member paid. Specifically, discovery provided by Defendants demonstrates that the 12,651 Settlement Class Members whose loans closed during the period January 1, 1999 through February 28, 2002 paid an alleged mark-up of $9 for flood certification fees. *See* Young Decl. ¶ 92. These Settlement Class Members will receive approximately $14.40 under the Proposed Settlement. *Id.* This amounts to a recovery of 160%. *Id.* Discovery provided by Defendants further demonstrates that the 71,062 Settlement Class Members whose loans closed during the period March 1, 2002 through August 31, 2005 paid an alleged mark-up of $1 for flood certification fees. *See* Young Decl. ¶ 93. These Settlement Class Members will receive approximately $2.00 under the Proposed Settlement. *Id.* This amounts to a recovery of 200%. *Id.*

Accordingly, each Settlement Class Member will receive a settlement amount that is based upon, yet is significantly greater than, the actual damages suffered. As such, the plan of allocation is fair, reasonable, and adequate and should be approved.

**B.    The Settlement Agreement Provides for a $500 Incentive Award to the Settlement Class Representative.**

In addition to the allocation of the Settlement Fund to the Settlement Class, the Proposed Settlement provides for a $500.00 incentive award to Mr. Santiago, the Class Representative.

"Payment awards to class representatives lie within the discretion of the trial court and may be provided as a reward for the benefit visited on the class." *FleetBoston*, 229 F.R.D. at 118; *see also Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436, 445 (E.D. Pa. 2002) (holding that an award of $1,000 to the lead plaintiff was "justified as a small incentive for bringing [consumer protection] claims on behalf of a class").

Mr. Santiago submits a declaration herewith, describing for the Court the work he has performed on behalf of the Settlement Class. *See* Young Decl. ¶ 97. Specifically, Mr. Santiago

spent between 15 and 20 hours reviewing pleadings, providing information to Plaintiff's Counsel, monitoring the litigation, consulting with Plaintiff's counsel, and reviewing and approving the Proposed Settlement. *Id.*

Based on the work Mr. Santiago has performed on behalf of the Settlement Class, the $500.00 incentive award is well within the Court's discretion.

### C.    Plaintiff's Counsel's Fees and Expenses

Finally, the Proposed Settlement provides that, subject to Court approval, Plaintiff's Counsel shall receive $325,000.00 from the Settlement Fund for attorneys' fees and expenses. As discussed in the Memorandum of Law in Support of Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, submitted by Plaintiff's Counsel concurrently herewith, this amount is fair and reasonable under both the lodestar and common fund methods of assessing requests for attorneys' fees. As discussed in greater detail therein, this amount only awards Plaintiff's Counsel 30% of the actual attorneys' lodestar they incurred litigating this Action.

### CONCLUSION

For the reasons set forth above and in the accompanying Young Declaration, Plaintiff respectfully submits that the Court should approve the Settlement and Plan of Allocation and certify this Action as a Class Action for purposes of the Proposed Settlement.

Dated:  August 2, 2007

Respectfully submitted,

For Plaintiff's Counsel:

MILBERG WEISS LLP

Jennifer L. Young
Barry A. Weprin
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

BARRACK, RODOS & BACINE
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

LERACH COUGHLIN STOIA
   GELLER RUDMAN & ROBBINS LLP
John J. Stoia, Jr.
Timothy G. Blood
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

PACKARD, PACKARD & JOHNSON
Craig H. Johnson
2795 E. 2825 Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 428-9000
Facsimile: (801) 428-9090

Ronald D. Packard
Four Main Street, Suite 200
Los Altos, CA 94022
Telephone: (650) 947-7300
Facsimile: (650) 947-7301

LAW OFFICES OF MICHAEL HUBER
Michael E. Huber
8170 South Highland Drive, Suite E5
Sandy, UT  84093
Telephone: (801) 733-5807
Facsimile: (801) 733-0132

Counsel for Defendants:

REED SMITH LLP


<u>"s"/Shannon Elise McClure</u>
Robert A. Nicholas
Louis W. Schack
Shannon Elise McClure
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone:  (215) 851-8100
Facsimile:  (215) 851-1420