IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS SANTIAGO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-4048 |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE GROUP, INC., | : | |
| GMAC RESIDENTIAL HOLDING | : | |
| CORP., and GMAC MORTGAGE | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**DECLARATION OF JENNIFER L. YOUNG IN SUPPORT OF: (1) THE PARTIES'
JOINT MOTION FOR FINAL APPPROVAL OF THE PROPOSED SETTLEMENT,
CERTIFICATION OF THE SETTLEMENT CLASS, AND APPROVAL OF THE
PROPOSED PLAN OF ALLOCATION; AND (2) PLAINTIFF'S COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Jennifer L. Young, of Milberg Weiss LLP ("Milberg Weiss") hereby declare as
follows:

**I.     INTRODUCTION**

1.     Milberg Weiss; Barrack, Rodos & Bacine ("Barrak Rodos"); Lerach Coughlin
Stoia Geller Rudman & Robbins, LLC ("Lerach Coughlin"); The Law Offices of Michael Huber;
and Packard, Packard & Johnson (the "Packard Firm") (collectively "Plaintiff's Counsel")
represent the Plaintiff in the above-captioned action (the "Action" or the "Litigation").    As
Plaintiff's Counsel, we directed the prosecution of this Action on behalf of the Class and have
personal knowledge of every aspect and phase of the Action.

2.     I submit this Declaration in support of:  (1) the Parties' Joint Motion for Final
Approval of the Proposed Settlement, Certification of the Settlement Class, and Approval of the

Proposed Plan of Allocation ("Joint Motion for Final Approval"); and (2) Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fee and Expense Motion").

3.      As described in greater detail below, the proposed settlement described herein ("Proposed Settlement"), which was achieved with the assistance of United States Magistrate Judge Arnold C. Rapoport, creates a $650,000.00 Settlement Fund ("Settlement Fund") and provides Settlement Class Members with either a 160% or 200% recovery based on their actual damages, after the payment of attorneys' fees.

4.      Despite the distribution of notice to more than 83,713 Class Members, not a single Class Member has objected to the Proposed Settlement.  Indeed, notwithstanding the significant size of the Settlement Class, there have been only 10 requests for exclusion from participation in the Proposed Settlement.  Clearly, the Settlement Class has embraced the Proposed Settlement and this demonstrates that it is fair, adequate, and reasonable.  The relevant law supporting final approval of the Proposed Settlement is set forth in the Memorandum of Law in Support of the Parties' Joint Motion for Final Approval of the Proposed Settlement, Certification of the Settlement Class, and Approval of the Proposed Plan of Allocation ("Settlement Brief").

5.      Also set forth below are the facts and circumstances supporting Plaintiffs' Counsel's application for attorneys' fees and expenses in the amount of $325,000.00. Plaintiff's Counsel shouldered the entire risk of committing significant financial and personnel resources to this Action on a contingent fee basis, notwithstanding the significant uncertainty as to whether the Action would succeed.  Plaintiff's Counsel's efforts have now produced an excellent result for the Settlement Class.

6.     As discussed below, the requested fee falls within the parameters recognized as appropriate under both the Lodestar method and the common fund method. The relevant law supporting approval of the Fee and Expense Motion is set forth in the Memorandum of Law in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fee Brief").

7.     For the reasons contained in the Settlement Brief and the Fee Brief, and based on the facts described herein, Plaintiff's Counsel respectfully submit that: (1) the Proposed Settlement is outstanding and worthy of immediate approval; and (2) that the Court should grant Plaintiff's Counsel's Fee and Expense Motion.

## II.     HISTORY AND BACKGROUND OF THE LITIGATION

### A.     The Nature of the Action

8.     In or around February 2002, Plaintiff's Counsel began investigating the law and facts relating to Plaintiff's claims. Plaintiff's Counsel's investigation included the following activities:  (a) reviewing documents provided by Mr. Santiago; (b) researching Defendants' business and operations; (c) researching potential causes of action; and (d) reviewing industry reports and trade journals discussing the Real Estate Settlement Procedures Act ("RESPA") and its application.

9.     On June 24, 2002, Plaintiff filed the above-captioned action. In the Complaint, Plaintiff alleged that certain amounts charged on his HUD-1 statement in connection with a real estate closing violated RESPA, 12 U.S.C. § 2607, which governs permissible charges for services provided in connection with real estate closings. *See* Complaint ¶¶ 38-40, 65-67. Specifically, Plaintiff alleged that the fees Defendants charged for certain real estate closing services were greater than the amount Defendants paid to the third-party vendors performing

such services or that the amounts charged for the services were otherwise greater than their reasonable value. *See* Complaint *passim*.

10.    The settlement service fees at issue in the Complaint are an $85.00 tax service fee, a $20.00 flood certification fee, and a $250.00 funding fee. *See* Complaint ¶¶ 38-40.

11.    Plaintiff alleged that the fees at issue violated Section 8 of RESPA, which prohibits "unearned fees." The relevant portions of Section 8 provides as follows:

> § 2607 <u>Prohibition against kickbacks and unearned fees</u>
>
> (a)    *****
>
> (b)    Splitting charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed . . . .
>
> (c)    Fees, salaries, compensation, or other payments.  Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment . . . for services actually performed[.]

12 U.S.C. § 2607.

12.    In addition to his RESPA claim, Plaintiff also asserted state law claims for unjust enrichment and money had and received. *See* Complaint ¶¶ 68-73.

**B.    Defendants Move to Dismiss Plaintiff's Claims**

13.    On September 6, 2002, Defendants moved to dismiss Plaintiff's claims, arguing that Plaintiff's claims were not actionable under RESPA.

14.    On September 30, 2003, the Court granted Defendants' motion to dismiss, holding that "plaintiff fails to plead that defendants split the overcharged fees with a third party. Such a deficiency is fatal to plaintiff's Complaint." *Santiago v. GMAC Mortg. Group, Inc.*, 06-1278, 2003 U.S. Dist. LEXIS 17728 at *7 (Sept. 30, 2003 E. D. Pa. 2003).  The remainder of

4

Plaintiff's claims were dismissed because the Court lacked subject matter jurisdiction. *Id.* at *27.

15.     Plaintiff appealed the dismissal to the United States Court of Appeals for the Third Circuit. Preparing the briefing associated with the appeal required a significant amount of time and effort on the part of Plaintiff's Counsel.

