IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS SANTIAGO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-4048 |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE GROUP, INC., | : | |
| GMAC RESIDENTIAL HOLDING | : | |
| CORP., and GMAC MORTGAGE | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

# TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................... ii

I.  SUMMARY OF THE ARGUMENT ............................................................................1

II.  ARGUMENT.................................................................................................................2

    A.  The Standard for Approval of Attorneys' Fees in the Third Circuit.......................2

        1.  Lodestar method......................................................................................3

        2.  Common Fund Method ............................................................................5

            a.  The Size of the Fund Created and the Number of Persons
               Benefited ........................................................................................6

            b.  The Absence of Substantial Objections to the Fee Request
               Evidences That the Fee Request is Fair and Reasonable.................7

            c.  The Skill and Efficiency of the Attorneys Involved ........................9

            d.  The Complexity and Duration of the Litigation ............................10

            e.  The Risk of Nonpayment ...............................................................11

            f.  The Amount of Time Devoted to the Action ..................................12

            g.  Awards in Similar Cases ................................................................13

III.  PLAINTIFF'S COUNSEL ARE ENTITLED TO BE REIMBURSED FOR
    THEIR REASONABLE LITIGATION EXPENSES........................................................14

IV.  CONCLUSION.............................................................................................................15

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*In re AT&T Corp. Securities Litigation,*
    455 F.3d 160 (3d Cir. 2006).......................................................................................................14

*In re Aetna Inc. Sec. Litigation,*
    2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ...................................................................7

*In re AremisSoft Corp. Sec. Litigation,*
    210 F.R.D. 109 (D.N.J. 2002)......................................................................................................9

*Behrens v. Wometco Enterprises, Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988)..................................................................................................9

*Bradburn Parent Teacher Store, Inc. v. 3M,*
    No. 02-7676, 2007 U.S. Dist. LEXIS 35899 ............................................................4, 5, 13, 14

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)......................................................................................................................9

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation,*
    55 F.3d 768 (3d Cir. 1995)...........................................................................................................2

*Gunter v. Ridgewood Energy Corp.,*
    223 F.3d 190 (3d. Cir. 2000).........................................................................................................9

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)......................................................................................................................6

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................................................12, 13

*In re Ins. Brokerage Antitrust Litigation,*
    No. 04-5184, 2007 U.S. Dist. LEXIS 40729 (D.N.J. June 5, 2007)..................................13, 14

*Lake v. First Nationwide Bank,*
    900 F. Supp. 726 (E.D. Pa. 1995) ...............................................................................................3

*Lazy Oil Co. v. Witco Corp.,*
    95 F. Supp. 2d 290 (D. Pa. 1997)..........................................................................................10, 13

*In re Lorazepam & Clorazepate Antitrust Litigation v. Mylan Labs.,*
    205 F.R.D. 369 (D.D.C. 2002)......................................................................................................8

ii

*Perry v. FleetBoston Finance Corp.*,
    229 F.R.D. 105 (E.D. Pa. 2005)........................................................................................2, 3, 5

*Prandini v. National Tea Co.*,
    557 F.2d 1015 (3d Cir. 1977)...................................................................................................6

*In re Ravisent Techs., Inc. Sec. Litigation*,
    No. 00-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ...................................4, 7

*In re Rent-Way Securities Litigation*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)...............................................................................10, 11

*In re Rite Aid Corp. Sec. Litigation*,
    396 F.3d 294 (3d Cir. 2005)...............................................................................4, 5, 7, 13, 14

*In re Safety Components, Inc. Sec. Litigation*,
    166 F. Supp. 2d 72 (D.N.J. 2001) .........................................................................................14

*Smith v. Dominion Bridge Corp.*,
    No. 96-7580, 2007 U.S. Dist. LEXIS 26903 (E.D. Pa. Apr. 11, 2007) ...............................5, 13

*Spark v. MBNA Corp.*,
    157 F. Supp. 2d 330 (D. Del. 2001).......................................................................................11