16.     On August 4, 2005, the Third Circuit affirmed the dismissal of the portion of Plaintiff's RESPA claim based on the $250.00 funding fee. Specifically, the Third Circuit held that the funding fee was an "overcharge,"[1] for which RESPA does not provide a cause of action. *See Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 388 (3d Cir. 2005). However, the Third Circuit reinstated Plaintiff's claims arising from the $85.00 tax service fee and the $20.00 flood certification fee, holding that these claims were properly pled as actionable "mark-ups"[2] under RESPA. *Id.* at *390 ("[T]he text of Section 8(b) clearly allows for a cause of action for markups.").

17.     Although the Third Circuit reinstated Plaintiff's claims based on the $85.00 tax service fee and the $20.00 flood certification fee, the dismissal of Plaintiff's claims based on the $250.00 funding fee meant that the maximum potential recovery in this Action was now likely significantly limited.

---

[1] An overcharge occurs where the mortgage lender charges the borrower more than the reasonable value of the settlement service provided.

[2] A mark-up occurs when a mortgage lender charges a borrower for settlement services provided by third-party vendors in excess of the fees that the third-party vendors charged to the mortgage lender for those services.

**C.    The Action is Remanded and the Parties Conduct Discovery While Engaging in Settlement Efforts**

18.    In accordance with the Third Circuit's Order, the case was remanded, and the Defendants answered the Complaint on January 31, 2006.

19.    At this point, the parties began discovery.    Plaintiff had served discovery requests on Defendant prior to the motion to dismiss, and Plaintiff again sought production of the requested documents by letter to Defense Counsel dated March 24, 2006.

20.    Around this time, the Parties began to consider whether they might be able to settle the Action.    On March 27, 2006 and April 17, 2006, the Parties attended telephonic settlement conferences before Magistrate Judge Rapoport.

21.    In April 2006, Defendants produced to Plaintiff the Plaintiff's loan file as well as some of the third-party vendor contracts at issue.

22.    On April 26, 2006, the Parties attended an in-person mediation before Magistrate Judge Rapoport.    Through these conferences and mediations, the Parties were able to determine what discovery needed to be exchanged in order to sufficiently assess the claims and defenses at issue.

23.    On May 16, 2006, Plaintiff served additional document requests upon Defendant.    In addition, on May 17, 2007, Plaintiff requested by letter additional documents responsive to their first set of discovery requests.

24.    On May 25, 2006, the parties appeared before Magistrate Judge Rapoport for another in-person mediation, at which time, Plaintiff raised with the Court the issue of the outstanding discovery.    At the conclusion of the hearing, Magistrate Judge Rapoport ordered that Defendants produce documents relating to:

> 1)    the size of the class;

2)    the amounts of Defendants' payments to its third-party vendors for the services provided to Plaintiff and the class members;

3)    Defendants' policies and procedures regarding payments to third party vendors for settlement services provided during the class period.

*See* May 25, 2006 Order [Dkt. No. 49]. In addition, the Order directed that Defendants produce an affidavit from a representative of the Defendants describing the contracts at issue and the efforts made to locate them as well as the services covered by the relevant contracts. *Id.* Finally, the Order directed that Plaintiff make a settlement demand on Defendants. *Id.*

25.    In or about June 2006, Defendants produced additional third-party vendor contracts and indicated that efforts were being made to provide the additional information ordered by the Court.

26.    The Parties attended an additional telephonic settlement conference before Magistrate Judge Rapoport on June 29, 2006.

27.    On July 13, 2006, Defendants produced the Affidavit of Linda Naylor, Senior Vice President of Retail Operations for GMAC Mortgage Corporation ("Naylor Affidavit"). *See* Naylor Aff. (Ex. A). The Naylor Affidavit provided the following information relevant to the Proposed Settlement:

1)    The number of affected Class Members was limited to approximately 83,000 members. *See* Naylor Aff. ¶ 11 (Ex. A).

2)    Defendants operated four business channels through which they originated mortgage loans, and these are commonly referred to as (1) Retail; (2) Direct; (3) Ditech; and (4) Broker. *See* Naylor Aff. ¶ 9 (Ex. A).

3)  With regard to tax service fees and flood certification fees charged to borrowers with loans originating in the Retail, Direct, and Ditech channels, Defendants generally charged the same amount that Defendants paid to their third-party vendor or a lower amount. *See* Naylor Aff. ¶ 11(a) (Ex. A).

4)  With regard to tax service fees charged to borrowers with loans originating in the Broker channel, Defendants generally charged borrowers the same amount that Defendants paid to their third-party vendor or a lower amount. *See* Naylor Aff. ¶ 11(b) (Ex. A).

5)  With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period January 1, 1999 through February 28, 2002 Defendants charged borrowers an amount that was $9 more than the amount Defendants paid to their third-party vendor performing the flood certification. *See* Naylor Aff. ¶ 11 (Ex. A).

6)  With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period March 1, 2002 through August 31, 2005 Defendants charged borrowers an amount for flood certifications that was $1 more than the amount Defendants paid to their third-party vendor performing the flood certification. *See* Naylor Aff. ¶ 11 (Ex. A).

28.    The Naylor Affidavit indicated to Plaintiff's Counsel that Plaintiff's actionable claims were very limited in scope, duration, and potential monetary recovery. Specifically, the Naylor Affidavit stated that Defendants had only charged borrowers an amount in excess of the amounts Defendants paid to third-party vendors in the Broker channel for flood certifications,

and only during the time period January 1, 1999 through August 31, 2005. *See* Naylor Aff. ¶ 11 (Ex. A).

29.    On July 19, 2006, Plaintiffs made a written settlement demand on Defendants, in accordance with Magistrate Judge Rapoport's Order. *See* Settlement Demand (Ex. B).

30.    Thereafter, the Parties attended additional telephonic settlement conferences before Magistrate Judge Rapoport on July 20, 2006, July 31, 2006, August 22, 2006.

31.    Throughout the time period during which these settlement conferences occurred, the Parties communicated on a weekly, if not daily, basis to discuss the potential need for additional discovery and to exchange viewpoints on the discovery produced and how it affected the value of any potential settlement. Through this discovery and mediation process, the Parties were able to assess the risks and benefits of proceeding to litigation, considering that, at best, the facts mandated that Plaintiff's claims would be significantly limited in scope, proceeding to trial would be costly for both Plaintiff and Defendants, and the damages at issue were limited and easily ascertainable.

32.    With these considerations in mind, the Parties attended two final in-person mediations before Magistrate Judge Rapoport on August 16, 2006 and August 28, 2006, at which time the Parties reached an agreement in theory regarding the terms of the Proposed Settlement, subject to Defendant producing confirmatory discovery relating to the fees at issue.