*Varacallo v. Mass. Mutual Life Insurance Co.*,
    226 F.R.D. 207 (D.N.J. 2005)..............................................................................................5, 9

*Yong Soon Oh v. AT&T Corp.*,
    225 F.R.D. 142 (D.N.J. 2004)..............................................................................................5, 7

Milberg Weiss LLP ("Milberg Weiss"); Barrack, Rodos & Bacine ("Barrack Rodos"); Lerach Coughlin Stoia Geller Rudman & Robbins, LLC ("Lerach Coughlin"); The Law Offices of Michael Huber; and Packard, Packard & Johnson (the "Packard Firm") (collectively "Plaintiff's Counsel") respectfully move the Court for an award of attorneys' fees and expenses of $325,000.00. Under the Proposed Settlement Agreement and the Plan of Allocation requested by Plaintiff's Counsel, Class Members will receive at least 160% of their damages, while Plaintiff's Counsel are only seeking 30% of their actual fees. Not one Class Member has formally objected to this fee request.[1]

## I.    SUMMARY OF THE ARGUMENT

As described in the Settlement Brief filed concurrently herewith, Plaintiff has submitted to the Court for approval the Proposed Settlement, which creates a $625,000.00 Settlement Fund. As part of the Proposed Plan of Allocation of the Settlement Fund, Plaintiff's Counsel are requesting an award of $325,000.00 for attorneys' fees and expenses. After reimbursement of $43,773.00 in expenses, this leaves a total of $281,227.00 for attorneys' fees, which is 43% of the Settlement Fund. This Proposed Plan of Allocation provides a recovery of at least 160% of actual damages for all Settlement Class Members, after payment to Plaintiff's Counsel of the requested $325,000.00 in attorneys' fees and expenses.

As described herein, Plaintiff's Counsel's request for fees and expenses should be granted for the following reasons:

> 1)    the requested fee results in a negative Lodestar multiplier of .30, which
>
>        is well below the multipliers approved by courts in this jurisdiction;

---

[1] Although Plaintiff's Counsel have not received any objections to the Proposed Settlement or Plaintiff's Counsel's request for attorneys' fees, Plaintiff's Counsel have received two requests for exclusion that criticize the amount of attorneys' fees Plaintiff's Counsel have requested. Plaintiff's Counsel address these criticisms below.

2)   the requested fee is within the range of percentage fee recoveries approved by courts in this jurisdiction; and

3)   after the reduction of the requested attorneys' fees and expenses form the Settlement Fund, each Class Member will still receive a recovery of at least 160% of actual damages.

For these reasons, and the reasons discussed below and in the Declaration of Jennifer L. Young ("Young Declaration"), filed concurrently herewith, Plaintiff's Counsel respectfully request that the Court grant their request for $325,000.00 for attorneys' fees and reimbursement of expenses.

## II.     ARGUMENT

### A.     The Standard for Approval of Attorneys' Fees in the Third Circuit

"Courts in this Circuit employ one of two methods for calculating attorneys' fees in the class action context. The lodestar method, normally applied in statutory fee shifting cases, multiplies the number of hours reasonably worked by a reasonable hourly rate." *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118-119 (E.D. Pa. 2005). In applying the lodestar method, the "court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience and reputation." *Id.*

The present action is a statutory fee shifting case for which courts hold that the lodestar method is appropriate. *Id.*; *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("Courts generally regard the lodestar method . . . as the appropriate method in statutory fee shifting cases. Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation . . . an adequate fee irrespective of the monetary value of the final relief achieved for the class.").

2

The second method courts use for calculating attorneys' fees in the class action context is the common fund method, which "awards class counsel a fixed portion of the settlement fund. Under this method, courts determine an appropriate fee for class counsel by examining the size of the settlement fund, any objections to the fee request, counsel's skill and efficiency, the complexity of the litigation and the amount of time counsel spent on it, the risk of nonpayment, and awards in similar cases." *FleetBoston*, 229 F.R.D. at 119.