33.    On October 27, 2006, Defendants produced a random sample of 232 HUD-1 forms. Plaintiff's Counsel reviewed the HUD-1 forms to confirm that the description of the charges provided in the Naylor Affidavit was accurate. The HUD-1 forms supported the information contained in the Naylor Affidavit and indicated that, with regard to borrowers

comprising the Settlement Class, the mark-ups charged for flood certification fees were the same or similar.

34.     Shortly after performing this confirmatory discovery, the Parties began drafting the Settlement Agreement, which was submitted to the Court with the Parties' Amended Joint Motion for Preliminary Approval of Class Action Settlement, filed with the Court on March 20, 2007.

35.     All told, Plaintiff's Counsel personally attended four separate in-person mediations and six telephonic settlement conferences before Magistrate Judge Rapoport. These Settlement Negotiations were hard-fought, heated, and most certainly conducted at arm's-length. In addition, the parties attended additional teleconferences before Magistrate Judge Rapoport to apprise the Court on efforts at drafting the Settlement Agreement.

### D.     The Terms of the Proposed Settlement

#### 1.     The Proposed Settlement Creates a $650,000.00 Settlement Fund Providing Settlement Class Members at Least 160% of Their Actual Damages.

36.     The Proposed Settlement creates a Settlement Fund for the following Settlement Class:

> All persons who, between January 1, 1999 and August 31, 2005 inclusive, obtained from Defendants one or more federally related residential mortgage loan(s) through the Broker channel.

*See* Settlement Agreement ¶ 9 (Ex. C).  According to Defendants' records, the Settlement Class consists of 83,713 persons.  See Stipulation of Facts Regarding Certification of a Settlement Class ¶ 5 ("Stipulation") (Ex. D).[3]

---

[3]The Parties have entered into a Stipulation of Facts Regarding Certification of a Settlement Class ("Stipulation"), which is attached hereto as Exhibit D.  This Stipulation provides factual support to demonstrate that the Settlement Class meets the requirements of Fed. R. Civ. P. 23.

37.    The Proposed Settlement provides an excellent result for the Settlement Class, in that it creates a Settlement Fund of $650,000.000, which is more than the total amount of damages actually suffered by the Class.

38.    Were this action to proceed to trial, under RESPA's treble damages provision, Class Members with actionable claims could potentially recover no more than $27 or $3, depending on whether they were charged for flood certifications in an amount of $9 or $1 in excess of the amount Defendants paid for such services. Based on the number of class members charged the respective $9 and $1 amounts, the total amount of actual damages in this action is $184,921.00. *See* Stipulation ¶¶ 2-3 (Ex. D). Applying RESPA's treble damages provision, the total potential Class recovery, were this action to proceed to trial, would be $554,763.00. *See* Stipulation ¶¶ 2-3 (Ex. D). Thus, the $650,000.00 Proposed Settlement provides an excellent result for the Class, even after the deduction of the $325,000.00 in requested attorneys' fees and expenses from the Settlement Fund, considering the fees and expenses Plaintiff would incur in proceeding to trial.

39.    Discovery provided by Defendants demonstrates that 12,651 Class Members whose loans closed during the period January 1, 1999 through February 28, 2002 paid an alleged mark-up of $9 for flood certification fees. See Stipulation ¶ 2 (Ex. D); Naylor Aff. ¶ 11 (Ex. A). These Settlement Class members will receive approximately $14.40 under the Proposed Settlement. See Settlement Agreement ¶ 18 (Ex. C). This award is 160% of the actual damages incurred by these Settlement Class Members.

40.    Discovery provided by Defendants further demonstrates that the 71,062 Settlement Class Members whose loans closed during the period March 1, 2002 through August 31, 2005 paid an alleged mark-up of $1 for flood certification fees. See Stipulation ¶ 3 (Ex. D);

Naylor Aff. ¶ 11  (Ex. A).  These Settlement Class members will receive approximately $2.00 under the Proposed Settlement.  See Settlement Agreement ¶ 18 (Ex. C).  This award is 200% of the actual damages incurred by these Settlement Class Members.  In addition, the Proposed Settlement provides for a $500 incentive payment to the Class Representative, as well as an award of attorneys' fees and expenses, subject to Court approval.  See Settlement Agreement ¶ 13 (Ex. C).  These topics are discussed in greater detail below in the section of this Declaration dealing with the Proposed Plan of Allocation.

### 2.    The Court Entered Findings of Fact Associated With the Settlement

41.    As discussed above, the discovery conducted by the Parties demonstrated that the actionable claims of Plaintiff and the Class were limited in nature.  Specifically, Defendants provided discovery indicating that were Plaintiff to proceed with Litigation, Plaintiff's actionable claims would be limited to alleged mark-ups of flood certification fees charged to borrowers with loans originating through the Broker Channel during the period January 1, 1999 through August 2005. *See* Naylor Aff. ¶ 11 (Ex. A).

42.    Nonetheless, Plaintiff's Counsel were unwilling to release the claims of Class Members with loans originating through the Retail, Direct, or Ditech channels without consideration, which Defendants would not agree to provide.

43.    Accordingly, in an effort to deter future lawsuits against Defendants for conduct at issue in this Litigation regarding which discovery indicates there is no claim, the Parties prepared Stipulated Findings of Fact, describing that the discovery conducted in this Action demonstrates that Defendants did not mark up fees for tax services or flood certifications for loans originating in the Retail, Direct, and Ditech channels. *See* Findings of Fact [Dkt. No. 76].

44.     The Parties submitted the Findings of Fact to the Court with the Parties'
Amended Joint Motion for Preliminary Approval on March 20, 2007. The Court so ordered the
Findings of Fact on April 6, 2007. *See* Findings of Fact [Dkt. No. 76].

**E.      The Parties Provided Notice to the Settlement Class in Accordance with the
April 6, 2007 Preliminary Approval Order and the May 8, 2007 Order and
No Settlement Class Members Have Objected to the Proposed Settlement**

45.     The Court's April 6, 2007 Preliminary Approval Order directed that the Notice
submitted to the Court with the Parties' Joint Motion for Preliminary Approval "be directed to all
class members at their last known address, according to Defendants' records, within 21 days of
the Order (i.e. by June 27, 2007). . . . Notices returned with a forwarding address shall be re-
mailed to the new address within (3) business days. The Claims Administrator will process
every Class Member address through a Lexis/Nexis database to obtain updated contact
information." *See* Preliminary Approval Order ¶ 5 [Dkt. No. 73]. The Court's May 8, 2007
Order provided that the parties direct an Amended Class Notice to the Settlement Class
accompanied by an explanatory insert by May 19, 2007. *See* May 8, 2007 Order ¶ 2 [Dkt. No.
80].