"Neither method [of calculation] is mandatory, leaving the district court with a wide range of discretion when selecting which method to employ." *Id.*; *see also Lake v. First Nationwide Bank,* 900 F. Supp. 726, 734 (E.D. Pa. 1995) ("[T]he district court has wide discretion to decide which method of fee calculation to apply."). Where "cases . . . share the attributes of both a statutory fee [shifting] case and a common fund case, it is within the district court's discretion to make a particularized determination as to whether the case more closely resembles a common fund case or a statutory fee case." *FleetBoston*, 229 F.R.D. at 119 (quoting *Brytus v. Spang & Co.*, 203 F.3d 238, 248 (3d Cir. 2000)). "While the trial court retains the discretion to select either method, it is wise for the court to use a second method of calculation to ensure the correctness of its initial calculation." *FleetBoston*, 229 F.R.D. at 119.

The Proposed Settlement in the present action involves both a fee shifting statute (the Real Estate Settlement Procedures Act, 12, U.S.C. § 2607) and a common fund. Accordingly, Plaintiff explains below why the requested attorneys' fees are appropriate under either method.

### 1.    Lodestar method

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. The multiplier is a device that attempts to account for the contingent nature or risk involved in a

particular case and the quality of the attorneys' work." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-306 (3d Cir. 2005). "Lodestar multiples of less than four are well within the range awarded by courts in this Circuit." *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-1014, 2005 U.S. Dist. LEXIS 6680, at *43 (E.D. Pa. Apr. 18, 2005). "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305-306.

As set forth in the declarations of Plaintiff's Counsel attached as Exhibits F through J to the Young Declaration, Plaintiff's Counsel reasonably expended 2,261 hours in the prosecution of this Litigation against Defendants. A detailed description of the work Plaintiff's Counsel performed on behalf of the Settlement Class is described in the Young Declaration. *See* Young Decl. ¶¶ 8-35. This work was reasonable and necessary and directly contributed to the Proposed Settlement. *See* Young Decl. ¶ 108. Applying Plaintiff's Counsels' normal hourly rates[2] to the hours expended in this Litigation yields a lodestar amount of $941,238.50. Therefore, the $281,227.00 attorneys' fee award requested by Plaintiff's Counsel results in a negative multiplier of .30. *See* Young Decl. ¶ 110.

This multiplier is fully justified by the *Girsh* analysis, as explained in Plaintiff's Settlement Brief, and is significantly lower than multipliers approved by courts in similar consumer class actions. *See Bradburn Parent Teacher Store, Inc. v. 3M*, 02-7676, 2007 U.S. Dist. LEXIS 35899, at *56 (E.D. Pa. May 15, 2007) ("[T]he requested lodestar multiplier of approximately 2.5 is acceptable."); *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 U.S.

---

[2] As described in the declarations of Plaintiff's Counsel, the hourly rates applied are the same as the regular current rates charged for their services in non-contingent matters or rates which have been accepted in other class action litigation. *See* Young Decl. ¶ 108.

4

Dist. LEXIS 26903, at \*34 (E.D. Pa. Apr. 11, 2007) ("Clearly, a lodestar multiplier of .31 falls

far below the typical range."); *FleetBoston*, 229 F.R.D. at 123 ("[T]he Court finds that a 1.5

multiplier is warranted in this case."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 256

(D.N.J. 2005) ("A 2.83 multiplier is reasonable under the circumstances."); *Yong Soon Oh v.*

*AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving a multiplier of 2.15).

Accordingly, Plaintiff's Counsel submit that their request for $281,227.00 in attorneys'

fees should be approved.

### 2.    Common Fund Method

In calculating attorneys' fees using the common fund method, the Third Circuit has

articulated the following seven factors for consideration:

> (1) the size of the fund created and the number of persons
> benefited; (2) the presence or absence of substantial objections by
> members of the class to the settlement terms and/or fees requested
> by counsel; (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223

F. 3d 190, 195 n. 1 (3d. Cir. 2000)). However, the Court is not limited to these factors in

considering whether a fee award is reasonable. *See Bradburn Parent Teacher Store, Inc.*, 2007

U.S. Dist. LEXIS 35899 at \*43 ("[D]istrict courts are not limited to the Gunter factors in their

analysis of the fee request's reasonableness.").