46.     The Parties have provided the Amended Class Notice and Explanatory Insert to
the Settlement Class in accordance with the Preliminary Approval Order and the Court's May 8,
2007 Order. *See* Declaration of Orran Brown ("Brown Declaration") (Ex. E).

47.     Specifically, on May 11, 2007, the Claims Administrator submitted the last
known addresses for all 83,713 Settlement Class Members, as provided by Defendants, to
Lexis/Nexis for the purpose of updating and confirming the addresses. *Id.* at ¶ 4. Lexis/Nexis
confirmed the addresses for 62,029 Settlement Class Members and provided updated addresses
for 19,897 Settlement Class Members. *Id.* Lexis/Nexis was unable to confirm or update
addresses for 1,787 Settlement Class Members. *Id.*

48.     On May 18, 2007, the Claims Administrator sent the Amended Class Notice and Explanatory Insert to the Settlement Class via first-class mail through the United States Postal Service. *Id.* ¶ 5. In addition, 41 copies of the Class Notice and Explanatory Insert were remailed to updated addresses provided to the Claims Administrator by the United States Postal Service. *Id.* at ¶ 6.

49.     The Notice provided to the Settlement Class stated that the deadline for Class Members to serve objections to the Proposed Settlement expired on July 24, 2007. However, no Class Member has filed such an objection. *Id.* at ¶ 11. This supports a finding that the Proposed Settlement and the Plan of Allocation are fair and reasonable.

50.     In addition, the Notice provided that Class Members who wish to be excluded from the Proposed Settlement must file requests for such exclusion by July 24, 2007. Milberg Weiss, Reed Smith, and the Claims Administrator have conferred and determined that a total of ten requests for exclusion have been submitted by Class Members. *Id.* at ¶ 10. Reed Smith also conferred with Jason Gordon, law clerk to the Honorable James Knoll Gardner, to confirm that the Court has not received any requests for exclusion about which the parties are unaware.

## III.    THIS COURT SHOULD APPROVE THE SETTLEMENT

51.     As discussed in the accompanying Settlement Brief, the relevant factors that courts in this Circuit consider in evaluating the fairness of a class action settlement include: (1) the risks of establishing liability and damages; (2) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation (3) the ability of settling defendants to withstand a greater judgment; (4) the complexity, expense, and likely duration of the litigation; (5) the stage of the proceedings; (6) the risks of maintaining the class action through trial; and (7) the reaction of the members of the class to the settlement. As illustrated below, as well as in the accompanying Settlement Brief, the terms of the Proposed Settlement achieved by Plaintiff's

Counsel fully meet these criteria. Accordingly, Plaintiff's Counsel respectfully submit that this Settlement is fair, reasonable, and adequate and should be approved by this Court.

**A.    The Risks and Expenses Associated With Establishing Liability and Damages Compel A Finding That the Proposed Settlement is in the Best Interest of the Settlement Class**

52.    Had this Litigation proceeded, Plaintiff would have incurred significant fees and expenses in demonstrating liability and damages that are simply not warranted given that the total potential recovery for Plaintiff's actionable claims is $554,763.00 in trebled damages and the Proposed Settlement provides Settlement Class Members a recovery of at least 160% of their actual damages.

53.    Specifically, had this Action proceeded, Defendants would have likely attempted to demonstrate that they provided services sufficient to justify the charges at issue. Meanwhile, Plaintiff would have had to prove that any services provided by Defendants were "nominal" or duplicative. Plaintiff's Counsel recognize that proving the "absence of value" of any extra services performed by Defendants in addition to those performed by their third-party vendor would have been a significant and costly hurdle for Plaintiff to overcome. Establishing liability and damages would require a significant amount of time and effort by Plaintiff's Counsel. In addition, Plaintiff's Counsel would have incurred significant expenses, including expert expenses, in proceeding with such efforts.

54.    Plaintiff's Counsel could not justify proceeding with the Litigation where the potential damages were significantly limited by the dismissal of Plaintiff's funding fee claim and where the Proposed Settlement provides the Settlement Class more than a complete refund of their total actual damages, even though proceeding with the Litigation might have resulted in a larger attorneys' fee for Plaintiff's Counsel.

15

**B.    The Range of Reasonableness of the Proposed Settlement in Light of the Likely Recovery**

55.    Although Plaintiff's Counsel believe that they could ultimately demonstrate that the Defendants violated RESPA, they acknowledge that if this Action were to proceed against the Defendants, Plaintiff would run some risk of obtaining a recovery smaller than the recovery presented herein.  The Defendants would undoubtedly present a completely different picture of the relevant facts and circumstances that led to the filing of this Action.  Indeed, the Settling Defendants have defended the case vigorously and have indicated that, absent the Proposed Settlement, they would continue to do so.  Given that the Proposed Settlement provides an excellent recovery for the Settlement Class, undertaking the risks and expenses associated with proceeding with the Litigation would be imprudent and contrary to the best interests of the Settlement Class.

**C.    The Ability of the Defendant to Withstand A Greater Judgment**

56.    Defendants are able to withstand a judgment greater than the amount of the Proposed Settlement.

57.    However, the discovery exchanged by the Parties and discussed above demonstrates that the conduct at issue is very limited in scope and duration, and Plaintiff's recovery would be correspondingly limited.  Indeed, the Court has already so ordered Findings of Fact confirming this.  *See* Findings of Fact [Dkt. No. 76]; Naylor Aff. ¶ 11 (Ex. A).

58.    As the damages of Plaintiff and the Class are correspondingly limited by the facts of the case, this factor is not relevant in assessing the fairness of the Proposed Settlement.

**D.    Given the Limited Nature of the Plaintiff's Remaining Claims, Continued Pursuit of this Litigation Would Be Unnecessary and Wasteful.**

59.    In order to proceed with this Litigation, Plaintiff would have to engage in extensive and costly discovery, including numerous Rule 30(b)(6) and third-party depositions as well as voluminous document production.  In addition, Plaintiff would have to engage costly experts to opine on whether any services provided by Defendants were "nominal" or duplicative. Following discovery, Defendants would likely move for summary judgment, which would require several months for briefing, argument, and disposition.  The time, effort, and expense associated with proceeding with this Litigation are simply not warranted given the very limited nature and monetary value of Plaintiff's possible recovery.  Indeed, the additional expenses that would be associated with proceeding with this Litigation could easily be greater than any potential recovery.