As demonstrated below, consideration of the relevant factors, and the particular

circumstances of this Action, clearly supports an award of 43% of the Settlement Fund to

Plaintiff's Counsel.

a.    **The Size of the Fund Created and
the Number of Persons Benefited**

The value of the benefit rendered to the Class is the most important factor in determining whether the fee requested is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019-20 (3d Cir. 1977) ("[T]he 'quality' factor requires the court to adjust a fee on the basis of results of the work performed.").

Here, the size of the Settlement is an excellent result when weighed against the considerable expenses associated with continuing to litigate. Were this action to proceed to trial, under RESPA's treble damages provision, Class Members with actionable claims could potentially recover no more than $27 or $3, depending on whether they were charged for flood certifications in an amount of $9 or $1 in excess of the amount Defendants paid for such services. Based on the number of class members charged the respective $9 and $1 amounts, the total potential Class recovery, were this action to proceed to trial, would be $554,763.00. See Young Decl. ¶ 112. Thus, the $650,000.00 Proposed Settlement provides an excellent result for the Class, even after the deduction of the requested $325,000.00 in attorneys' fees and expenses from the Settlement Fund, considering the fees and expenses Plaintiff would incur in proceeding to trial. Specifically, after the deduction of the requested attorneys' fees and expenses from the Settlement Fund, the Proposed Settlement provides a recovery of at least 160% of actual damages for all Class Members. *See* Young Decl. ¶¶ 39-40.

In addition, the number of persons benefiting from the Settlement is expansive, encompassing 83,713 borrowers who paid flood certification fees in excess of the amount Defendants paid to the third-party vendor performing the flood certification. *See* Young Decl. ¶ 113.

6

Therefore, the size of the Proposed Settlement and the number of persons who will benefit from that Settlement strongly support Plaintiff's Counsel's fee application.

### b. The Absence of Substantial Objections to the Fee Request Evidences That the Fee Request is Fair and Reasonable

"The absence of large numbers of objections mitigates against reducing fee awards." *Yong Soon Oh*, 225 F.R.D. at 152 (citing *In re Cendant Corp.*, 232 F. Supp. 2d 327 (D.N.J. 2002)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305 (noting that "low level of objections is a rare phenomenon"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *39 (finding absence of objections supported award of requested fee); *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 U.S. Dist. LEXIS 68, at *48 (E.D. Pa. Jan. 4, 2001) ("[T]he Class Members' view of the attorneys' performance, inferred from the lack of objections to the fee petition, supports the fee award.").

Here, not a single Class Member has formally objected to the Proposed Settlement or Plaintiff's Counsel's request for $325,000.00 in attorneys' fees and expenses. Although no Class Members have formally objected to the Proposed Settlement or Plaintiff's Counsel's requested fee, of the ten requests for exclusion received by Plaintiff's Counsel, two criticized the amount of requested attorneys' fees. These requests for exclusion ate attached to the Young Declaration as Exhibits L and M. Specifically, one request for exclusion sent to Plaintiff's Counsel by John P. Gerlach ("Gerlach Exclusion") states that this action is "one of many frivolous law suits that . . . [a]re filed solely for the purpose of generating income for the plaintiff's attorneys." *See* Young Decl. ¶ 115. The Gerlach exclusion mentions the "ratio of the maximum award for the plaintiff versus the compensation to the firm" and further states that "[s]uch lawsuits are a major source of inflation in the American marketplace." *Id.*

In addition, Plaintiff's Counsel received a request for exclusion from Thomas G. Munro ("Munro Exclusion") that criticizes the requested amount of attorneys' fees as follows:

> This appears to be a nonsense class action suit. Only the attorneys win? The attorneys get $325,000 out of $650,000? That's 50%! . . . I want no part of this class action suit. Please do not send me my share of this settlement. $2 Nonsense! Was I damaged by GMAC? No!