**E.    The Stage of the Proceedings**

60.    Plaintiff's Counsel have litigated this Action for more than five years and have gained sufficient information upon which to evaluate the merits of Plaintiff's claims, the strengths of the defenses asserted and likely to be asserted by the Defendants, and the value of Plaintiff's claims for purposes of settlement.

61.    Specifically, before this Action was even filed, Plaintiff's Counsel:  (a) reviewed documents provided by Mr. Santiago; (b) researched Defendants' business and operations; (c) researched potential causes of action; (d) reviewed and analyzed public information relating to Defendants' finances; and (e) reviewed industry reports discussing RESPA and its application.

62.    In addition, in prosecuting this Action, Plaintiff's Counsel, among other things: (a) thoroughly analyzed Plaintiff's claims under the applicable law and drafted the Complaint; (b) fully briefed a motion to dismiss;  (c) appealed the dismissal of Plaintiff's claims and

obtained a partial reversal; (d) engaged in settlement negotiations with Defendants before Magistrate Judge Rapoport spanning several months; (e) appeared before the Court on multiple occasions; and (f) reviewed testimony and documents produced by Defendants.

63.     Through these efforts, Plaintiff's Counsel gained a thorough understanding of the legal and factual issues involved in the Litigation sufficient to recognize the value of the Proposed Settlement. Thus, the record demonstrates that this case is at an appropriate stage for settlement.

**F.     The Risks of Maintaining the Class Action Through Trial**

64.     Because of the procedural posture of this Action, Plaintiff has not yet had the opportunity to move for class certification. Were Plaintiff to move for class certification outside the settlement context, Defendants would have vigorously opposed the certification of the Class as well as the merits of Plaintiff's claims. In addition, were a litigation class to be certified, there is always a risk that the court might decertify the class.

65.     Incurring such risk and the corresponding expense of continuing to pursue Plaintiff's claims would be improper and contrary to the best interests of the Class, given the very limited potential monetary value of Plaintiff's claims and the more than adequate recovery provided by the Proposed Settlement.

**G.     The Reaction of Settlement Class Members**

66.     As noted above, the Claims Administrator distributed the Amended Notice to all 83,713 Settlement Class Members in accordance with the Court's Preliminary Approval Order. Yet, not one single Settlement Class Member has objected to the Proposed Settlement. *See* Brown Decl. ¶ 11 (Ex. E).

67.    Only 10 Settlement Class Members have requested exclusion from the Settlement Class, indicating that the vast majority of Settlement Class Members approve of the Proposed Settlement. *Id.* ¶ 10 (Ex. E).

68.    As discussed in greater detail below, Plaintiff's Counsel have received two requests for exclusion from two Settlement Class members expressing dissatisfaction with the amount of the potential attorney's fees to be awarded to Plaintiff's Counsel. However, as these Class Members have requested to be excluded from the Settlement Class, they lack standing to lodge any objections. Moreover, to some extent, these Settlement Class Members seem to object to class actions in general, as purportedly being attorney-driven, rather than to the potential attorney's fees to be awarded in this case in particular. In any event, as discussed in greater detail below and in the Fee Brief, the proposed award of attorney's fees in this Action meets all applicable tests for approval.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

69.    By Orders dated April 10, 2007 and May 11, 2007, this Court preliminarily certified this Action as a class action for the purposes of settlement, appointed Mr. Santiago as Class Representative; appointed Plaintiff's Counsel as Class Counsel, and directed notice to the Settlement Class.

70.    As discussed above, the Parties distributed Notice to the Settlement Class in accordance with the Court's Orders. *See* Brown Decl. ¶ 5 (Ex. E).

71.    Now, Plaintiff requests that the Court finally approve the Settlement Class, based on the facts described herein and the legal arguments contained in the Settlement Brief.

72.    As noted above, the Parties have entered into a Stipulation of Facts Regarding Certification of a Settlement Class, which is attached hereto as Exhibit D. This Stipulation

provides factual support in addition to that cited herein, to demonstrate that the Settlement Class meets the requirements of Fed. R. Civ. P. 23.

### A.    This Settlement Class Meets The Requirements of Fed. R. Civ. P. 23(a)

73.    This Settlement Class Meets The Requirements of Fed. R. Civ. P. 23(a) in that:

1.    the Settlement Class is so numerous that joinder of all members is impracticable;

2.    there are questions of law or fact common to the Settlement Class;

3.    the claims or defenses of the Class Representative are typical of the claims or defenses of the Settlement Class; and

4.    the Class Representative has fairly and adequately protected the interests of the class.

The factual information demonstrating that these factors are fulfilled is described in greater detail below.

### 1.    Numerosity

74.    Rule 23(a)(1) requires that the class must be so numerous that joinder of all class members is impracticable.  In the present Action, the Settlement Class consists of 83,713 members.  As such, the Settlement Class fulfills the numerosity requirements of Rule 23(a)(1). *See* Stipulation ¶ 5 (Ex. D).

### 2.    Commonality and Predominance

75.    In the present Action, there are numerous issues of law and fact common to the Class.  These include:

a.    whether Defendants marked up the costs of third-party flood certifications without providing additional actual, necessary, and distinct services;

b.    whether the fees for obtaining the flood certifications were in excess of the reasonable value of those services; and

c.    whether Defendants charged borrowers fees where no, nominal, or duplicative work was performed.

*See* Complaint ¶ 51; *see also* Stipulation ¶ 6 (Ex. D).

76.    The discovery exchanged by the parties further supports that common issues of fact exist, which are predominant over any individual issues. This discovery includes the following:

a. On July 13, 2006, Defendants produced the Affidavit of Linda Naylor, Senior Vice President of Retail Operations for GMAC Mortgage Corporation *See* Naylor Aff. (Ex. A). The Naylor Affidavit provided the following information relevant to the fees at issue:

(i)    Defendants operated four business channels through which they originated mortgage loans, and these are commonly referred to as (1) Retail; (2) Direct; (3) Ditech; and (4) Broker;

(ii)    With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period January 1, 1999 through February 28, 2002 Defendants charged borrowers an amount that was $9 more than the amount Defendants paid to their third-party vendor performing the flood certification.

(iii)    With regard to flood certification fees charged to borrowers with loans originating in the Broker channel, during the period March 1, 2002 through August 31, 2005 Defendants

charged borrowers an amount for flood certifications that was $1 more than the amount Defendants paid to their third-party vendor performing the flood certification.