*See* Young Decl. ¶ 116.

As these Class Members have requested to be excluded from the Settlement Class, they lack standing to lodge any objections to Plaintiff's Counsel's request for attorneys' fees. Moreover, these two Settlement Class Members seem to object to class actions in general, rather than to the potential attorneys' fees to be awarded in this case in particular. *See In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad, unsupported objections because "[they] are of little aid to the Court.").

In any event, as discussed above, the requested attorneys' fees result in a negative lodestar multiplier .30 for Plaintiff's Counsel and are reasonable in light of the specific circumstances of this case. The discovery conducted in this Action demonstrated that Plaintiff's actionable claims were very limited in scope and potential recovery. *See* Young Decl. ¶¶ 27-28. In fact, had Plaintiff's Counsel proceeded with the litigation, Plaintiff and the Class would have receive no more than $554,763.00 for their actionable claims, assuming a total victory at trial. *Id.* at ¶ 38. Meanwhile Plaintiff's Counsel would have had to expend significant time, effort, and expense to achieve this result. Had Plaintiff's Counsel proceeded on such a course and prevailed at trial, Plaintiff's Counsel could have applied to the Court for 100% of their attorneys' fees to be paid by Defendants in addition to any recovery for the Class, rather than the mere 30% they seek here. *See* 12 U.S.C. § 2607(d)("[T]he court may award to the prevailing party the court costs of the action together with reasonable attorneys fees."). Instead, Plaintiff's Counsel are seeking

only 30% of their lodestar figure in the interest of effectuating the Proposed Settlement. Finally, although the Gerlach Exclusion and the Munro Exclusion note that the individual recoveries for Class Members are only $14.40 or $2.00, these Class Members apparently failed to consider that they will be receiving at least 160% of their damages, while Plaintiff's Counsel have only requested 30% of their fee.

Based on these considerations, Plaintiff's Counsel submit that the requested attorneys' fees are appropriate.

### c.     The Skill and Efficiency of the Attorneys Involved

"The purpose of a fee award 'is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'" *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 252 (D.N.J. 2005)(quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 96 (D.N.J. 2001)); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974) ("As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process."); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) ("[T]he stated goal in percentage fee-award cases is ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation.").

Plaintiff's Counsel's success in achieving a Proposed Settlement that provides Class Members at least 160% of their actual damages is perhaps the best indicator of the experience and ability of the attorneys involved. *See In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 132 (D.N.J. 2002)("[T]he excellent result evidences Plaintiffs' Counsel's skill and efficiency."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-548 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

9

By any measure, Plaintiff's Counsel's efforts have resulted in an excellent settlement, providing substantial benefits to the Class in light of the limited nature of the Plaintiff's actionable claims and the expenses posed by further litigation.

Courts also recognize that the quality of opposing counsel is important in evaluating Plaintiff's Counsel's performance. *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 343 (D. Pa. 1997). Reed Smith LLP, counsel for Defendants, are skilled and experienced in defending actions such as this Litigation. As such, Plaintiff's Counsel was confronted with formidable opposition throughout the course of these proceedings. *See* Young Decl. ¶¶ 120-22. As described in the Young Declaration, Plaintiff's Counsel faced numerous challenges during the course of this Litigation. *See* Young Decl. ¶¶ 13-17, 122. Nevertheless, in the face of a vigorous defense, Plaintiff's Counsel developed their case sufficiently to press Defendants for this very favorable Proposed Settlement.

Accordingly, the skill and efficiency of Plaintiff's Counsel weighs in favor of approving Plaintiff's Counsel's requested attorneys' fees.