(iv) With regard to other settlement fees at issue in this litigation charged to borrowers with loans originating the Retail, Direct, and Ditech channels, Defendants charged borrowers the same amount was paid to the third-party vendors performing the services at issue, or a lesser amount.

*See* Naylor Aff. ¶ 11 (Ex. A); *see also* Findings of Fact ¶ 5 [Dkt. No. 76].

b. On October 27, 2006, Defendants produced a random sample of 232 HUD-1 forms of Settlement Class Members. Plaintiff's Counsel reviewed the HUD-1 forms and confirmed that they comported with the description of the charges provided in the Naylor Affidavit. The HUD-1 forms demonstrated that all Settlement Class Members were charged the same or similar amounts for the flood certification fees and that there were no significant variations in the charges at issue among Settlement Class Members.

77. Thus, for the purposes of certifying the Settlement Class, the numerous common issues of law and fact predominate over any other issues in the case.

### 3.    Typicality

78. With regard to the Proposed Settlement, the Class Representative's claims are typical of those asserted by the Class in that they arise out of the same settlement fees (flood certification fees), are based on the same federal statute (RESPA), and arise out of alleged mark-

ups of the same amounts (either $9 or $1). *See* Naylor Aff. ¶ 11 (Ex. A); *see also* Stipulation ¶¶ 1, 7 (Ex. D).

79.    Accordingly, the typicality prong is satisfied here for the purposes of certifying the Settlement Class.

### 4.    Adequacy of Representation

80.    In this case, no conflict of interest exists.  The respective claims of the absent Settlement Class Members in the Class Period arise from the same alleged wrongful conduct and involve the same legal theories as the claims of the Class Representative.

81.    Because the Plaintiff's claims and interests are aligned with those of absent Settlement Class Members, those absent Settlement Class Members' interests will be adequately protected.

82.    In addition, Plaintiff's Counsel are very experienced in consumer class action litigation and have successfully prosecuted numerous class actions throughout the United States. Here, Plaintiff's Counsel diligently and aggressively represented Plaintiff and the Settlement Class before this Court and in the settlement negotiations with Defendants.  The firm resumes of Plaintiff's Counsel are attached hereto as Exhibits F-J.

83.    Based on the foregoing, the adequacy prong is clearly fulfilled for the purposes of certifying the Settlement Class.

### B.    This Settlement Class Meets The Requirements of Fed. R. Civ. P. 23(b)(3)

84.    As noted in the Settlement Brief, in determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the court must consider the following factors: (a) the interest of members of the class in individually controlling separate actions; (b) the desirability of concentrating the litigation of the claims in the particular forum; (c) the extent and nature of any related litigation already commenced by class members; and (d) the potential difficulties of

managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, each of these factors strongly weighs in favor of class certification.

85.    First, the expense of individual actions, weighed against the potential recovery, would be prohibitive, as each of the Settlement Class Members was charged only $1 or $9 in excess of the flood certification fee Defendants paid to the third-party vendor performing the flood certification.

86.    Second, this case is properly venued within this District. Each of the Defendants is headquartered in Horsham, Pennsylvania. *See* Complaint ¶ 12.

87.    Third, there is no related litigation pending in this District to indicate that Settlement Class Members would prefer to individually control the prosecution of their claims. Settlement Class Members were given the opportunity to exclude themselves from the Settlement Class, and only ten have exercised this right. *See* Brown Decl. ¶ 11 (Ex. E). Thus, the extent of related litigation is not an issue.

88.    Finally, the Parties have encountered no unusual difficulties in managing this Litigation.

89.    Accordingly, the Settlement Class fulfills the requirements of Rule 23(b)(3).

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

90.    As noted in the Settlement Brief, in addition to scrutinizing a Proposed Settlement, the court must also examine the fairness of the proposed plan of allocation of the settlement fund. The Proposed Plan of Allocation is described in paragraph 13 of the Settlement Agreement. *See* Settlement Agreement ¶ 13 (Ex. C).

91.    The Proposed Plan of Allocation is fair, reasonable, and adequate because it provides an award to each Settlement Class Member based upon the amount of the alleged mark-

24

up that each Settlement Class Member paid. Furthermore, the Proposed Plan of allocation provides Settlement Class members with at least 160% of their actual damages.

92.    Discovery provided by Defendants demonstrates that the 12,651 Settlement Class Members whose loans closed during the period January 1, 1999 through February 28, 2002 paid an alleged mark-up of $9 for flood certification fees. *See* Stipulation ¶ 2 (Ex. D). These Settlement Class Members will receive approximately $14.40 under the Proposed Settlement. *See* Settlement Agreement ¶ 18 (Ex. C). This amounts to a recovery of 160%.

93.    Discovery provided by Defendants further demonstrates that the 71,062 Class Members whose loans closed during the period March 1, 2002 through August 31, 2005 paid an alleged mark-up of $1 for flood certification fees. *See* Stipulation ¶ 3 (Ex. D). These Settlement Class Members will receive approximately $2.00 under the Proposed Settlement. *See* Settlement Agreement ¶ 18 (Ex. C). This amounts to a recovery of 200%.

94.    Thus, each Settlement Class Member will receive a settlement amount that is based upon, yet is significantly greater than, the actual damages suffered. As such, the Proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

95.    In addition to the allocation of the Settlement Fund to the Settlement Class, the Proposed Settlement provides for a $500.00 incentive award ("Incentive Award") to Mr. Santiago, the Class Representative.

96.    As described in the Settlement Brief, whether to award an incentive payment is a matter within the Court's discretion.

97.    Without Mr. Santiago, there would be no case and no Proposed Settlement. Attached is Mr. Santiago's Declaration ("Santiago Declaration"), in which he describes for the Court the work he has performed on behalf of the Settlement Class. *See* Santiago Decl. ¶ 3 (Ex.

K). Specifically, Mr. Santiago spent between 15 and 20 hours reviewing pleadings, providing information and documents to Plaintiff's Counsel, monitoring the litigation, consulting with Plaintiff's counsel, and reviewing and approving the Proposed Settlement. *Id.*

98.    Based on the work Mr. Santiago has performed on behalf of the Settlement Class, the $500.00 incentive award, which is equivalent to a rate of $25 per hour, is well within the Court's discretion.