### d.      The Complexity and Duration of the Litigation

In considering this factor, courts examine the length of the time the litigation has been pending, the efforts of plaintiff's counsel in light of the issues raised, and the risk faced by plaintiff's counsel in pursuing the litigation on a contingent fee basis. *See In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 515-516 (W.D. Pa. 2003) ("The three-year duration of this litigation -- while having not yet proceeded to formal merits discovery -- has required significant efforts on the part of Lead Counsel."). For example, in *Rent-Way*, the court held that the complexity and duration of the litigation supported plaintiff's counsel's fee request where plaintiff's counsel undertook "significant briefing relative to [defendant's motion to dismiss]" and the parties engaged in "[s]ignificant informal discovery." *Id.* In addition, the court noted that "in

10

settling . . . the litigation, counsel engaged in intense and protracted settlement negotiations over the course of nearly a year." *Id.* Finally, the court noted that plaintiff's counsel "faced a significant risk that they would never be reimbursed for their efforts," given the contingent nature of their representation. *Id.*

While this Litigation was not extremely complex, Plaintiff's Counsel nonetheless faced significant hurdles in prosecuting Plaintiff's claims. *See Spark v. MBNA Corp.*, 157 F. Supp. 2d 330, 339 (D. Del. 2001) ("[T]he risks as to liability appear to have been relatively evenly balanced, which suggests a settlement was appropriate."). One of this most significant challenges in this Litigation was addressing Defendant's motion to dismiss, which this Court granted. *See* Young Decl. ¶¶ 13-14. Plaintiff's Counsel spent considerable time, effort, and expense in opposing Defendants' motion to dismiss. *Id.* After the Court granted the motion to dismiss, Plaintiff's Counsel undertook the difficult task of appealing the dismissal to the United States Court of Appeals for the Third Circuit, which resulted in a partial reversal. *Id.* at ¶¶ 15-16.

In addition, the parties' settlement negotiations were hard-fought and protracted. Specifically, Plaintiff's Counsel attended four separate in-person mediations and six telephonic settlement conferences before Magistrate Judge Rapoport over the course of almost a year in efforts to settle this Action. *See* Young Decl. ¶ 35. Thus, while this action was not inherently tremendously complex, the negotiation positions taken by Defendant during the mediations required Plaintiff's Counsel to undertake considerable efforts to settle this Action. *Id.*

The foregoing considerations strongly support Plaintiff's Counsel's fee request.

### e.    The Risk of Nonpayment

Courts in the Third Circuit recognize that a plaintiff's attorneys' contingent fee risk is an important factor in determining the fee award, and an analysis of this factor weighs in favor of

Plaintiff's Counsels' fee request. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 516 (finding that investment of time, personnel, and resources supported awarding requested fee); *see also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (recognizing inherent, substantial risk in contingent fee litigation).

Plaintiff's Counsel undertook representation of Plaintiff and the Class on a wholly contingent basis. *See* Young Decl. ¶ 123. Plaintiff's Counsel knew from the outset that they might litigate this action for many years, expend thousands of attorney hours, and incur costly expenses, with no guarantee of recovery. *Id*. at ¶ 124. This risk was particularly acute in this case as Defendants denied all liability (and continue to deny liability).

Based on the foregoing the contingent nature of Plaintiff's Counsel's fees and expenses weighs in favor of approving Plaintiff's Counsel's fee request.

### f.    The Amount of Time Devoted to the Action

Since its inception, Plaintiff's Counsel have expended 2261 hours and advanced more than $43,773.00 in expenses on this case. *See* Young Decl. ¶¶ 102, 125. This includes the time spent in the initial investigation of the case, the time spent preparing and filing the complaint, opposing Defendants' motion to dismiss, appealing the dismissal of Plaintiff's claims, preparing for and attending various court conferences, conducting fact discovery, reviewing Defendants' production, and engaging in a hard-fought mediation spanning almost a year. *See* Young Decl. ¶ 125. Through the foregoing activities, Plaintiff's Counsel significantly benefited the Class.

The time expended by each of the law firms comprising Plaintiff's Counsel is set forth in declarations attached to the Young Declaration as Exhibits F through J. Plaintiff's Counsel reviewed all time records which documented the work expended on this litigation. Excluded from Plaintiff's Counsel's lodestar figures is the time which Plaintiff's Counsel have expended in preparing this fee application. In addition, Plaintiff's Counsel's lodestar does not include the

substantial additional time that will necessarily be expended in connection with the preparation for and attendance of the Settlement Fairness Hearing and further proceedings related to claims administration. *See* Young Decl. ¶ 126.