99.    Finally, the Proposed Settlement provides that, subject to Court approval, Plaintiff's Counsel shall receive $325,000.00 from the Settlement Fund for attorneys' fees and expenses. As discussed in the Fee Brief, submitted separately by Plaintiff's Counsel, this amount is fair and reasonable. Plaintiff's Counsel are only requesting 30% of the actual attorneys' lodestar they incurred litigating this Action. Moreover, were Plaintiff's Counsel to proceed with the Litigation and prevail at trial, Plaintiff's Counsel could apply for an award of all of their attorney's fees and expenses, pursuant to RESPA. *See* 12 USCS § 2607 ("[T]he court may award to the prevailing party the court costs of the action together with reasonable attorneys fees."). This would not be prudent given that the total value of actionable claims in this Action, were Plaintiff to prevail at trial, are limited to $554,763.00. *See* ¶ 38, *supra*. Plaintiff's Counsel provide additional information below in support of their fee application.

## VI.    THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE AWARDED

100.    As described above and in the Settlement Brief, the Proposed Settlement creates a $625,000.00 Settlement Fund. As part of the Proposed Plan of Allocation of the Settlement Fund, Plaintiff's Counsel are requesting an award of $325,000.00 for attorneys' fees and expenses. *See* Fee Brief.

101.    Plaintiff's Counsel's expenses in this case total $43,773.00 through July 2007 and are described by each of the law firms comprising Plaintiff's Counsel in their declarations attached hereto. *See* Plaintiff's Counsel's Declarations (Exs. F-J). These expenses were incurred for such items as photocopying of documents, on-line research, postage, express mail, travel and accommodations, long distance telephone charges, filing fees, facsimile expenses, transportation, and other incidental expenses directly related to the prosecution of this Action. The $43,773.00 expense amount does not include any expenses related to the preparation of the Fee and Expense Motion or any anticipated expenses relating to attending the fairness hearing.

102.    When the expenses of $43,773.00 are subtracted from the requested fee and expense award of $325,000.00, the amount remaining for attorneys' fees is $281,227.00. This amounts to an attorneys' fee award of 43% of the Settlement Fund.

103.    As described herein and in the Fee Brief, Plaintiff's Counsel's request for fees and expenses should be granted for the following reasons:

        1)    the requested fee results in a negative Lodestar multiplier of .30, which is well below the multipliers approved by courts in this jurisdiction;

        2)    the requested fee is within the range of percentage fee recoveries approved by courts in this jurisdiction; and

        3)    after the reduction of the requested attorneys' fees and expenses from the Settlement Fund, each Class Member will still receive a recovery of at least 160% of actual damages.

104.    As described below and in the Fee Brief, the requested fee and expense award meets the standards set forth in both the Lodestar method and the common fund method, the two

standards for approval of attorney's fees used by courts in this jurisdiction in the class action context.

### A.    The Lodestar Method

105.    In applying the Lodestar approach, courts multiply the number of hours plaintiff's counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. In addition, Courts may approve a multiplier to the Lodestar figure to adequately compensate plaintiff's counsel based on the specific circumstances of the litigation.

106.    Each of the law firms comprising Plaintiff's Counsel submits herewith a declaration describing the work each firm performed on behalf of the Class, the number of hours expended performing such work, the hourly rates applied, the amount of expenses reasonably incurred in representing the Class, and information regarding their respective backgrounds and qualifications. *See* Plaintiff's Counsel's Declarations (Exs F-J).

107.    Below is a chart summarizing the total hours, expenses, and Lodestar figures, as provided in the declarations of Plaintiff's Counsel:

| Firm | Fees | Expenses | Hours |
|------|------|----------|-------|
| Barrack Rodos | $ 19,655.00 | $ 1,634.41 | 36.25 |
| The Law Offices of Michael Huber | $ 48,237.50 | $ 0 | 113.5 |
| The Packard Firm | $477,641.00 | $22,519.00 | 1328.07 |
| Lerach Coughlin | $ 17,261.25 | $ 1,415.96 | 32.75 |
| Milberg Weiss | $378,443.75 | $18,204.34 | 751 |
| **TOTAL** | **$941,238.50** | **$43,773.71** | **2261.57** |

108.    As set forth in the declarations of Plaintiff's Counsel, the 2261 hours of work performed for Plaintiff and the Class were reasonable, necessary, and contributed to the Proposed Settlement. *See* Plaintiff's Counsel's Declarations (Exs. F-J). The hourly rates applied by Plaintiff's Counsel are the same as the regular current rates charged for their services in non-

contingent matters or rates which have been accepted in other class action litigation.  *See*
Plaintiff's Counsel's Declarations (Exs. F-J).

109.    Applying Plaintiff's Counsels' normal hourly rates to the hours expended in this
Litigation yields a total lodestar amount of $941,238.50.

110.    Based on the lodestar figure of  $941,238.50, the $281,227.00 attorneys' fee
award requested by Plaintiffs' Counsel $281,227.00 results in a negative multiplier of .30.

### B.    The Common Fund Method

111.    In calculating attorneys' fees using the common fund method, courts in this
jurisdiction consider the following factors:  (1) the size of the fund created and the number of
persons benefited; (2) the presence or absence of substantial objections by members of the class
to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the
attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment;
(6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar
cases.

### 1.    The Size of the Fund Created and the Number of Persons Benefited

112.    The size of the Proposed Settlement is an excellent result when weighed against
the considerable expenses associated with continuing to litigate.  Were this action to proceed to
trial, under RESPA's treble damages provision, Class Members with actionable claims could
potentially recover no more than $27 or $3, depending on whether they were charged for flood
certifications in an amount of $9 or $1 in excess of the amount Defendants paid for such
services.  Based on the number of class members charged the respective $9 and $1 amounts, the
total potential Class recovery, were this action to proceed to trial, would be $554,763.00.  See
Naylor Aff. ¶ 11(Ex. A); Stipulation ¶¶ 2-3 (Ex. D).  Thus, the $650,000.00 Proposed Settlement
provides an excellent result for the Class, even after the deduction of the requested $325,000.00

in attorneys' fees and expenses from the Settlement Fund, considering the fees and expenses Plaintiff would incur in proceeding to trial. Specifically, after the deduction of the requested attorneys' fees and expenses from the Settlement Fund, the Proposed Settlement provides a recovery of at least 160% of actual damages for all Class Members.

113. The number of persons benefiting from the Settlement is expansive, encompassing 83,713 borrowers who paid flood certification fees in excess of the amount Defendants paid to the third-party vendor performing the flood certification. *See* Stipulation ¶ 5 (Ex. D).