The foregoing represents a significant, yet reasonable, commitment of time, personnel, and expense.

### g.    Awards in Similar Cases

Courts in this jurisdiction have recognized that in class actions involving a common fund, a percentage fee recovery of between 30 and 45% is generally appropriate. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 303 (noting that the average fee recovery in common fund cases is generally 30%); *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 U.S. Dist. LEXIS 26903 (E.D. Pa. Apr. 11, 2007) ([C]ourts in this circuit have determined that an appropriate range for percentage fees in common fund cases is 19 percent to 45 percent."); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 U.S. Dist. LEXIS 40729 (D.N.J. June 5, 2007) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."); *Lazy Oil Co.*, 95 F. Supp. 2d at 341 ("[S]everal courts in this circuit have observed that fee awards under the percentage-of-recovery approach typically range from 19% to 45% of the settlement fund.").

Plaintiff's Counsel recognize that their request for attorneys' fees in the amount of 43% of the Settlement Fund is on higher end of the range that courts in this jurisdiction consider reasonable. However, most class actions do not provide a recovery to the Class of 160% of actual damages suffered. *See Bradburn Parent Teacher Store, Inc. v. 3M*, 2007 U.S. Dist. LEXIS 35899, at *50-51 ("Because the requested fee percentage is only slightly higher than the

percentages awarded in [other similar] cases and the settlement in this case provides a common fund that represents a much higher percentage share of the Class Members' damages than did the common funds in those cases, this factor supports a finding that the percentage of the settlement fund requested is appropriate.").

In addition, in comparing whether an award of attorney's fees from a common fund is reasonable, courts in this jurisdiction often compare the Lodestar multiplier to multipliers approved in other similar class action litigation. *See In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 303. As noted above, the attorneys' fees sought by Plaintiff's Counsel results in a negative multiplier of .30, which is well beneath the range of multipliers typically approved by courts in this jurisdiction. *See* Sec. II.A.1, *supra*.

## III.   PLAINTIFF'S COUNSEL ARE ENTITLED TO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses and costs from the fund. *See In re Safety Components, Int'l*, 166 F. Supp. 2d at 108 ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action"); *In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 40729, *67 ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.").

Plaintiff's Counsel's expenses in this case total $43,773.00 and are described in the declarations of Plaintiff's Counsel attached as Exhibits F through J to the Young Declaration. These expenses were incurred for such items as photocopying of documents, on-line research,

14

postage, express mail, travel and accommodations, long distance telephone charges, filing fees, facsimile expenses, transportation, and other incidental expenses directly related to the prosecution of this Action. Accordingly, Plaintiff's Counsel respectfully requests reimbursement of these reasonable expenses.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Counsel respectfully request that the Court approve and enter an Order for an award of attorneys' fees and expenses in the amount of $325,000.00.

Dated: August 2, 2007

Respectfully submitted:

MILBERG WEISS LLP

Jennifer L. Young
Barry A. Weprin
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

BARRACK, RODOS & BACINE
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

LERACH COUGHLIN STOIA
  GELLER RUDMAN & ROBBINS LLP
John J. Stoia, Jr.
Timothy G. Blood
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

PACKARD, PACKARD & JOHNSON
Craig H. Johnson
2795 E. 2825 Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 428-9000
Facsimile: (801) 428-9090

Ronald D. Packard
Four Main Street, Suite 200
Los Altos, CA 94022
Telephone: (650) 947-7300
Facsimile: (650) 947-7301

LAW OFFICES OF MICHAEL HUBER
Michael E. Huber
8170 South Highland Drive, Suite E5
Sandy, UT 84093
Telephone: (801) 733-5807
Facsimile: (801) 733-0132

*Counsel for Plaintiff*

16