### 2.    The Absence of Substantial Objections to the Fee Request Evidences That the Fee Request is Fair and Reasonable

114. Not a single Class Member has formally objected the Proposed Settlement or Plaintiff's Counsel's request for $325,000.00 in attorneys' fees and expenses. *See* Brown Decl. ¶ 11 (Ex. E). However, of the ten requests for exclusion received by Plaintiff's Counsel, two criticized the amount of requested attorneys' fees.

115. Specifically, one request for exclusion sent to Plaintiff's Counsel by John P. Gerlach ("Gerlach Exclusion") states that this action is "one of many frivolous law suits that . . . [a]re filed solely for the purpose of generating income for the plaintiff's attorneys." *See* Gerlach Exclusion (Ex. L). The Gerlach Exclusion mentions the "ratio of the maximum award for the plaintiff versus the compensation to the firm" and further states that "[s]uch lawsuits are a major source of inflation in the American marketplace." *Id.*

116. In addition, Plaintiff's Counsel received a request for exclusion from Thomas G. Munro ("Munro Exclusion") that criticizes the requested amount of attorneys' fees as follows:

> This appears to be a nonsense class action suit. Only the attorneys win? The attorneys get $325,000 out of $650,000? That's 50%! . . . I want no part of this class action suit. Please do not

> send me my share of this settlement.    $2 Nonsense!    Was I
> damaged by GMAC?  No!

*See* Munro Exclusion (Ex. M).

117.    Plaintiff's Counsel address the Gerlach Exclusion and the Munro Exclusion in the

Fee Brief.  Specifically, the Gerlach Exclusion and the Munro Exclusion fail to consider the

following:

1) the requested attorneys' fees result in a negative lodestar multiplier .30 for Plaintiff's Counsel.

2) the discovery conducted in this Action demonstrated that Plaintiff's actionable claims were very limited in scope and potential recovery. *See* Naylor Aff. ¶ 11 (Ex. A); Findings of Fact ¶ 5 [Dkt. No. 76];

3) Had Plaintiff's Counsel proceeded with the litigation and prevailed at trial, Plaintiff and the Class would have received no more than $554,763.00 for their actionable claims, assuming a total victory at trial.

4) Had Plaintiff's Counsel proceeded with the litigation and prevailed at trial, Plaintiff's Counsel could have applied to the Court for 100% of their attorneys' fees to be paid by Defendants in addition to any recovery for the Class, rather than the mere 30% they seek here.

5) Under the Proposed Settlement, Class Members will be receiving at least 160% of their damages, while Plaintiff's Counsel have only requested 30% of their fee.

31

### 3.   The Skill and Efficiency of the Attorneys Involved

118.   Plaintiff's Counsel's success in achieving a Proposed Settlement that provides Class Members at least 160% of their actual damages is significant indicator of the experience and ability of the attorneys involved.  By any measure, Plaintiff's Counsel's efforts have resulted in an excellent settlement, providing substantial benefits to the Class in light of the limited nature of Plaintiff's actionable claims and the expenses posed by further litigation.

119.   In addition, Reed Smith LLP, counsel for Defendants, are skilled and experienced in defending actions such as this Litigation.  As such, Plaintiffs' Counsel was confronted with formidable opposition throughout the course of these proceedings, which have been described at length above.   Nevertheless, Plaintiff's Counsel developed their case sufficiently to press Defendants for this very favorable Proposed Settlement.

### 4.   The Complexity and Duration of the Litigation

120.   While this Litigation was not extremely complex, Plaintiff's Counsel nonetheless faced significant hurdles in prosecuting Plaintiff's claims, as described at length above.

121.   Plaintiff's Counsel spent considerable time, effort, and expense in opposing Defendants' motion to dismiss.  After the Court granted the motion to dismiss, Plaintiff's Counsel undertook the difficult task of appealing the dismissal to the United States Court of Appeals for the Third Circuit, which resulted in a partial reversal.

122.   In addition, the parties' settlement negotiations were hard-fought and protracted. Specifically, Plaintiff's Counsel attended four separate in-person mediations and six telephonic settlement conferences before Magistrate Judge Rapoport over the course of almost a year in efforts to settle this Action. Thus, while this action was not inherently tremendously complex, the negotiation positions taken by Defendant during the mediations required Plaintiff's Counsel to undertake considerable efforts to settle this Action.

### 5.    The Risk of Nonpayment

123.    As described in their declarations, each of Plaintiff's Counsel undertook representation of Plaintiff and the Class on a wholly contingent basis. *See* Plaintiff's Counsel's Declarations (Exs. F-J).

124.    Plaintiff's Counsel knew from the outset that they might litigate this action for many years, expend thousands of attorney hours, and incur costly expenses, with no guarantee of recovery. This risk was particularly acute in this case as Defendants denied all liability (and continue to deny liability).

### 6.    The Amount of Time Devoted to the Action

125.    Plaintiff's Counsel have expended 2261 hours performing work on this case, which represents a significant, yet reasonable, commitment of time and personnel. *See* Plaintiff's Counsel's Declarations (Exs. F-J). This includes the time spent in the initial investigation of the case, preparing and filing the complaint, opposing Defendants' motion to dismiss, appealing the dismissal of Plaintiff's claims, preparing for and attending various court conferences, conducting fact discovery, reviewing Defendants' production, and engaging in a hard-fought mediation spanning almost a year. Through the foregoing activities, Plaintiff's Counsel significantly benefited the Class.

126.    Each of Plaintiff's Counsel reviewed their respective time records which documented the work performed on this litigation. Excluded from Plaintiff's Counsel's lodestar figures is the time which Plaintiff's Counsel have expended in preparing this fee application. *See* Plaintiff's Counsel's Declarations (Exs. F-J). In addition, Plaintiff's Counsel's lodestar does not include the substantial additional time that will necessarily be expended in connection with the preparation for and attendance of the Settlement Fairness Hearing and further proceedings related to claims administration. *Id.*

### 7.    Awards in Similar Cases

127.    Plaintiff's Counsel recognize that their request for $325,000.00 in attorneys' fees and expenses, which results in an attorneys' fee award of 43% of the Settlement Fund, is on the higher end of the range that courts in this jurisdiction consider reasonable.  However, Plaintiff's Counsel submit that such a fee is reasonable given:  (1) the recovery obtained for the Class; (2) that Plaintiff's Counsel are only requesting 30% of their Lodestar figure; and (3) that   the attorneys' fees sought by Plaintiff's Counsel results in a negative multiplier of .30.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court approve the Proposed Settlement and Plan of Allocation and award Plaintiff's Counsel  attorneys' fees and expenses in the amount of $325,000.00.


Dated:  August 2, 2007

_____
Jennifer L. Young

34